1  EDMUND G. BROWN JR.
   Attorney General of the State of California
2  DANE R. GILLETTE
   Chief Assistant Attorney General
3  JULIE L. GARLAND
   Senior Assistant Attorney General
4  ANYA M. BINSACCA
   Supervising Deputy Attorney General
5  AMANDA J. MURRAY, State Bar No. 223829
   Deputy Attorney General
6    455 Golden Gate Avenue, Suite 11000
     San Francisco, CA 94102-7004
7    Telephone: (415) 703-5741
     Fax: (415) 703-5843
8    Email: Amanda.Murray@doj.ca.gov

9  Attorneys for Respondent Robert Horel

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| GEORGE RUIZ,<br><br>                Petitioner,<br><br>v.<br><br>ROBERT HOREL, Warden,<br><br>                Respondent. | C07-4804 JSW<br><br>**ANSWER TO PETITION FOR WRIT OF HABEAS CORPUS; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Judge:     The Honorable<br>                  Jeffrey S. White |

As an Answer to the Petition for Writ of Habeas Corpus filed by California state inmate George Ruiz, proceeding pro se in this habeas corpus action, Respondent Warden Robert Horel[1] admits, denies, and alleges as follows:

1. Ruiz is in the lawful custody of the California Department of Corrections and

---

[1]. The proper respondent in this action is Warden Robert Horel. *Stanley v. Cal. Supreme Court*, 21 F.3d 359, 360 (9th Cir. 1994) (holding that the warden where the petitioner is incarcerated is the proper respondent); Rule 2(a), 28 U.S.C. § 2254. Because the actions complained of in this petition concern a parole consideration hearing, the Board of Parole Hearings is used interchangeably with Respondent in this Answer and supporting Memorandum of Points and Authorities for convenience only.

1  Rehabilitation (CDCR) serving an indeterminate life sentence following his 1981 conviction in
2  San Diego County for robbery and kidnaping to commit robbery.  (Ex. A, Abstract of
3  Judgement.)

4      2.   Ruiz's Petition does not challenge his conviction; instead, he challenges
5  the Board of Parole Hearings' May 9, 2006 decision finding him unsuitable for parole.
6  Specifically, he alleges that his federal due process rights were violated because there is no
7  evidence supporting the Board's decision.  (*See generally*, Petn.)  He also alleges that the Board
8  is requiring him to become a confidential gang informant[2] in order to be found eligible for parole
9  and that the Board has a no-parole policy for inmate's housed in the prison's secured housing
10 unit (*Ibid.*)

11     3.   On December 2, 1980, Bruce Peckham exited The Village Liquor Store and got into
12 his car after visiting his two friends who were the store's clerks.  (Ex. B, Probation Officer's
13 Report, at 2-3; Ex. C, Life Prisoner Evaluation Report, at 1; Ex. D, Subsequent Parole
14 Consideration Hearing, at 10-12; Ex. E, Decision, Court of Appeal of the State of California,
15 Fourth Appellate District, No. 13350, at 2-4.)  Ruiz approached Mr. Peckham's car on the
16 driver's side and pointed a gun through the open window, telling Mr. Peckham not to move or he
17 would "blow [his] fucking head all over the inside of the car." (*Ibid.*).  Ruiz told Mr. Peckham
18 that they were going to rob the liquor store and if anything went wrong, "he was gong to be the
19 first to go." (Ex. B at 2.)

20     Inside the store, Mr. Peckham told Scott Hoff (one of the clerks) that Ruiz had a gun
21 and was going to rob the store. (Ex. E at 3.)  Mr. Hoff and the other clerk, Mark Mariot, did not
22 initially believe Mr. Peckham. (*Ibid.*)  Ruiz then pulled out his gun and said "[y]eah, I'm gong to
23 blow your friend away if you don't do what I say." (*Ibid.*)  He also warned that if there was an
24 alarm, Mr. Peckham would be the "first to go." (*Ibid.*)

25     Ruiz told Mr. Mariot to put the money in the bag and told Mr. Hoff to get him some

26 ─────────────────────

27     2.  Ruiz is validated as a Mexican Mafia gang member.  (Ex. D at 19-20.)  He refuses to "debrief," which he interprets as becoming a confidential informant for CDCR.  Ruiz does not
28 appear to challenge his gang validation in this Petition.  (*See generally*, Petn.)

Answer to Pet. for Writ of Habeas Corpus; Mem. of P. & A.             *Ruiz v. Horel*
                                                                                  C07-4804 JSW

1 cigarettes. (Ex. E at 3.) Fearing for their friend's safety, both men complied with Ruiz's order. (*Ibid.*) Ruiz grabbed Mr. Peckham and left the store. (*Ibid.*) Returning to Mr. Peckham's car, Ruiz released Mr. Peckham and told him go back to the store and "not to look back." (*Ibid.*)

4.  On May 9, 2006, Ruiz was provided an opportunity to be heard during his parole consideration hearing (Ex. D at 10-45), and the Board issued a decision explaining why Ruiz was unsuitable for parole. (Ex. D at 46-51.) *Inmates of Neb. Penal & Corr. Complex v. Greenholtz*, 442 U.S. 1, 16 (1979) (federal due process requires inmates being considered for release on parole to receive an opportunity to be heard and a reasoned decision). Specifically, the Board found that Ruiz's programming in prison was insufficient to ensure the Board that he would not pose an unreasonable risk of danger to society if he were released from prison. (Ex. D at 46-49.) The Board recommended that Ruiz obtain additional work skills, participate in self-help programs, and complete his GED to increase the likelihood he would be paroled. (*Id.* at 48-50.) Although the Board advised Ruiz — a validated Mexican Mafia gang member — that becoming an inactive gang member would allow him the opportunity to participate in a wider-variety of prison programs, the Board never told Ruiz that he was required to become a confidential informant to fulfill the requirements necessary to be found eligible for parole. (*Id.* at 47-48.) Indeed, the Board indicated that it understood Ruiz did not want to debrief because he feared retaliation against his family. (*Id.* at 46-47.) Finally, the Board noted opposition from the San Diego District Attorney's Office. (*Id.* at 48.)

5.  Ruiz filed a petition with the San Diego County Superior Court raising substantially the same challenges to the Board's 2006 decision that he now asserts in his federal Petition. (Ex. F, Superior Court Pet. & Denial.)[3/] The superior court denied Ruiz's claims on October 11, 2006 in a seven-page reasoned decision. (*Id.*) In finding the Board's decision was supported by some evidence in the record, the court noted that Ruiz did not express remorse or concern for the victims of his crimes (Ex. D at 39) and questioned Ruiz's alleged reasons for not wanting to

---

3. To avoid repetition and unnecessary volume, the exhibits attached to Armstrong's state court petitions have been removed. Respondent will provide these documents upon the Court's request.

Answer to Pet. for Writ of Habeas Corpus; Mem. of P. & A.

*Ruiz v. Horel*
C07-4804 JSW

3

debrief. (Ex. F at 6.) Specifically, the court found that Ruiz indicated that he did not want to debrief to protect his family, but that he also claimed that he was not associated with the Mexican Mafia gang and would "not make up stuff about other people." (*Id.*) Moreover, the court concluded that there was some evidence supporting the Board's conclusion that Ruiz needed to educate himself and obtain marketable skills for employment, especially considering the potential for Ruiz's return to substance abuse if he did not have adequate parole plans. (*Id.* at 6-7.)

6. Ruiz pursued his claims by filing substantially the same petition for writ of habeas corpus in California's Fourth Appellate District, which was denied on February 27, 2007 in five-page reasoned decision. (Ex. G, Appellate Court Pet. & Denial.) In denying his petition, the appellate court found that there was some evidence supporting the Board's conclusion that Ruiz was not yet suitable for parole. (*Id.*) Specifically, the appellate court noted Ruiz's extensive criminal history (*id.* at 2), his limited prison programming (*id.* at 2-3), his limited job skills (*id.*), and his status as validated gang member. (*Id.* at 3.) Regarding Ruiz's gang status, the court noted that although Ruiz refused to debrief to protect his family and that he denies ever being involved in gang-related criminal activities, Ruiz was re-validated as a Mexican Mafia gang member and that his administrative appeals of that decision were unsuccessful. (*Id.*)

The court also found that there was no evidence that the Board had a no-parole policy for inmates housed in the prison's security housing unit. (Ex. G at 5.) Indeed, the court concluded that the Board considered Ruiz's individual circumstances in assessing his parole suitability and recommended several self-help options used by inmates in the security housing unit to help Ruiz increase his chances for parole. (*Id.*)

Accordingly, the court concluded that the Board considered and relied on the appropriate factors in reaching its decision and that it was supported by some evidence. (Ex. G at 5.)

7. Ruiz pursued his claims by filing substantially the same petition for writ of habeas corpus in the California Supreme Court, which was denied on August 29, 2007. (Ex. H, Supreme Court Pet. & Denial.)

8. Respondent admits that Ruiz has exhausted his state court remedies regarding his challenges to the sufficiency of the evidence and his allegations that the Board is requiring

him to become a confidential gang informant before being found suitable for parole and that the Board has a no-parole policy. Respondent denies that Ruiz has exhausted his claims to the extent that they are more broadly interpreted to encompass any systematic issues beyond this particular review of parole denial.

9. Respondent denies that the state courts' adjudication of Ruiz's claims was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the United States Supreme Court. 28 U.S.C. § 2254(d)(1).

10. Respondent denies that the state courts' adjudication of Ruiz's claims was based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d)(2).

11. To preserve the issue, Respondent denies that Ruiz has a federal liberty interest in parole under California Penal Code section 3041, notwithstanding the Ninth Circuit's contrary decision in *Sass v. Cal. Bd. Prison Terms*, 461 F.3d 1123, 1127 (9th Cir. 2005). *See Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 12 (1979) (finding no federally protected liberty interest in parole release date unless state creates interest through the unique structure and language of state parole statute); *but see also Sandin v. Connor*, 515 U.S. 472, 484 (1995) (no federal liberty interest unless the state's action poses an atypical or significant hardship compared with ordinary prison life). Ruiz does not have a federally protected liberty interest in parole under either methodology: first, California's parole scheme is a two-step process that does not impose a mandatory duty to grant life inmates parole before a suitability finding (*In re Dannenberg*, 34 Cal. 4th 1061, 1087 (2005)), and second, an inmate (such as Ruiz) continuing to serve his life sentence does not pose an atypical or significant hardship compared to ordinary prison life (*In re Rosenkrantz*, 29 Cal.4th 616, 658 (2002) ["parole release decisions concern an inmate's anticipation or hope of freedom"]). Thus, Ruiz does not have a protected liberty interest and fails to assert a basis for federal jurisdiction.

12. To preserve the issue, notwithstanding the Ninth Circuit's contrary decision in *Irons v. Carey*, 505 F.3d 846, 851 (9th Cir. 2007), Respondent denies that the Supreme Court has ever clearly established that a state parole board's decision must be supported by some evidence.

13. Respondent affirmatively alleges that if the some-evidence standard applies to federal review of parole denials, then there is some evidence supporting the Board's 2006 decision to deny Ruiz parole.

14. Respondent denies that the Board relied on Ruiz's commitment offense in denying him parole. However, contrary to Ruiz's allegation (Petn. at 18), Respondent alleges that there is no clearly established federal law precluding the Board from relying on the commitment offense as a reason to deny parole. *See Carey v. Musladin*, __ U.S. __, 127 S. Ct. 649, 654 (2006) (federal habeas relief was improper under AEDPA in absence of United States Supreme Court precedent).

15. Respondent denies that the Board's decision denying parole violated Ruiz's federal due process rights.

16. If the Petition is granted, Ruiz's remedy is limited to a new parole consideration hearing before the Board that comports with due process. *Benny v. U.S. Parole Comm'n*, 295 F.3d 977, 984-985 (9th Cir. 2002) (finding that the Board must exercise the discretion in determining whether or not an inmate is suitable for parole); *In re Rosenkrantz*, 29 Cal.4th at 658.

17. Respondent denies that an evidentiary hearing is necessary in this matter. 28 U.S.C. § 2254(e).

18. Respondent admits that Ruiz's claim is timely under 28 U.S.C. § 2244(d)(1), and that the Petition is not barred by the non-retroactivity doctrine.

19. Except as expressly admitted in this Answer, Respondent denies the allegations of the Petition.

20. Ruiz fails to state or establish any grounds for habeas corpus relief.

For the reasons stated in this Answer and in the following Memorandum of Points and Authorities, this Court should deny the Petition.

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

Ruiz's Petition should be denied because he received the only process due under clearly

Answer to Pet. for Writ of Habeas Corpus; Mem. of P. & A.                    *Ruiz v. Horel*
                                                                              C07-4804 JSW

established Supreme Court authority: the opportunity to be heard and a decision. Thus, the Board's decision did not violate his federal due process rights. Even if the some-evidence test is applicable, and Respondent maintains it is not, Ruiz's Petition should be denied because there is some evidence supporting the Board's decision denying Ruiz parole.

## ARGUMENT

**THE STATE COURTS' ADJUDICATION OF RUIZ'S CLAIMS WAS NEITHER CONTRARY TO, NOR INVOLVED AN UNREASONABLE APPLICATION OF, CLEARLY ESTABLISHED FEDERAL LAW, NOR WAS IT BASED ON AN UNREASONABLE DETERMINATION OF THE FACTS.**

**A.   The Standard of Review for Federal Habeas Petitions Brought by State Prisoners Is Highly Deferential to the State Courts' Rulings.**

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) is a "highly deferential standard for evaluating state-court rulings." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam). Indeed, federal habeas relief for state prisoners is tightly constrained under AEDPA and a federal petition must be denied unless the state court's adjudication was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the United States Supreme Court; or was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. § 2254(d). In conducting an AEDPA analysis, "[w]hat matters are the holdings of the Supreme Court, not the holdings of lower federal courts." *Plumlee v. Masto*, 512 F.3d 1204, 1210 (9th Cir. 2008) (en banc).

Under AEDPA, a state court decision is "contrary to" clearly established Supreme Court precedent "if it 'applies a rule that contradicts the governing law set forth in [Supreme Court] cases,' or if it 'confronts a set of facts that are materially indistinguishable from a decision'" of the Supreme Court and nevertheless arrives at a different result. *Early v. Packer*, 573 U.S. 3, 8 (2002) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-406 (2000)).

Under the "unreasonable application" clause of § 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the case. *Williams*, 529 U.S. at 413. A federal habeas court may not grant the writ "simply because that court concludes

1 in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411; *see also Lockyer v. Andrade,* 538 U.S. 63, 75 (2003) (it is "not enough that a federal habeas court, in its independent review of the legal question, is left with a 'firm conviction' that the state court was 'erroneous.'")

The federal court looks to the last reasoned state court decision as the basis for the state court judgment. *Avila v. Galaza,* 297 F.3d 911, 918 (9th Cir. 2002); *see Ylst v. Nunnemaker,* 501 U.S. 797, 803-804 (1991).

**B. Ruiz's Petition Should Be Denied Because He Received All Process Due: an Opportunity to Be Heard and an Explanation for the Parole Denial.**

The Supreme Court has found that a parole board's procedures are constitutionally adequate if the inmate is given an opportunity to be heard and a decision informing him of the reasons he was not yet suitable for parole. *Greenholtz,* 442 U.S. at 16. As a matter of "clearly established" federal law then, a challenge to a parole decision will fail if the inmate has received the protections required under *Greenholtz. See Wilkinson v. Austin,* 545 U.S. at 229 (Supreme Court cited *Greenholtz* approvingly for the proposition that the "level of process due for inmates being considered for release on parole includes opportunity to be heard and notice of any adverse decision" and noted that *Greenholtz* remained "instructive for [its] discussion of the appropriate level of procedural safeguards.") Ruiz does not deny that he received an opportunity to be heard or the reasons he was denied parole. (Ex. D.) Thus, the state courts' decisions were not contrary to clearly established federal law.

**C. The Some-Evidence Standard of Review Is Not Clearly Established Federal Law by the United States Supreme Court for Challenging Parole Denials.**

The some-evidence standard does not apply in federal habeas proceedings challenging parole denials because it is not clearly established federal law. *Superintendent v. Hill,* 472 U.S. 445, 455-56 (1985) (some-evidence standard applies to disciplinary proceedings). Yet, the Ninth Circuit has held that the some-evidence standard governs parole cases, even though the Supreme Court has never extended that test from disciplinary cases to parole cases. *See, e.g., Hayward v. Marshall,* 512 F.3d 536, 542 (9th Cir. 2007); *Irons v. Carey,* 505 F.3d at 851; *but see Musladin;*

1  ___ U.S. ___, 127 S. Ct. at 654 (federal habeas relief was improper under AEDPA in absence of
2  United States Supreme Court precedent as to specific issue presented).[4/] Indeed, both the United
3  States Supreme Court and the Ninth Circuit, have reiterated that there can be no clearly
4  established federal law where the Supreme Court has never addressed a particular issue or
5  applied a certain test to a specific type of proceeding. *See e.g., Schriro v. Landrigan*, ___ U.S.
6  ___, 127 S. Ct. 1933, 1942 (2007) (no federal habeas relief when the issue is an open question in
7  the Supreme Court's precedent); *Wright v. Van Patten*, ___ U.S. ___, 2008 WL 59980, at *2 4
8  (Jan. 7, 2008) (per curiam) (Supreme Court vacated the judgment, and remanded for further
9  consideration in light of *Musladin* because "No decision of this Court . . . squarely addresses the
10 issue in this case" and, therefore relief under § 2254(d)(1) is "unauthorized"); *Crater v. Galaza*,
11 491 F.3d 1119, 1126 & n.8 (9th Cir. 2007) (citing *Musladin*, the Ninth Circuit acknowledged that
12 decisions by courts other than the Supreme Court are "non-dispositive" under § 2254(d)(1));
13 *Cook v. Schriro*, ___ F.3d ___, 2008 WL 441825 *1, *10 (9th Cir. 2008) (citing *Musladin*, the
14 Ninth Circuit found that because there was no United States Supreme Court precedent
15 establishing the unconstitutionality of the clause in plea agreements, it could not say "that the
16 state court 'unreasonably applied clearly established Federal law'").

17    Accordingly, because *Hill*, 472 U.S. at 455-456 applied the some-evidence standard to a
18 prison disciplinary hearing and Ruiz challenges his 2006 parole consideration hearing, the some-
19 evidence standard does not apply. Because *Greenholtz* is the *only* United States Supreme Court
20 authority describing the process due at a parole consideration hearing when an inmate has a
21 federal liberty interest in parole, the *Greenholtz* test, not the some-evidence standard, should
22 apply in this proceeding. Regardless, Respondent recognizes that the Ninth Circuit has held
23 otherwise and will argue this case accordingly.
24 //
25 //
26
27 _____
    4. Although published after *Musladin*, neither *Irons* nor *Hayward* addressed the Court's
28 discussion of clearly established federal law under AEDPA.

Answer to Pet. for Writ of Habeas Corpus; Mem. of P. & A.                    *Ruiz v. Horel*
                                                                              C07-4804 JSW

**D. Ruiz's Petition Should Be Denied Because There Is Some Evidence Supporting the Board's Decision and — as Required by AEDPA — the State Court Decision Upholding the Board's Parole Denial Is Based on a Reasonable Determination of the Facts Based on the Evidence Presented.**

If this Court finds that the some-evidence standard applies and assuming Ruiz has a federally protected liberty interest, some evidence supports the Board's decision denying Ruiz parole. The some-evidence standard "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence;" rather, it assures that "the record is not so devoid of evidence that the findings of the . . . board were without support or otherwise arbitrary." *Hill*, 472 U.S. at 455-457 (applying some-evidence standard to prison disciplinary hearing). Thus, both the "reasonable application" standard of AEDPA and the some-evidence standard of *Hill* are very minimal standards.

Although Ruiz invites the Court to re-examine the facts of his case and re-weigh the evidence presented to the Board, neither AEDPA nor *Hill*'s some-evidence test permit this degree of judicial intrusion. Moreover, in assessing the state court's review of Ruiz's claims, not only should the appropriate deference be afforded to the state court's review under AEDPA, but deference is also due to the underlying Board decision. The Supreme Court has recognized the difficult and sensitive task faced by the Board members in evaluating the advisability of parole release. *Greenholtz*, 442 U.S. at 9-10. Thus, contrary to Ruiz's belief that he should be paroled based on the evidence in support of his parole (*see generally*, Petn.), the Supreme Court has stated that in parole release, there is no set of facts which, if shown, mandate a decision favorable to the inmate. *Id.* Instead, under the some-evidence standard, the court's inquiry is limited solely to determining whether the state court properly found that the Board's decision to deny parole is supported by some evidence in the record, *i.e.*, any evidence. *Hill*, 472 U.S. at 455.

In this case, the appellate court concluded that there was some evidence supporting the Board's decision denying Ruiz parole. Specifically, the appellate court found that the Board's decision was supported by Ruiz's extensive criminal history (Ex. G at 2), his limited prison programming (*id.* at 2-3), his limited job skills (*id.*), and his status as validated gang member. (*Id.* at 3; *see also* Ex. F.) Regarding Ruiz's gang status, the court noted that although Ruiz

Answer to Pet. for Writ of Habeas Corpus; Mem. of P. & A.                    *Ruiz v. Horel*
                                                                                                                              C07-4804 JSW
10

refused to debrief to protect his family, and that he denies ever being involved in gang-related criminal activities, Ruiz was re-validated as a Mexican Mafia gang member and that his administrative appeals of that decision was unsuccessful. (*Id.*; Ex. F at 6.) Thus, this is a reasonable application of the minimal some-evidence test.

Moreover, Ruiz fails to meet his burden of proving that the state courts unreasonably determined the facts regarding his claims that the Board is requiring him to become a confidential informant in order to become eligible for parole and that the Board has a no-parole policy. 28 U.S.C. § 2254(d)(1), (e)(1). First, the appellate court found that there was no evidence that the Board had a no-parole policy for inmates housed in the prison's security housing unit. (Ex. G at 5.) Specifically, the court found that the Board considered Ruiz's individual circumstances in assessing his parole suitability and recommended several self-help options used by inmates housed in the security housing unit to help Ruiz increase his chances for parole. (Ex. D; Ex. G at 5.) Similarly, there is no evidence in the record that the Board is requiring Ruiz to become a confidential informant before he will be found suitable for parole. (Ex. D). Indeed, both the superior and appellate courts noted Ruiz's status as a Mexican Mafia gang member, but also found that there was some evidence supporting the Board's conclusion that Ruiz's prison programming and job skills were limited and serve as a bases for denying him parole. (Ex. D; Ex. F at 6-7; Ex. G at 2-5.)

Thus, if the some evidence test applies, the state court denials were not an unreasonable application of clearly established United States Supreme Court law, nor did the state courts unreasonably determine the facts. Instead, the state court properly determined that there is some evidence in the record supporting the Board's decision, and Ruiz's Petition should be denied.

**CONCLUSION**

Ruiz received all the process he was due under clearly established Supreme Court authority. Moreover, the record reflects that the Board's decision was supported by some evidence and that the state courts reasonably determined the facts. Thus, the state courts' adjudication of Ruiz's claims was not contrary to, nor did it involve an unreasonable application of, clearly established federal law, or an unreasonable determination of the facts. Accordingly,

Ruiz's Petition should be denied.

Dated: April 11, 2008

Respectfully submitted,

EDMUND G. BROWN JR.
Attorney General of the State of California

DANE R. GILLETTE
Chief Assistant Attorney General

JULIE L. GARLAND
Senior Assistant Attorney General

ANYA M. BINSACCA
Supervising Deputy Attorney General

AMANDA J. MURRAY
Deputy Attorney General
Attorneys for Respondent

40231021.wpd
SF2008400470

Answer to Pet. for Writ of Habeas Corpus; Mem. of P. & A.

*Ruiz v. Horel*
C07-4804 JSW

12

# DECLARATION OF SERVICE BY U.S. MAIL

Case Name:   **Ruiz v. Horel**

No.:   **C07-4804 JSW**

I declare:

I am employed in the Office of the Attorney General, which is the office of a member of the California State Bar, at which member's direction this service is made. I am 18 years of age or older and not a party to this matter. I am familiar with the business practice at the Office of the Attorney General for collection and processing of correspondence for mailing with the United States Postal Service. In accordance with that practice, correspondence placed in the internal mail collection system at the Office of the Attorney General is deposited with the United States Postal Service that same day in the ordinary course of business.

On **April 15, 2008**, I served the attached

## ANSWER TO PETITION FOR WRIT OF HABEAS CORPUS; MEMORANDUM OF POINTS AND AUTHORITIES

by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid, in the internal mail collection system at the Office of the Attorney General at 455 Golden Gate Avenue, Suite 11000, San Francisco, CA 94102-7004, addressed as follows:

**George Ruiz, B-82089**
**Pelican Bay State Prison**
**P.O. Box 7500**
**Crescent City, CA 95532**
in pro per

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on **April 15, 2008**, at San Francisco, California.

|  |  |
|---|---|
| M.M. Argarin | /s/ M.M. Argarin |
| Declarant | Signature |

40240843.wpd