# EXHIBIT E



NOT TO BE PUBLISHED IN OFFICIAL REPORTS

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

COURT OF APPEAL-FOURTH DIST.

F I L E D

MAY 21 1982

KEBLAN G. CASADY, Clerk

Paul T. McN.Y

DEPUTY CLERK

| | |
|---|---|
| THE PEOPLE, | ) |
|     Plaintiff and Respondent, | ) |
| | ) |
|        v. | ) |
| GEORGE RUIZ, | ) |
|     Defendant and Appellant. | ) |

4 Crim. No. 13350

(Super. Ct. No. CR 52779)

APPEAL from a judgment of the Superior Court of San Diego County, T. Bruce Iredale, Judge. (Assigned by the Chairperson of the Judicial Council.)  Affirmed as modified.

George Ruiz appeals his conviction of kidnapping for purposes of committing robbery (Pen. Code, § 209, subd. (b))[1] and robbery (§ 211) and use of a firearm while committing both offenses (§§ 12022.5 and 1203.06, subd. (a)(1)(iii)).  Ruiz contends trial court error compels reversal on the following grounds:  (1) The evidence is insufficient to support a convic-

---

[1]All statutory references are to the Penal Code unless otherwise specified.

tion of kidnapping for the purpose of robbery; (2) there was prejudicial error in the numerous instructional errors concerning the kidnapping for purpose of robbery charge, (a) the trial court refused to instruct in terms of section 207 (simple kidnapping) and failed to include simple kidnapping as a lesser included offense; (b) the court erred in failing to instruct, sua sponte, CALJIC No. 17.01; (c) the court erred in failing to give extortion instructions; (3) the evidence is insufficient to support the robbery conviction; (4) Ruiz was denied his right to put on a defense by the trial court's refusal to allow in certain identification evidence, and in declaring it would permit his girlfriend to be impeached by her prior felony conviction; (5) section 654 prohibits the multiple punishment imposed; (6) the court erred in ordering a three-year enhancement pursuant to section 667.5, subdivision (a) as Ruiz's 1977 robbery with gun use conviction is not a prior violent felony conviction.

Facts

On December 2, 1980, between 7:10 and 7:15 p.m., Bruce Peckham left the Village Liquor Store and walked 25 feet to his car parked on the street beside the store. After entering his car, Peckham was approached by a gunman with a thin mustache and a scratch on his face, wearing a tan leisure suit, dark glasses, and band-aids on his nose and cheeks. He stuck the

2

gun through the window and told Peckham not to move or he would "blow my fucking head all over the inside of the car." The gunman asked if Peckham knew the store clerks and Peckham replied they were his friends. After further questioning, the gunman forced Peckham back into the store under a threat he would be shot if anything went wrong.

As the two men approached the cash register area, approximately 15 feet from the front door, Peckham told Scott Hoff, one of the store clerks, "Scott, this guy has a gun, he's going -- he's going to rob the place." At first the clerks did not believe Peckham. The gunman then displayed his gun and said, "Yeah, I'm going to blow your friend away if you don't do what I say." The gunman warned if an alarm went off Peckham would be the first to go. The gunman asked Mariot to put the money into a bag and told Hoff to get some cigarettes. Mariot placed the money in the bag "[b]ecause he said he -- he would shoot Bruce." Hoff gave the money and cigarettes to the gunman.

The gunman grabbed Peckham and led him out of the store and returned him to his car. The gunman released Peckham, telling him to go back into the store and not to look back. The whole episode took about eight minutes.

Two weeks later, Peckham, Mariot and Hoff separately identified Ruiz as the gunman during a photographic line-up display. They subsequently identified him at a live line-up, and at the preliminary hearing.

3

The defense was alibi Ruiz testified, on December 2, 1980, he arrived at his sister's house between 5 and 5:15 p.m., and left between 7:45 and 8:30 p.m. Ruiz's sister, brother-in-law, and niece corroborated his testimony. There was testimony to the effect Ruiz had neither scratches on his face at the time of his arrest nor did he have any scratches on December 2.

> I.   THE EVIDENCE IS SUFFICIENT TO SUPPORT A
> CONVICTION OF KIDNAPPING FOR THE PURPOSE OF
> ROBBERY

Section 209, subdivision (b) defines the crime of kidnapping for the purpose of robbery as: "Any person who kidnaps or carries away any individual to commit robbery . . . ." Section 209, subdivision (b) incorporates the definition of kidnapping from section 207. (People v. Green, 27 Cal.3d 1, 66, fn. 57; People v. Daniels, 71 Cal.2d 1119, 1131.)[2]

The mens rea is specific intent to commit robbery. (People v. Laursen, 8 Cal.3d 192, 198; People v. Smith, 223 Cal.App.2d 225, 232, disapproved on another issue; People v. Hood, 1 Cal.3d 444, 450.) Using the substantial evidence test, the conviction under section 209, subdivision (b) is affirmed for the following reasons:

---

[2]Inasmuch as the section 207 definition of kidnapping is incorporated into section 209, subdivision (b), this court is bound to follow Green under Auto Equity Sales, Inc. v. Superior Court, 57 Cal.2d 450, 455.

4

A.   The Distance Of Asportation Was Suffici-
ent To Establish A Kidnapping.

A defendant is guilty of general kidnapping if he "forcibly
steals, takes, or arrests any person in this state, and carries
him to another country, state, or county, or into another part
of the same county . . . ."   (§ 207; People v. Green, supra, 27
Cal.3d 1, 64, fn. 55.)   The Supreme Court in Green construed
the phrase "into another part of the same county" and found 90
feet was "so brief a movement" it "did not amount to a taking
into another part of the same county," and would be insuffici-
ent as a matter of law to support the verdict of guilty to a
violation of section 207 (kidnapping).

Here, the distance from Peckham's car to the front door of
the Village Liquor Store was "approximately 25 feet maybe."
The distance from the door to the cash register was 15 feet.
In total Peckham was moved, while under the control of Ruiz,
approximately 80 feet, i.e., to and from the register and the
car.   However, distance is not the essential factor in determi-
ning a kidnapping.   In People v. Daniels, supra, 71 Cal.2d
1119, 1139, the Supreme Court stated:

> "the rule of construction declared in People
> v. Chessman (1951) supra, 38 Cal.2d 166,
> 192, i.e., that 'It is the fact, not the
> distance, of forcible removal which consti-
> tutes kidnaping in this state,' is no longer
> to be followed.   Rather, we hold that the
> intent of the Legislature in amending Penal
> Code section 209 in 1951 was to exclude from
> its reach not only 'standstill' robberies
> [citation] but also those in which the move-

5

ments of the victim are merely incidental to the commission of the robbery <u>and do not substantially increase the risk of harm over and above that necessarily present in the crime of robbery itself.</u>" (Italics added.)

In <u>People</u> v. <u>Thornton</u>, 11 Cal.3d 738 (disapproved on other grounds in <u>People v. Flannel</u>, 25 Cal.3d 668, 684, fn. 12), the defendant was charged with multiple counts of kidnapping, rape and robbery. In one instance of rape he moved his victim one block. The Supreme Court stated:

"It is clear that the asportation of the victim in each of these cases was not 'merely incidental to the commission of the robbery' and that such movement 'substantially increase[d] the risk of harm over and above that necessarily present in the crime of robbery itself.' The fact that in each case defendant chose to consummate the robbery at a location remote from the place of initial contact does not render the subsequent asportation 'merely incidental' to the crime, for it is the very fact that defendant utilized substantial asportation in the commission of the crime which renders him liable to the increased penalty of section 209 if that asportation was such that the victim's risk of harm was substantially increased thereby. Clearly, any substantial asportation which involves forcible control of the robbery victim such as that occurring in this case exposes her to grave risks of harm to which she would not have been subject had the robbery occurred at the point of initial contact. [Fn. omitted.]" <u>People</u> v. <u>Thornton</u>, 11 Cal.3d 738, 768.)

In <u>Green</u>, the court found the asportation of the murder victim 90 feet did not expose her to an increased risk of harm thereby making the distance alone insufficient as a matter of law to support the conviction. However, here the facts fall

6

within the <u>Thornton</u> rule that, regardless of the distance of asportation, the question is whether the victims were exposed to increased risk of harm and the asportation was not merely incidental to the crime. (<u>People</u> v. <u>Isitt</u>, 55 Cal.App.3d 23, 28-29.) We hold the asportation in this case was sufficient as a matter of law to sustain a kidnapping conviction.

> B.  The Evidence Is Sufficient To Establish
> The Mens Rea Element For The Crime Of Kid-
> napping For The Purpose Of Robbery.

Section 209, subdivision (a) requires a specific intent to hold for ransom or to obtain something of value from friends or relatives (<u>People</u> v. <u>Anderson</u>, 97 Cal.App.3d 419, 424-425), and subdivision (b) requires a specific intent to rob (<u>People</u> v. <u>Shelburne</u>, 104 Cal.App.3d 737, 742-743).

Ruiz contends the evidence is insufficient to support any finding Ruiz had a specific intent to rob, but rather the evidence establishes a seizure and minimal asportation with specific intent to "exact from . . . friends . . . money or valuable things." (§ 209, subd. (a).) Ruiz argues he should have been charged more appropriately with extortion. Section 518 defines extortion as "the obtaining of property from another, with his consent . . . induced by wrongful use of force or fear . . . ." <u>People</u> v. <u>Peck</u>, 43 Cal.App. 638, explains the difference between the two crimes.

> "Thus, it will be noted, in this state the
> crime may be committed by any person, but to
> constitute the crime of extortion in any
> case, the taking of the property must be

7

> with the consent of the person from whom it
> is obtained; and it is the fact that the
> property taken must be <u>with the consent</u> of
> the person from whom it is obtained that
> distinguishes the crime of extortion from
> that of robbery, the latter crime being
> defined as 'the felonious taking of personal
> property in the possession of another, from
> his person or immediate presence, and
> against his will accomplished by means of
> force or fear.' (Pen. Code, § 211.)"
> (<u>People</u> v. <u>Peck</u>, 43 Cal.App. 638, 643.)

<u>In re Stanley E.</u>, 81 Cal.App.3d 415, 420, recently affirmed
this distinction concluding consent of the victim is a neces-
sary legal ingredient of the corpus delicti of the offense of
extortion.

Ruiz was not charged with violating of section 209, sub-
division (a) and the evidence clearly shows a specific intent
to rob as required by section 209, subdivision (b). Ruiz
approached Peckham's car and pointed a gun to his head. Ruiz
inquired how many persons were inside the store, whether they
were armed, and if there was an alarm. Ruiz instructed Peckham
to go inside the store with him and not to do anything wrong or
he would be shot. According to Mark Mariot, the store clerk
who the prosecutor designated as the robbery victim in the
information, Peckham entered the store and said "This guy's
going to rob you. . . . [¶] He has a gun." After Ruiz pro-
duced his gun he said, "Yeah, I'm going to blow your friend
away if you don't do what I say." When the prosecutor asked
Mariot why he took the money out of the register, Mariot
replied, "Because he said he -- he would shoot Bruce."

8

Section 211 defines robbery as: "Robbery is the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear." Clearly, Ruiz had formed the intent to rob by the time he moved his victim to permanently deprive the liquor store of its property by taking the money against Mariot's will. The evidence is sufficient to support the conviction under section 209, subdivision (b).

Ruiz argues that, although he was not charged with extortion, the court should have instructed the jury, sua sponte, on extortion (CALJIC No. 14.70 (1979 rev.)), and its accompanying insructions (CALJIC Nos. 14.71, 14.74). Ruiz contends the jury could have found extortion instead of robbery from Mariot's testimony if the two crimes had been distinguished. He asserts, without these instructions, the jury would automatically presume the giving of money in exchange for a friend's life was against Mariot's will.

The trial court has a duty as set forth in People v. Flannel, 25 Cal.3d 668, 680-681, to instruct on the "general principles of law governing the case" which are defined as those principles commonly or closely and openly connected with the facts of the case before the court. Extortion is not a lesser included offense of robbery, In re Stanley E., supra, 81 Cal.App.3d 415, 420, nor is it charged in this case. The jury

9

was free to determine from Mariot's testimony whether Ruiz
committed a robbery within the guidelines set out by the court
in its instructions on robbery.

>    II.  THE TRIAL COURT DID NOT ERR IN REFUSING
>    TO INSTRUCT IN TERMS OF SECTION 207 (SIMPLE
>    KIDNAPPING) AND FAILING TO DESIGNATE SIMPLE
>    KIDNAPPING AS A LESSER INCLUDED OFFENSE.

The trial court instructed the jury under CALJIC No. 9.23
(kidnapping to commit robbery) and refused to instruct in terms
of section 207 as requested by defense counsel.  Defense
counsel wanted the jury to be instructed with regard to section
207 in order they may better understand the meaning of substan-
tial distance.  The trial court stated he would instruct only
with regard to the statute violation charged, i.e., section 209
and not section 207.  CALJIC No. 9.23 states:

>    "Kidnaping is the unlawful movement by
>    physical force of a person against his will
>    and without his consent for a substantial
>    distance where such movement is not merely
>    incidental to the commission of the robbery
>    and where such movement substantially
>    increases the risk of significant physical
>    injuries to such person over and above those
>    to which such person is normally exposed in
>    the commission of the crime of robbery
>    itself."

This instruction defines kidnapping adequately under People
v. Thornton, supra, 11 Cal.3d 738, and People v. Green, supra,
27 Cal.3d 1.  It shows the jury the movement may not be "merely
incidental to the commission of the robbery" and it must
"substantially increase . . . the risk of significant physical
injuries . . . ."

10

Since the presumed error was in the instructions, the test to be applied is that of article VI, section 13 of our Constitution, that is, whether there has been a miscarriage of justice. "[A] 'miscarriage of justice' should be declared only when the court 'after an examination of the entire case, including the evidence,' is of the 'opinion' that it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error." (People v. Watson, 46 Cal.2d 818, 836; People v. Ramirez, 2 Cal.App.3d 345, 357; People v. Johnson, 30 Cal.3d 444, 448.) We do not believe it is reasonably probable a result more favorable to Ruiz would have been obtained even if error occurred.

Further, the trial court had no obligation to instruct on simple kidnapping as a lesser included offense. The court in People v. Sedeno, 10 Cal.3d 703 (disapproved on other grounds in People v. Flannel, 25 Cal.3d 668, 684, fn. 12), defines the obligation to instruct on principles of law to include, giving instructions on lesser included offenses when the evidence raises a question as to whether all of the elements of the charged offense were present (see, e.g., People v. Hood, 1 Cal.3d 444) but not when there is no evidence the offense was less than that charged. (People v. Noah, 5 Cal.3d 469, 479; People v. Osuna, 70 Cal.2d 759, 767.)

Simple kidnapping is a lesser offense included within the crime of kidnapping with the intent to commit robbery. (People

v. <u>Gallagher</u>, 164 Cal.App.2d 414, 419; People v. <u>Smith</u>, <u>supra</u>, 223 Cal.App.2d 225, 234-235 (disapproved on other grounds in <u>People v. Hood</u>, 1 Cal.3d 444, 450); CALJIC (4th ed. 1979) Appendix C., p. 341.) The aggravated offense requires the additional element of an intent to rob. If the intent to rob (even though carried out during the course of the kidnapping) is formed after the victim is seized, the offense, insofar as it relates to kidnapping, is simple kidnapping and not kidnapping for the purpose of robbery. (<u>People</u> v. <u>Bailey</u>, 38 Cal.App.3d 693, 699; <u>People</u> v. <u>Tribble</u>, 4 Cal.3d 826, 831-832; <u>In re Alvarado</u>, 27 Cal.App.3d 610, 612.)

In <u>People</u> v. <u>Bailey</u>, <u>supra</u>, 38 Cal.App.3d 693, the undisputed evidence showed the robbery of the kidnapped victims occurred after they were kidnapped. There was no direct evidence on the issue of when the intent to rob his victims was formed in Bailey's mind and the court found the jury could have reasonably concluded the kidnapping was motivated by Bailey's desire to get away from Palomar Mountain while the intent to rob was not formed until after the kidnapping began. In that event his crime would be simple kidnapping (§ 207), not kidnapping for the purpose of robbery (§ 209), and it was error for the trial court not to instruct on the lesser as well as the greater offense. (<u>People</u> v. <u>Sedeno</u>, <u>supra</u>, 10 Cal.3d 703, 715; <u>People</u> v. <u>Hood</u>, <u>supra</u>, 1 Cal.3d 444, 449.) Here, the evidence unequivocally shows the intent to rob was formed <u>at the time</u>

12

the kidnapping began; there was no evidence the offense was less than that charged and therefore an instruction for simple kidnapping as a lesser included offense was unnecessary.

III.    THE COURT PROPERLY DID NOT INSTRUCT, SUA SPONTE, CALJIC NO. 17.01.

"[E]ven in the absence of a request, a trial court must instruct on the general principles of law governing the case, i.e., those principles relevant to the issues raised by the evidence, but need not instruct on specific points developed at trial. [Fn. omitted.]  'The most rational interpretation of the phrase "general principles of law governing the case" would seem to be as those principles of law commonly or closely and openly connected with the facts of the case before the court.' (People v. Wade . . . , 53 Cal.2d 322, 334, italics added; see also People v. Sedeno . . . , 10 Cal.3d at p. 715, citing People v. St. Martin . . . , 1 Cal.3d 524, 531; People v. Wilson (1967) 66 Cal.2d 749, 759 . . . .)" (People v. Flannel, 25 Cal.3d 668, 680-681.)

Ruiz contends the judgment should be reversed because the court failed to give, sua sponte, CALJIC No. 17.01, which reads:

"The defendant is charged with the offense of _____.  He may be found guilty if the proof shows beyond a reasonable doubt that he committed any one or more of such acts, but in order to find the defendant guilty, all the jurors must agree that he committed the same act or acts.  It is not necessary that the particular act or acts committed so agreed upon be stated in the verdict."

People v. Kent, 125 Cal.App.3d 207, 212-213, summarizes the applicable law:

"It is a fundamental principle of our criminal justice system that the prosecution must prove beyond a reasonable doubt 'every fact

13

necessary to constitute the crime which [the defendant] is charged.' (In re Winship (1970) 397 U.S. 358, 364 [25 L.Ed.2d 368, 375, 90 S.Ct. 1068, 1073].) It is also clear that where evidence presented to the jury indicates more than one act which may constitute the charged offense, the jury must be instructed that it must unanimously agree on the specific criminal act in order to convict the defendant. (People v. Madden (1981) 116 Cal.App.3d 212, 218-219 [171 Cal.Rptr. 897]; People v. McNeill (1980) 112 Cal.App.3d 330, 335-336 [169 Cal.Rptr. 313].)"

Here, there was evidence of only one act presented to the jury. Ruiz inappropriately relies on People v. Epps, 122 Cal.App.3d 691, 700-701, to support his contention. In Epps, defendant was charged with and convicted of annoying or molesting a minor (§ 647, subd. (a)) on the dates between January 1 and February 26, 1979. There was testimony about many separate incidents and the prosecutor presented alternative acts to the jury suggesting any one of them could be considered a violation of section 647, subdivision (a). Ruiz also relies on People v. Green, supra, 27 Cal.3d 1. Since the prosecutor in Green presented separate incidents of asportation, the court there held the jury should have been instructed on CALJIC No. 17.01. Here, there was one continuous act; Ruiz forced Peckham from his car into the store and then back to his car, the entire interaction took five to eight minutes. There was no need for the jury to be instructed, sua sponte, CALJIC No. 17.01.

14

IV.  RUIZ WAS NOT DENIED HIS RIGHT TO PUT ON
     A DEFENSE

At trial Ruiz moved to introduce identification evidence of
two unrelated robberies which occurred in November of 1980.  He
offered to prove two witnesses/victims who worked at Miki-San's
Japanese restaurant would testify Ruiz attempted to rob
them.[3]  They would also testify a tattoo on Ruiz's stomach is
different from a tattoo they saw on the robber's stomach.  The
defense also offered to prove a person matching Ruiz's general
description robbed a parking attendant and the victim did not
identify Ruiz at a physical line-up.  Ruiz argues the evidence
would have shown another person fitting his description and
using a similar modus operandi was committing robberies in San
Diego.

Ruiz's motion was properly denied because the trial court
believed the probative value of evidence of the robberies was
slight because they were too dissimilar, that their introduc-
tion would mislead and confuse the jury, and ultimately would
be prejudicial to the defendant.  (Evid. Code, § 352.)

The probative value of other-crimes evidence on the issue
of identity depends upon the extent to which it raises an

_____

[3]A complaint was filed against Ruiz on this robbery and a
preliminary hearing was pending at the time of the instant
trial.

15

inference the perpetrator of the uncharged offenses committed
the charged offense, and the determination as to the presence
and strength of such an inference proceeds by evaluating common
marks of the uncharged and charged crimes.  (People v.
Thornton, supra, 11 Cal.3d 738.)

> "[O]nly common marks having some degree of
> distinctiveness tend to raise an inference
> of identity and thereby invest other-crimes
> evidence with probative value.  The strength
> of the inference in any case depends upon
> two factors:  (1) the degree of distinctive-
> ness of the individual shared marks, and
> (2) the number of minimally distinctive
> shared marks."  (Id., at p. 756.)

Here, the uncharged crimes were substantially dissimilar to
the instant robbery.  (See Appendix A.)  Ruiz inappropriately
relied on several cases to support his proposition.  In People
v. Mitchell, 100 Cal. 328, 334, the court held it was error to
exclude evidence that a third person, who had been charged and
acquitted of the same charged offense, perpetrated the charged
offense.  In Pettijohn v. Hall (1st Cir. 1979) 599 F.2d 476,
477-478, it was error to exclude evidence an eyewitness to the
charged offense identified a third person as the perpetrator.
In United States v. Robinson (2d Cir. 1976) 544 F.2d 110,
112-113, it was considered error to exclude evidence a correc-
tional officer identified a third person as the one depicted in
the bank surveillance photograph of the charged robbery and not
the defendant.  In United States v. Armstrong (9th Cir. 1980)

16

621 F.2d 951, 953, the court held it was error to exclude evidence another man matching the description of the robber had used bait money taken in that charged robbery to purchase a car. Obviously, these cases are inapplicable. Here the evidence sought to be admitted related to uncharged crimes, containint many dissimilarities. The trial court did not abuse its discretion in excluding this evidence.

V.    THE COURT PROPERLY RULED THE DEFENSE WITNESS COULD BE IMPEACHED BY HER PRIOR FELONY CONVICTION

Ruiz argues the trial court erred in failing to exclude his girlfriend's prior grand theft conviction thereby denying him the benefit of her alibi testimony when she opted not to testify.

In People v. Woodard, 23 Cal.3d 329, 338-339, the Supreme Court held the Beagle[4] balancing test is not limited to a witness/defendant but must be exercised whenever any party moves for the exclusion of any witness' prior felony conviction.

"In People v. Beagle (1972) 6 Cal.3d 441 [99 Cal.Rptr. 313, 492 P.2d 1], this court unanimously held that although Evidence Code section 788[2] authorizes the admission of

---

[4]People v. Beagle, 6 Cal.3d 441.

"[2]Evidence Code section 788 provides in pertinent part: 'For the purpose of attacking the credibility of a

17

prior felony convictions to impeach the
credibility of a witness, a trial court
must, when requested, exercise its discre-
tion under section 352[3] [Evid. Code] and
exclude this evidence if the probative value
of the prior convictions is outweighed by
other factors, such as the risk of undue
prejudice. (People v. Beagle, supra, 6
Cal.3d at pp. 452-453; People v. Antick
(1975) 15 Cal.3d 79, 96-99 [123 Cal.Rptr.
475, 539 P.2d 43]; People v. Rist (1976) 16
Cal.3d 211, 218-219 [127 Cal.Rptr. 475, 545
P.2d 833]; People v. Rollo (1977) 20 Cal.3d
109, 115-116 [141 Cal.Rptr. 177, 569 P.2d
771].)

". . . . . . . . . . . . . . . . . . . . .

"Moreover, even felony convictions which are
relevant to establish truthfulness are not
equally probative of that issue. 'No one
denies that different felonies have differ-
ent degrees of probative value on the issue
of credibility. Some, such as perjury, are
intimately connected with that issue;
others, such as robbery and burglary, are
somewhat less relevant; and "'Acts of
violence . . . generally have little or no
direct bearing on honesty and veracity.'"'
(People v. Rollo, supra, 20 Cal.3d at
p. 118.) Therefore, if a court determines
that a prior conviction involves truthful-
ness, it must consider the 'degree of proba-
tive value' it has on that issue when ruling
on a Beagle motion.

---

witness, it may be shown by the examination of the witness or
by the record of the judgment that he has been convicted of a
felony. . . .'
    ". . . . . . . . . . . . . . . . . " . . . . . . . . . . . . . ."

    "3[Evidence Code s]ection 352 provides: 'The court in
its discretion may exclude evidence if its probative value is
substantially outweighed by the probability that its admission
will (a) necessitate undue consumption of time or (b) create
substantial danger of undue prejudice, of confusing the issues,
or of misleading the jury.'"

18

The second factor to be considered is the nearness or remoteness of time of the prior conviction. (People v. Beagle, supra, 6 Cal.3d at p. 453.) A conviction, "'[e]ven one involving fraud or stealing, for example, if it occurred long before and has been followed by a legally blameless life[5] should generally be excluded on the ground of remoteness.'" (Ibid.) The 'remoteness detracts significantly from the value of this evidence in impeaching . . . credibility.' (People v. Antick, supra, 15 Cal.3d at p. 99.)

"These two factors, which show the probative value of the prior conviction, must be weighed by the trial court to determine whether admission of this evidence 'will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury.' (§ 352 [Evid. Code].) Prior decisions have identified certain countervailing factors which are of particular importance in this balancing process when the witness is a criminal defendant. Among these factors are: (1) the 'unique risk of undue prejudice and confusion of issues. Despite limiting instructions, the jury is likely to consider this evidence for the improper purpose of determining whether the accused is the type of person who would engage in criminal activity . . . .' (People v. Antick, supra, 15 Cal.3d at p. 97); and (2) the adverse effect on the administration of justice should the defendant elect not to testify in order to keep this information from the jury. (People v. Beagle, supra, 6 Cal.3d at p. 453.)" (People v. Woodard, supra, 23 Cal.3d 334-337.)

---

"[5]In People v. Antick, supra, 15 Cal.3d at p. 99, this court noted that the absence of 'a "legally blameless life" . . . , at most, enhance[s] only slightly the probative value of the evidence for impeachment purposes.'"

19

Here, the record shows the trial court considered the offer of proof and weighed the factors in accordance with Woodard and Beagle. Clearly, the conviction was relevant; a prior felony conviction for grand theft occurring only seven years prior to trial bears on her credibility as a witness. Beagle suggests there is no impeaching relevancy except where the felonious conduct relates to an element integral to determining credibility, namely dishonesty or truthfulness. Thus, perjury and theft-related felonies are always relevant. Seven years does not per se make the conviction so remote as to make it irrelevant. (People v. Newton, 107 Cal.App.3d 568.) Additionally, defense counsel had the opportunity to offer proof showing the girlfriend had led a blameless life since committing the prior crime. In addition, the testimony was cumulative. Ruiz stated she would testify she received a phone call from him and she could tell he was calling from his sister's home by the noises in the background; that she did not know the exact time the call was made but recalled the date. This testimony is cumulative to the testimony of Ruiz's sister and brother-in-law who said he was at their house at the time of the robbery. The most important aspect of her testimony would be with regard to the time the call was placed and she was unable to testify to that fact. Therefore, even if evidence of her conviction should have been excluded, it would have been harmless error as her testimony was minimally probative and cumulative.

VI.  SECTION 654 DOES NOT PRECLUDE MULTIPLE
SENTENCES ON THESE FACTS

Ruiz contends his multiple punishment for robbery with gun use (seven years) and kidnapping for the purpose of robbery (life consecutive sentence) violates section 654.[5]

The multiple punishment is proper because the kidnapping for the purpose of robbery and the robbery involved separate victims. In Neal v. State of California, 55 Cal.2d 11, 20-21, the court held, "Section 654 is not '. . . applicable where . . . one act has two results each of which is an act of violence against the person of a separate individual.' [Citations.]"

In People v. Miller, 18 Cal.3d 873, 885, the court stated:

"Notwithstanding the foregoing determination that defendant entertained but a single principal objective during an indivisible course of conduct, he may nevertheless be punished for multiple convictions if during the course of that conduct he committed crimes of violence against different victims. [Citations.] As the purpose of section 654 'is to insure that defendant's punishment will be commensurate with his criminal liability,' when he 'commits an act of violence with the intent to harm more than one person or by means likely to cause

---

[5]Section 654 states: "An act or omission which is made punishable in different ways by different provisions of this code may be punished under either of such provisions, but in no case can it be punished under more than one; an acquittal or conviction and sentence under either one bars a prosecution for the same act or omission under any other."

21

harm to several persons,' his greater cul-
pability precludes application of section
654. [Citations.]"

Ruiz quotes the following from People v. Laursen, supra, 8
Cal.3d 192, 200-201, fn. 7, to support his contention there is
no multiple victim exception to section 654 with a section 209,
subdivision (a) conviction, "It is irrelevant that the victim
of the kidnapping was not also the victim of the robbery. As
stated earlier, the purpose of section 209 is the protection of
the public at large, rather than just the victims of the
robbery alone." This argument is set forth by Ruiz on the
presumption we would find he was improperly charged under
section 209 subdivision (b); we did not so find. There is no
section 654 error.[6]

    VII.   THE COURT ERRED IN ORDERING A THREE-
    YEAR ENHANCEMENT PURSUANT TO SECTION 667.5,
    SUBDIVISION (a)

Ruiz's prior felony, a 1977 robbery with gun use conviction
(§§ 211, 12022.5), was found to be a violent felony within

_____

[6]Whether multiple punishment under section 209, subdivi-
sion (a) is impermissible under section 654 because it neces-
sarily contemplates two or more victims, is a question we do
not reach at this time. However, under the reasoning set forth
previously in People v. Miller, supra, 18 Cal.3d 873, and Neal
v. State of California, supra, 55 Cal.2d 11, if section 209,
subdivision (a) contemplates two or more victims then the
defendant's punishment should be commensurate with his criminal
liability and multiple punishment could be imposed under
section 209, subdivision (a) as well.

22

section 667.5, subdivision (a), and resulted in a three-year enhancement.[7]

In direct response to People v. Harvey, 25 Cal.3d 754, 761, the Legislature amended section 1170.1, subdivision (a), to include robbery with firearm use. This measure became law on May 29, 1980. As Ruiz correctly points out, under several appellate court decisions, robbery with gun use committed before May 29, 1980, would not qualify as a subdivision (c) violent felony conviction. (See People v. Matthews, 108 Cal.App.3d 793; People v. Mota, 115 Cal.App.3d 277, 235.)

---

[7]Section 667.5, subdivision (a), provides in pertinent part: "[e]nhancement of prison terms for new offenses because of prior prison terms shall be imposed as follows:
(a) Where one of the new offenses is one of the violent felonies specified in subdivision (c), in addition and consecutive to any other prison terms therefor, the court shall impose a three-year term for each prior separate prison term served by the defendant where the prior was one of the violent felonies specified in subdivision (c); . . . ."
Section 667.5, subdivision (c) provides: "For the purpose of this section, 'violent felony' shall mean any of the following:    [¶] (1) Murder    or    voluntary    manslaughter. [¶] (2) Mayhem.    [¶] (3) Rape as defined in subdivision (2) of Section 261.    [¶] (4) Sodomy by force, violence, duress, menace, or threat of great bodily harm.    [¶] (5) Oral copulation by force, violence, duress, menace, or threat of great bodily harm.    [¶] (6) Lewd acts on a child under 14 as defined in Section 288.    [¶] (7) Any felony punishable by death or imprisonment in the state prison for life.    [¶] (8) Any other felony in which the defendant inflicts great bodily injury on any person other than an accomplice which has been charged and proved as provided for in Section 12022.7 on or after July 1, 1977, or as specified prior to July 1, 1977, in Sections 213, 264, and 461, or any felony in which the defendant uses a firearm which use has been charged and proved as provided in Section 12022.5."

Under this court's decision in People v. Davis, 103
Cal.App.3d 270, 279, the proper remedy for the claimed error is
to reverse the three-year enhancement, and impose a one-year
enhancement pursuant to section 667.5, subdivision (b).

In Davis, the court held a 1971 prior armed robbery convic-
tion was "not a violent felony within section 667.5, subdivi-
sion (c)." (People v. Davis, supra, 103 Cal.App.3d 270, 277.)
For the same reason Ruiz's prior is not a violent felony under
section 667.5, subdivision (a) and properly falls under section
667.5, subdivision (b), deleting two years from his aggregate
term.

    VIII. RUIZ'S SENTENCE DID NOT VIOLATE IN RE
    CULBRETH, 17 Cal.3d 330.

Ruiz contends the sentence imposed violates the rule of In
re Culbreth, 17 Cal.3d 330, which prohibits imposing sentences
for two enhancements pursuant to section 12022.5. Although gun
use true findings were returned on each count, the record shows
a two-year gun use enhancement was only imposed on the robbery
(count I) conviction; none on the kidnapping count.

Once the use of a firearm is found to be true, the enhance-
ment must be imposed, unless stricken.[8]

---

    [8]"When the court imposes a prison sentence for a felony
pursuant to Section 1170, the court shall also impose the addi-
tional terms provided in Section . . . 12022.5 . . . and
12202.7, unless the additional punishment therefore is stricken

Here the court did not impose the section 12022.5 kidnapping enhancement, and by not doing so impliedly struck it as shown both in the pronouncement of judgment, the abstracts of judgment and in the record. (*People* v. *Whitehouse*, 112 Cal.App.3d 479, 482.)[9]

The judgment is modified to strike the three-year enhancement for section 667.5, subdivision (a) and to add a one-year enhancement for section 667.5, subdivision (b); in all aother respects, the judgment is affirmed.

_____
                                    WORK, J.

WE CONCUR:

_____
        COLOGNE, Acting P.J.

_____
        STANIFORTH, J.

_____

pursuant to subdivision (g)." (§ 1170.1, subd. (c).) "Notwithstanding any other provision of law, the court may strike the additional punishment for the enhancements . . . if it determines that there are circumstances in mitigation of the additional punishment . . . ." (§ 1170.1, subd. (g).)

[9] Had the court imposed two enhancements it would not have violated In re Culbreth, *supra*, 17 Cal.3d 330. In *People* v. *Blessing*, 94 Cal.App.3d 835 and *People* v. *Wischemann*, 94 Cal.App.3d 162, 173, it was held that *Culbreth* does not apply to situations where the facts show, as here, separate victims.

25