# EXHIBIT F

F I L E D

Clerk of the Superior Court

OCT 1 1 2006

By:_____,Deputy

THE SUPERIOR COURT OF THE STATE OF CALIFORNIA
IN AND FOR THE COUNTY OF SAN DIEGO

IN THE MATTER OF THE APPLICATION OF:   )  HC 18616
                                 )  CR 52779
                                 )
GEORGE RUIZ,                       )
                                 )  ORDER DENYING PETITION FOR
                                 )  WRIT OF HABEAS CORPUS
             Petitioner.        )
                                 )
_____)

AFTER REVIEWING THE PETITION FOR WRIT OF HABEAS CORPUS, THE COURT FINDS:

On April 2, 1981, a jury found Petitioner guilty of one count of kidnapping to commit robbery (Penal Code § 209(b)) and one count of robbery (Penal Code § 211), with the allegation that he had used a firearm to commit both offenses. On April 3, 1981, in a separate court trial the Court found one prior offense to be valid and struck two other prior convictions. On May 22, 1981, the Court sentenced Petitioner to 17 years to life. One year later, the Fourth District Court of Appeal affirmed the judgment but ordered a modification in the total sentence. On September 20, 1982, the Court modified the total term to 15 years to life.

Petitioner's minimum release date was June 3, 1993, and his seventh parole eligibility hearing was conducted at Pelican Bay State Prison on May 9, 2006. Parole was denied apparently at least until January of 2007.

1    Petitioner has now filed his first petition for writ of habeas corpus on or about August 17,
2  2006, and pursuant to California Rule of Court 4.551, this Court has 60 days to rule upon the issue(s)
3  presented.

4    Petitioner claims that the Board of Parole Hearings (BPH) has "been operating under an
5  illegal blanket [of] no parole policy for all prisoners serving term-to-life sentences who are confined
6  to the Department of Corrections security housing unit at Pelican Bay State Prison solely for
7  administrative reasons." He also claims that there was no evidence to support the BPH decision to
8  again deny parole.

9    Petitioner has been confined to that security housing unit (SHU) for many years because he
10  is, and has been since the 1970s, a validated member of the "Mexican Mafia" prison gang. Petitioner
11  remains in the SHU because he has continually refused to "debrief," which he takes to mean to
12  become an informant for the Department of Corrections. As a direct consequence of that housing
13  situation, Petitioner has been unable to upgrade both vocationally and educationally.

14    As noted, Petitioner was denied parole on May 9, 2006. The reasons stated by the BPH are
15  that it believes Petitioner still poses an unreasonable risk of danger to society/threat to public safety
16  and that, because he has been unable to program for so many years he does not have job skills and
17  appropriate and strong parole plans other than living with his daughter with unskilled labor tasks
18  available. He was commended for his excellent discipline-free history and the BPH fully understood
19  that Petitioner did not want to "debrief" so that he could be placed in a more general population
20  because of his fear of reprisals against his family.

21    This Petition is denied for the following reasons.

22    Every petitioner must set forth a *prima facie* statement of facts which would entitle him to
23  habeas corpus relief under existing law.  In re Bower (1985) 38 Cal.3d 865, 872. Vague or
24  conclusory allegations do not warrant habeas relief. People v. Duvall (1995) 9 Cal.4th 464, 474.
25  The petitioner bears the burden of proving the facts upon which he bases his claim for relief. In re
26  Riddle (1962) 57 Cal.2d 848, 852.  The petition should include copies of reasonably available
27  documentary evidence in support of claims, including pertinent portions of hearing transcripts and
28  affidavits or declarations. People v. Duvall, supra, 9 Cal.4th at 474. A petitioner's unsubstantiated

1 | statements do not provide a sufficient basis upon which to prove his claims. In re Alvernaz (1992) 2

2 | Cal.4th 924, 945.)

3 |     While Petitioner has provided a full copy of the parole hearing transcript, letters, and the

4 | transcripts from previous parole suitability hearings, he still has not met this burden for the reasons

5 | detailed below. Regardless of this Court's view of the current state of the law, it still must follow the

6 | dictates of the legislature and California case law, also as discussed below.

7 | **Overview of parole suitability standards:**

8 |     By statute, when determining suitability for parole, the parole board "shall normally set a

9 | parole release date" (Penal Code § 3041(a)) "unless it determines that the gravity of the current

10 | convicted offense or offenses, or the timing and gravity of a current or past convicted offense or

11 | offenses, is such that consideration of the public safety requires a more lengthy period of

12 | incarceration for this individual." (Penal Code § 3041(b)). The state Legislature has given the BPH

13 | the power to establish the rules and regulations regarding release on parole. (Penal Code § 3052.)

14 | The BPH regulations require a panel determining parole suitability for a life prisoner to find the

15 | prisoner unsuitable for parole if, in the judgment of the panel, the prisoner will pose an unreasonable

16 | risk of danger to society if released from prison. (California Code of Regulations, Title 15 [hereafter

17 | 15 C.C.R.] §§ 2281(a), 2402(a).) The BPH should consider all relevant, reliable information

18 | available to it, including the prisoner's social history, past and present mental state, criminal history,

19 | commitment offenses, behavior before, during and after the crime, attitudes toward the crime, and

20 | any other information that bears on the prisoner's suitability for release on parole. (15 C.C.R. §§

21 | 2281(b), 2402(b).)

22 |     The BPH has also set forth general factors that tend to show suitability and unsuitability for

23 | parole. (15 C.C.R. §§ 2281(c)-(d), 2402(c)-(d).) The following are the factors tending to show

24 | *unsuitability* for parole that the parole board should consider:

25 |     (1) Commitment Offense. The prisoner committed the offense in an especially heinous, atrocious or cruel manner. The factors to be considered include:

26 | (A) Multiple victims were attacked, injured or killed in the same or separate incidents.

27 | (B) The offense was carried out in a dispassionate and calculated manner, such as an execution-style murder.

28 | (C) The victim was abused, defiled or mutilated during or after the offense.

(D) The offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering.
(E) The motive for the crime is inexplicable or very trivial in relation to the offense.
(2) Previous Record of Violence. The prisoner on previous occasions inflicted or attempted to inflict serious injury on a victim, particularly if the prisoner demonstrated serious assaultive behavior at an early age.
(3) Unstable Social History. The prisoner has a history of unstable or tumultuous relationships with others.
(4) Sadistic Sexual Offenses. The prisoner has previously sexually assaulted another in a manner calculated to inflict unusual pain or fear upon the victim.
(5) Psychological Factors. The prisoner has a lengthy history of severe mental problems related to the offense.
(6) Institutional Behavior. The prisoner has engaged in serious misconduct in prison or jail.
(15 C.C.R. § 2402(c).)

The following are the factors tending to show *suitability* for parole that the parole board should consider:

(1) No Juvenile Record. The prisoner does not have a record of assaulting others as a juvenile or committing crimes with a potential of personal harm to victims.
(2) Stable Social History. The prisoner has experienced reasonably stable relationships with others.
(3) Signs of Remorse. The prisoner performed acts which tend to indicate the presence of remorse, such as attempting to repair the damage, seeking help for or relieving suffering of the victim, or indicating that he understands the nature and magnitude of the offense.
(4) Motivation for Crime. The prisoner committed his crime as the result of significant stress in his life, especially if the stress has built over a long period of time.
(5) Battered Woman Syndrome. At the time of the commission of the crime, the prisoner suffered from Battered Woman Syndrome, as defined in section 2000(b), and it appears the criminal behavior was the result of that victimization.
(6) Lack of Criminal History. The prisoner lacks any significant history of violent crime.
(7) Age. The prisoner's present age reduces the probability of recidivism.
(8) Understanding and Plans for Future. The prisoner has made realistic plans for release or has developed marketable skills that can be put to use upon release.
(9) Institutional Behavior. Institutional activities indicate an enhanced ability to function within the law upon release.
(15 C.C.R. § 2402(d)).

The precise manner in which these specified factors are considered and balanced lies within the broad discretion of the BPH, but any decision to deny parole cannot be arbitrary or capricious. In re Rosenkrantz (2002) 29 Cal.4th 616, 656-657, 677 (Rosenkrantz).) Thus, the standard is that a life prisoner such as Petitioner should be granted parole unless the BPH finds, in the exercise of its broad discretion, the prisoner is unsuitable for parole in light of the circumstances specified by statute and by regulation. (See Rosenkrantz, supra, 29 Cal.4th at 654-655.) The overriding factor in determining whether a prisoner is suitable for parole is public safety. (Penal Code § 3041; 15 C.C.R.

§ 2402(a); In re Dannenberg (2005) 34 Cal.4th 1061, 1084 (Dannenberg); In re Scott (2005) 133 Cal.App.4th 573, 591 (Scott).)

Judicial review of the BPH's decision whether a prisoner is suitable for parole is limited to a determination of whether the factual basis for the decision is supported by some evidence in the record presented to the parole board that has some indicia of reliability. (Rosenkrantz, supra, 29 Cal.4th at 667; Scott, supra, 133 Cal.App.4th at 590-591.) This standard of review requires only a "modicum of evidence." (Rosenkrantz, supra, 29 Cal.4th at 677.) It is within the BPH's discretion to decide how to resolve conflicts in the evidence and to decide how much weight to give each factor. (Id. at 656, 677.) "It is irrelevant that a court might determine that evidence in the record tending to establish suitability for parole far outweighs evidence demonstrating unsuitability for parole." (Id. at 677.) As long as the BPH's decision reflects individualized consideration of the specified criteria and legal standards, and is not arbitrary or capricious, the court's review is limited to ascertaining whether there is some evidence in the record that supports the decision. (Id.)

**Petitioner's claims on habeas corpus:**

Petitioner argues he was deprived of his constitutionally protected liberty interest in parole because (1) the BPH uses a blanket policy to deny parole to any to-life prisoner and (2) there was no evidence to support its decision.

However, these claims are without merit because there is "some evidence" to support the Board's decision finding Petitioner unsuitable for release on parole.

The federal courts indeed have found the language of Penal Code § 3041 creates a liberty interest in release on parole, which is protected by the procedural safeguards of the due process clause. (Biggs v. Terhune (9th Cir. 2003) 334 F.3d 610, 614; McQuillion v. Duncan (9th Cir. 2002) 306 F.3d. 895, 902-903; see also, Rosenkrantz, supra, 29 Cal.4th at 653.) However, the California Supreme Court has recently found that whether a prisoner is suitable for parole trumps the prisoner's expectancy of a set parole date. (Dannenberg, supra, 34 Cal.4th at 1070-1071 ["The statutory scheme, viewed as a whole, thus clearly elevates a life prisoner's individual suitability for parole above the inmate's expectancy in early setting of a fixed and "uniform" parole date."]) Thus, there is no violation of a prisoner's liberty interest if the parole board properly denied parole.

1    A decision to deny parole can be based on the nature of the prisoner's underlying offense
2  alone, as long as the parole board has given due consideration to all applicable factors regarding
3  suitability for parole (Rosenkrantz, supra, 29 Cal.4th at 677, 682-683; see also, Scott, supra, 133
4  Cal.App.4th at 594-595), and the circumstances of the commitment offense reasonably could be
5  considered more aggravated or more violent than the minimum necessary to sustain a conviction for
6  that offense (Rosenkrantz, supra, at 678, 683; see also, Dannenberg, supra, 34 Cal.4th at 1098.)

7    The parole board in this case did not rely solely on Petitioner's commitment offense in
8  denying him parole.  The BPH gave due consideration to all the applicable factors regarding
9  suitability for parole as set forth in 15 C.C.R. §2402(c), (d).   First, the BPH considered the
10  underlying commitment offense, but paid more attention to the fact Petitioner really did not express
11  remorse or concern for the victims of his crimes.

12    At page 39 of the transcript from the May 9th hearing, Petitioner was asked "What do you
13  think about those victims? What do you think about them today?" His answer, which was vague and
14  certainly considered by the BPH, was, "I kind of feel sorry for them that I put them through that. At
15  the time I wasn't thinking. I wasn't thinking I was hurting them. That's all." A BPH panelist asked,
16  "That's all?" Petitioner responded, "Yeah."

17    What the BPH really focused on is the reason this Court cannot and will not intervene. That
18  is, Petitioner has made what appears to be a conscious decision not to "debrief" in order to protect
19  his family. On the other hand he told the BPH he never did anything in the name of the gang and
20  states in this Petition that he "will not make stuff up about other people."

21    Whatever Petitioner's personal reasons for choosing not to debrief, he cannot take advantage
22  of educational and/or vocational programs unless/until he is released from the SHU and receives a
23  different classification. It is clear from the decision rendered by the latest BPH panel that if
24  Petitioner were to educate himself (i.e., obtain a high school degree) and obtain a marketable skill,
25  he would greatly enhance and increase the potential for his release on parole.

26    The BPH, however, is concerned that if something were to happen to a job that requires few
27  skills were to disappear, Petitioner would not have anything upon which to fall back. Apparently
28  Petitioner had substance abuse problems in the past and, while he is now diabetic and realizes any

use would probably kill him, the potential for that problem to arise again is still present and a concern for the BPH.

Not much more needs to be said. As noted, the BPH did compliment Petitioner's record of being discipline free for so many years and that he was attempting to obtain more books to read. However, Petitioner ignores that he clearly has made the decision to remain in the SHU and that he needs a longer track record to show that he will continue to become more positive. Unless or until **he** makes that decision, there is nothing the Court can do to assist him.

After weighing the above factors, the BPH determined the positive aspects did not outweigh the unsuitability for parole, and denied parole until his next hearing, apparently set for sometime in 2007.

Thus, based on the above, there is "some evidence" in the record to support the Board's finding that Petitioner is unsuitable for parole. This Court finds no abuse of the Board's discretion is apparent in this case. Further, there is no evidence that a review of confidential information swayed the Board members to deny parole any more than the facts regarding a failure to debrief, which were repeatedly noted. Only if the decision was borderline and confidential information was considered would the Court be concerned that this was improper.

Therefore, for all of the reasons stated herein, the petition for writ of habeas corpus is DENIED, in its entirety.

A copy of this order shall be served upon 1) Petitioner and 2) the Office of the San Diego County District Attorney (Appellate Division).

IT IS SO ORDERED.

DATED: _October 11, 2006_

_CHARLES G. ROGERS_
JUDGE OF THE SUPERIOR COURT

I hereby certify that the foregoing instrument is a full, true & correct copy of the original on file in this office, that said document has not been revoked, annulled or set aside, and it is in full force and effect.

Attest: _OCT 1 1 2006 @ 4 pm_
Clerk of the Superior Court of the State of California, in and for the County of San Diego

By _____ Deputy

-7-

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO**
☒ COUNTY COURTHOUSE, 220 W. BROADWAY, SAN DIEGO, CA 92101-3814
☐ HALL OF JUSTICE, 330 W. BROADWAY, SAN DIEGO, CA 92101-3827
☐ FAMILY COURT, 1501 6TH AVE., SAN DIEGO, CA 92101-3296
☐ MADGE BRADLEY BLDG., 1409 4TH AVE., SAN DIEGO, CA 92101-3105
☐ KEARNY MESA BRANCH, 8950 CLAIREMONT MESA BLVD., SAN DIEGO, CA 92123-1187
☐ NORTH COUNTY DIVISION, 325 S. MELROSE DR., VISTA, CA 92083-6643
☐ EAST COUNTY DIVISION, 250 E. MAIN ST., EL CAJON, CA 92020-3941
☐ RAMONA BRANCH, 1428 MONTECITO RD., RAMONA, CA 92065-5200
☐ SOUTH COUNTY DIVISION, 500 3RD AVE., CHULA VISTA, CA 91910-5649
☐ JUVENILE COURT, 2851 MEADOW LARK DR., SAN DIEGO, CA 92123-2792
☐ JUVENILE COURT, 1701 MISSION AVE., OCEANSIDE, CA 92054-7102

*FOR COURT USE ONLY*

F I L E D
Clerk of the Superior Court

OCT 1 1 2006

By: ___SN___ , Deputy

PLAINTIFF(S)/PETITIONER(S)

The People of The State of California

DEFENDANT(S)/RESPONDENT(S)

GEORGE RUIZ

JUDGE: _____

DEPT: _____

**CLERK'S CERTIFICATE OF SERVICE BY MAIL**
(CCP 1013a(4))

CASE NUMBER

HC 18616
CR 52779

---

I, **STEPHEN LOVE**, certify that:  I am not a party to the above-entitled case; that on the date shown below, I served the following document(s):
ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

on the parties shown below by placing a true copy in a separate envelope, addressed as shown below; each envelope was then sealed and, with postage thereon fully prepaid, deposited in the United States Postal Service at:   ☒ San Diego   ☐ Vista   ☐ El Cajon   ☐ Chula Vista   ☐ Oceanside   ☐ Ramona, California.

| NAME | ADDRESS |
|---|---|
| GEORGE RUIZ | PO BOX 7500<br>CRESCENT CITY, CA 95532 |
| SAN DIEGO COUNTY DISTRICT ATTORNEY'S OFFICE<br>APPELLATE DIVISION | P.O. BOX 121011<br>SAN DIEGO, CA 92112-1011 |

STEPHEN LOVE
CLERK OF THE SUPERIOR COURT

Date: __10/11/06__                    By ___/s/___ , Deputy

---

San Diego Superior Court
Central Division
P.O. Box #122724
San Diego, Cal. 92112-2724                    Sept. 10, 2006

Dear Clerk:

    On Aug 2, 2006, I sent a petition for Writ of Habeas Corpus
to the Court and as of today I have recieved no response.
    Can you please confirm reciept of my Writ and provide me
with the case number for it?
            Thank you for your time, attention, and assistance —
                Sincerely,
                    George Ruiz

    George Ruiz, B #82089
    Box #7500 / D1-220
    Crescent City, Cal. 95532 —


w/ proof of service attached —

## PROOF OF SERVICE BY MAIL

(C.C.P. section 101a #2015.5; 20 U.S.C. section 1746)

I, _George Ruiz, B#82089_, am a resident of Pelican Bay State Prison, in the County of Del Norte, State of California. I am over eighteen (18) years of age and am a party to the below entitled action.

My Address is: P.O. Box 7500; Crescent City, CA 95531.

On the __16th__ day of __Sept__, in the year of 20_06_, I served the following documents: (set forth the exact title of documents served)

_(1) page letter of enquirey to court clerk re: Writ of Habeas –_
_Corpus mailed from me on 8-2-04 –_

on the party(s) listed below by placing a true copy(s) of said document, enclosed in a sealed envelope(s) with postaage thereon fully paid, in the United states mail, in a deposit box so provided at Pelican Bay State Prison, Crescent City, CA 95531 and addressed as follows:

_San Diego Superior Court_
_Central Division_
_P.O. Box #122724_
_San Diego, Cal. 92112-2724_

I declare under penalty of perjury that the foregoing is true and correct.

Dated this __10th__ day of __Sept__, 20_06_.

Signed: _George Ruiz_
(Declarant Signature)

Rev: 03/10/00

MC-275

Name _George Ruiz, B82089_

Address _Pelican Bay Prison [SHU-DI-220]_

_P.O. Box # 7500_

_Crescent City, Cal. 95532_

CDC or ID Number _B# 82089_

F I L E D

Clerk of the Superior Court

AUG 1 8 2006

By:_____,Deputy

_SUPERIOR COURT OF CALIFORNIA_

_COUNTY OF SAN DIEGO_
(Court)

WRIT GRANTED/DENIED

DATE _10/11/06_

PETITION FOR WRIT OF HABEAS CORPUS

_George Ruiz_
Petitioner

vs.

_Robert Horel - Warden_
Respondent

No. _HC 18616_

(To be supplied by the Clerk of the Court)

_Evidentiary Hearing Requested_

## INSTRUCTIONS—READ CAREFULLY

- If you are challenging an order of commitment or a criminal conviction and are filing this petition in the Superior Court, you should file it in the county that made the order.

- If you are challenging the conditions of your confinement and are filing this petition in the Superior Court, you should file it in the county in which you are confined.

- Read the entire form *before* answering any questions.

- This petition must be clearly handwritten in ink or typed. You should exercise care to make sure all answers are true and correct. Because the petition includes a verification, the making of a statement that you know is false may result in a conviction for perjury.

- Answer all applicable questions in the proper spaces. If you need additional space, add an extra page and indicate that your answer is "continued on additional page."

- If you are filing this petition in the Superior Court, you need file only the original unless local rules require additional copies. Many courts require more copies.

- If you are filing this petition in the Court of Appeal, file the original and four copies of the petition and, if separately bound, one copy of any supporting documents.

- If you are filing this petition in the California Supreme Court, file the original and ten copies of the petition and, if separately bound, two copies of any supporting documents.

- Notify the Clerk of the Court in writing if you change your address after filing your petition.

- In most cases, the law requires service of a copy of the petition on the district attorney, city attorney, or city prosecutor. See Penal Code section 1475 and Government Code section 72193. You may serve the copy by mail.

Approved by the Judicial Council of California for use under Rule 60 of the California Rules of Court [as amended effective January 1, 2005]. Subsequent amendments to Rule 60 may change the number of copies to be furnished to the Supreme Court and Court of Appeal.

Page one of six

Form Approved by the
Judicial Council of California
MC-275 [Rev. July 1, 2005]

PETITION FOR WRIT OF HABEAS CORPUS

Penal Code, § 1473 et seq.;
Cal. Rules of Court, rule 60(a)

American LegalNet, Inc.
www.USCourtForms.com

This petition concerns:

- [ ] A conviction
- [✓] Parole
- [ ] A sentence
- [ ] Credits
- [✓] Jail or prison conditions
- [ ] Prison discipline
- [ ] Other *(specify)*: _____

1. Your name: George Ruiz

2. Where are you incarcerated? Pelican Bay State Prison - Security Housing Unit [SHU]

3. Why are you in custody?  [✓] Criminal Conviction  [ ] Civil Commitment

*Answer subdivisions a. through i. to the best of your ability.*

a. State reason for civil commitment or, if criminal conviction, state nature of offense and enhancements (for example, "robbery with use of a deadly weapon").

Kidnap for Robbery with use of Firearm

b. Penal or other code sections: P.C. 209(B); P.C. 2022.5; P.C. 211; P.C. 12022

c. Name and location of sentencing or committing court: San Diego County Superior Court, San Diego, Cal. 220 W. Broadway, San Diego, Cal. 92101-3409

d. Case number: CR-52779

e. Date convicted or committed: 1981

f. Date sentenced: Can't recall

g. Length of sentence: 8 years for Robbery, 7-to-Life for Kidnap

h. When do you expect to be released? never, without Court Relief

i. Were you represented by counsel in the trial court?  [✓] Yes.  [ ] No. If yes, state the attorney's name and address:

I can't recall attorney name or address - it's been over (25) years

4. What was the LAST plea you entered? *(check one)*

[✓] Not guilty  [ ] Guilty  [ ] Nolo Contendere  [ ] Other: _____

5. If you pleaded not guilty, what kind of trial did you have?

[✓] Jury  [ ] Judge without a jury  [ ] Submitted on transcript  [ ] Awaiting trial

6.  GROUNDS FOR RELIEF

**Ground 1:** State briefly the ground on which you base your claim for relief. For example, "the trial court imposed an illegal enhancement." *(if you have additional grounds for relief, use a separate page for each ground.  State ground 2 on page four. For additional grounds, make copies of page four and number the additional grounds in order.)*

The State Parole Board's have been operating under an illegal blanket no parole policy for all prisoners serving term-to-life sentences who are confined to the department of corrections security housing unit at Pelican Bay State Prison solely for administrative reasons. [And the catch 22 caveat of: become an informant to get out of [SHU], or do life without parole and die in [SHU]]

a.  Supporting facts:

Tell your story briefly without citing cases or law. If you are challenging the legality of your conviction, describe the facts upon which your conviction is based. *If necessary, attach additional pages.* CAUTION: You must state facts, not conclusions. For example, if you are claiming incompetence of counsel you must state facts specifically setting forth what your attorney did or failed to do and how that affected your trial. Failure to allege sufficient facts will result in the denial of your petition. (See *In re Swain* (1949) 34 Cal.2d 300, 304.) A rule of thumb to follow is: *who* did exactly *what* to violate your rights at what time *(when)* or place *(where)*. *(If available, attach declarations, relevant records, transcripts,  or other documents supporting your claim.)*

In December 1980, I committed an armed kidnap/robbery of a store for the purpose of obtaining money to pay for methadone and rent. I verbally threatened, but did not physically harm anyone. I was found guilty and sentenced to a term [8] years for the robbery running consecutive to a [7] year-to-life sentence for kidnap. I have been confined by the department of corrections since June 10, 1981. My Minimum Eligible Parole Date was June 3, 1993. My initial parole eligibility hearing occurred on May 20, 1992 at which time the board found me unsuitable for parole based on: (A) The crime; (B) Prior criminal history & drug/alcohol abuse; (C) Custody level & failure to upgrade education, vocation, self-help (D) department of corrections classifying me as a member of a prison gang, and on the basis of such associational status confining me in security housing units since 1982 indefinitely, unless/until I debrief [e.g., become an informant for the department of corrections].  see attached page #3 [A] & [B]

b.  Supporting cases, rules, or other authority (optional):

*(Briefly discuss, or list by name and citation, the cases or other authorities that you think are relevant to your claim. If necessary, attach an extra page.)*

California's parole scheme gives rise to a protected liberty interest in release on parole. McQuillion v. Duncan 306 F3d 895, 902 [2002]; Greenholtz v. Inmates of Nebraska Penal & Correctional Complex, 442 U.S. 1 [1979]; Biggs v. Terhune, 334 F3d 910, 915 [9th Cir 2003]; In re Rosenkrantz, 29 Cal. 4th 616 [2003].
see attached page #3 [C] & [D]

Page #3(A)

I have had subsequent parole eligibility hearings on Sept. 20, 1994; April 23, 1996; June 23, 1998; Sept. 18, 2001; and Oct. 1, 2003; wherein each of the parole hearings was a repeat of the first on in [1992] and each panel reviewing my parole eligibility found me unsuitable based on the exact same reasons as the [1992] panel [see: Petitioner's attached declaration, at paragraphs # 1 through 9, and the exibits incorporated by reference and attached thereto].

 On May 9, 2006, I attended my [7th] parole eligibility hearing. Prior to this hearing my state appointed attorney [Mr. Fallman], submitted a written "Memorandum" In support of my petition for parole, wherein I specifically addressed each one of the factors that the [6] previous panels relied upon to deem me unsuitable for parole. I pointed out that repeatedly relying upon unchanging factors regarding events, actions, and circumstances [the life crime, prior criminal history - all based on my drug addiction, [24] years on [SHU] status based on association, rather than being charged with and found guilty of a single act of illegal gang activity], from [20] to [35] years ago may be a due process violation. And I pointed out factors in favor of suitability [No juvenil record; only [3] minor rule violations during [25] years of incarceration - the last one being [1986] for stimulants and sedatives; family support, a place to live, and employment; And the undisputable fact that when I was in the general prison population I always programed well; and my [SHU] status has been solely for administrative [rather than being found guilty of violating a prison rule] reasons. And my only means for realence from [SHU] is via debriefing [which I will not do because I will not make up stuff about other people, nor will I place my family in danger from me being deemed an informant]. And the only reason I've not programmed is because such are not available in [SHU] [see: Pltf's Decl. at exh. #7, copy of Memo] NEXT PAGE→

Page #3 [B]

At my (7th) parole eligibility hearing deputy commissioner Harmon told me in so many words that I "should have been released years ago," if I would have only debriefed and gotten out of (SHU) to a general population prison where I could program [see: Pltf's Decl. at paragraph #25 [E], and copy of Transcript of May 9th, 2006 hearing attached thereto as exh #7]

In 1994; 1996; 1998; 2001; and 2003, each of the panels also indicated that so long as I refuse to debrief, and remain in (SHU) I will never be paroled [see: Pltf's Decl. at para. #25 [A-E], with corresponding exhibit transcripts referenced and attached thereto]

In the Memorandum presented to the panel for my May 9, 2006 Hearing, I explained exactly why I have been in (SHU) for over (23) years, and why I believe that predicating my eligibility for a release date upon my agreement to become an informant for the authorities, and risk the attendant repercussions such informant status entails, was illegal [see: Pltf's Decl. at para's #11 & 12; and attached exh #7, Memorandum at pages #3-6]

Subsequently, presiding commissioner Fisher found me unsuitable for parole, and set my next parole eligibility hearing off for another (2) year period based on "... you have been unable to program for such a long time. ... your custody level and the fact that you've been unable to do any programming because of your custody level" [see: Decl. Pltf at para's #26 and #27, with attached exhibits #7 and #8, incorporated by reference therein]

All of the above issues are addressed in greater detail in my attached declaration, with supporting exhibits attached thereto.

Absent court relief I will die in (PBSP-SHU). And when I first entered the prison system I was never notified that a confidential inmate informant claiming I was associated with a prison gang would be cause for changing my sentence to life without parole.

Page #3[c]

The fundamental core of due process is protection against arbitrary action. Wolff v. McDonnell, 418 U.S. 539, 558 [1974];

Concomitant to the guarantee against arbitrary and capricious state action is the right to a fact-finder who has not predetermined the outcome of a hearing. [See Withrow v. Larkin, 421 U.S. 35 [1975] [a fair trial in a fair tribunal is a basic requirement of due process, and this rule applies to administrative agencies which adjudicate as well as to courts]; Bakalis v. Golembeski, 35 F3d 318, 326 [7th Cir 1994] [a decision-making body "that has prejudged the outcome cannot render a decision that comports with due process"].

Courts to numerous to list have recognized that the right to a disinterested decision-maker, who has not prejudged the case, is a part of the fundamental guarantee against arbitrary and capricious government conduct in the California parole context. See, e.g., Rosenkrantz, 29 Cal. 4th at 677 [parole decision "must reflect an individualized consideration of the specified criteria and cannot be arbitrary and capricious"]; In re Ramirez, 94 Cal. App. 4th 549, 563 [2001] ["some evidence" standard is "only one aspect of judicial review for compliance with minimum standards of due process" [citing Balisok, 520 U.S. 641 [1997] and board violates due process if its decision is "arbitrary or capricious"]; In re Minnis, 7 Cal. 3d 639 [1972] [blanket no-parole policy as to certain category of prisoners is illegal]; In re Morrall, 102 Cal. App. 4th 280 [2003] [same].

As the Supreme Court clearly held in Edwards v. Balisok, supra, 520 U.S. at 648, a decision made by a fact-finder who has predetermined the outcome is per se invalid -- even where there is ample evidence to support it.

Page #3(D)

Also, the U.S. Supreme Court has repeatedly rejected not only guilt "by" association, but also guilt for "association," characterizing "guilt by association" as a philosophy alien to the traditions of a free society and the First Amendment itself [see: NAACP v. Claiborne Hardware Co. 485 U.S. 866, 925 [1982]; Amer. Arab Anti-discrimination vs. Reno, 70 F. 3d 1045, 1063 [9th Cir. 1995].

Calif. Pen. Code § 186.22 regulates conduct, not speech or association [People v. Gomez, 235 Cal. App. 3d 957, 971 [1991]; By its plain language, the statute requires a showing of specific intent to promote, further, or assist in "any criminal conduct by gang members" rather than other criminal conduct. [Pen. Code § 186.22, subd. (6)(1)]

see also: Knox v. Lanham, 895 F. Supp. 750 [D. Md. 1995]... Division of Correction Directive [DVD], removing inmates to higher security combined with parole board's refusal to recommend parole unless inmates were on active work-release, which required lower security classification, constituted retroactive "punishment" in violation of the ex post facto clause of the Fourteenth Amendment.

7. Ground 2 or Ground ~~2~~ (if appl__.__ __.__le):

There was "no-evidence" to support the parole boards' decision to deny the petitioner a parole date at his (7th) Parole Eligibility Hearing [occurring on May 9, 2006]

a. Supporting facts:

Petitioner incorporates the facts recited in the First Ground, in so far as they relate to this Ground. As for additional facts. The parole eligibility panel that heard my petition for a parole date on May 9, 2006 deemed me unsuitable for parole based on my "...custody level and the fact that you have been unable to do any programming because of your custody level" [See Petitioner Declaration at para #26; and exh. #7 attached thereto- Board of Prison Hearing Transcript, dated May 9, 2006, at page #48]

The board knew that my custody level [Indeterminate (SHU) status] is based on confidential inmate informants telling prison officials I am a gang member - and prison officials deeming I am actively involved in gang activity because they found my name on what they claim is "gang rosters" in (2) prisoners cells back in 2001 [See: Decl. at para #27 (A-D); and exh. #8, attached thereto, [602] Appeal re: gang activity issues].

The board knew that my custody level & related inability to program [for over (23) years now], is based solely on the fact that prison officials have ordered me to be kept in (SHU) for Administrative reasons, based on their determination that I am a gang member [based on conf. informant's]; and that that is the only reason for my custody level, because I have never recieved a single rule violation for ever committing an illegal act related to a prison gang [see: Decl. at para #19 and exhibits referenced and attached]

SEE ADDITIONAL PAGE #4(A)

b. Supporting cases, rules, or other authority:

The Board of Prison Hearings found me unsuitable for parole during the May 9-2006 hearing based on my custody level, and related inability to program for such a long time [see: Exh #7 at page #46 of hearing Transcript; Decl. at para #26].

Based on the facts and circumstances of my case, custody level & inability to program [and reasons therefore], there is no evidence to support the boards'

See Attached Page #4 (B-D)

Page #4(A)

The board knew that during my last (25) years of incarceration I have only recieved (3) rule violations [missing count 1981; Home brew 1983; Stimulants and Sedatives 1986], and that I always programmed well when I was in the general prison population, I have never had any problems with staff, I have stable relationships and strong family support, and employment setup [as well as skills in auto body and paint, as a cook and laborer] [see: Decl. at paragraphs #15-16].

I no longer use alcohol or drugs [and have not done so for (20) years], and my declaration and exhibits attached there to detail the facts that directly refute the panel's reasons for finding me unsuitable for parole. [see: Decl. at para's #12-30]

Absent court relief I do not believe a panel will ever deem me suitable for parole.

Page #4[B]

decision. The factors required to be considered by the Board regulations are for the most part specified in section 2402 of title 15 of the California Code of Regulations, which consists of four subdivisions. Subdivision (a), which reiterates the statutory factor, that states "regardless of the length of time served, a life prisoner shall be found unsuitable for and denied parole if in the judgement of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison."

Subdivision (a) specifies six nonexclusive factors tending to show unsuitability, the relative importance of which "is left to the judgement of the panel."... the relevant factor here is, [#6] "Institutional Behavior. The prisoner has engaged in serious misconduct in prison or jail."

Petitioner has not engaged in any serious misconduct for (20) years, and he has never physically harmed anyone during the past (25) years of incarceration.

Subdivision (d) of section 2402, specifies nine factors tending to show suitability for release, leaving the importance to be attached to any circumstance or combination of circumstances in a particular case to the judgement of the panel. These factors are:

(1) No Juvenile Record; (2) Stable Social History; (3) Signs of Remorse; (4) Motivation for Crime; (5) Battered Woman Syndrome; (6) Lack of Criminal History; (7) Age; (8) Understanding and plans for Future; (9) Institutional Behavior. "Institutional activities indicate an enhanced ability to function within the law upon release."

Petitioner meets the criteria for all of the above [see: Decl. at para #11-24] there is "no evidence" that supports the panel's decision that "the custody level, and related inability to program" indicates petitioner would pose an unreasonable risk to public safety and/or pose a danger to society.

As for any other factors [commitment offense, criminal history (drug use)]

NEXT PAGE →

Page #4(c)

Petitioner submits that there is no evidence demonstrating he is still prone to committing criminal acts [all of his prior criminal acts were committed to support his drug habit, and he has not used drugs in (20) years], he did not harm anyone physically during the kidnap, robbery, and has now served over (25) years [see: Decl. at para #11-24]

The predictive value of the commitment offense may be very questionable after a long period of time [According to a Task Force of the American Psychiatric Association, "neither psychiatrists nor anyone else have demonstrated an ability to predict future violence or dangerousness. [AM Psych. Assn, Task Force Report 8, Clinical Aspect of the Violent Individual [1974] at p. 28]; see also: People v. Murtishaw [1981] 29 Cal. 3d 733, 768; People v. Burnick [1975] 14 Cal. 3d 306, 327]

The "repeated denial of parole based on the same unchanging factors turns an offense for which California law provides eligibility for parole into a de facto life imprisonment without the possibility of parole." Irons v. Warden, 358 F. Supp. 2d 936, 947 [E.D. Cal. 2005]. [see also: In re Smith, 114 Cal. App. 4th 343 (2003) ... we conclude that Smith's past desire for and use of drugs does not by itself reasonably establish current unsuitability because there is no additional evidence to complete a chain of reasoning between his past drug use and a finding that because of it he currently poses an unreasonable risk of danger if released [such reasoning applies to petitioner's "custody level" circumstances as well] see also: Thompson v. Davis, 295 F. 3d 890, 898 [9th Cir. 2002].

And: In re Deluna, 126 Cal. App. 4th 585, 598 [2005]; cf. Van Houten, 116 Cal. App. 4th at 353 ... inmate's previous arrest record did not constitute "some evidence" of a threat to public safety because the alleged acts did not involve serious injury or attempted serious injury to a victim." ...

NEXT PAGE →

Page #4(D)

"—nothing in the record indicates that defendant's criminality or ability to support himself was affected by any limitation on his vocational or language skills. And Irons, supra, at 948 "... clearly, a conclusion by lay BPT Commissioners that petitioner has not yet achieved required therapy for insight or other reasons is not reasonably sustainable, and a state court's conclusion to the contrary is patently unreasonable."]

A decision based on a few facts that will always form the basis for denying parole, amounting to a permanent and virtually automatic denial of parole in contravention of due process, is clearly arbitrary and capricious. "The presence of a large measure of discretion in a parole system... does not alter the fundamental due process limitation against capricious decision making. A legislative grant of discretion does not amount to a license for arbitrary behavior. When a parole board bases its decision on factors that bear no rational relationship to rehabilitation or deterrence, it transgresses the legitimate bounds of its discretion." In re Fain, 139 Cal. App. 3d 295, 307 [1983] [quoting Block v. Potter, 631 F.2d 233, 236-37 [3rd Cir. 1980]

8. Did you appeal from the conviction, sentence, or commitment?  ☐ Yes. ☐ No. If yes, give the following information:

   a. Name of court ("Court of Appeal" or "Appellate Dept. of Superior Court"):  *N/A*

   b. Result _____  c. Date of decision: _____

   d. Case number or citation of opinion, if known: _____

   e. Issues raised: (1) _____

      (2) _____

      (3) _____

   f. Were you represented by counsel on appeal?  ☐ Yes.  ☐ No. If yes, state the attorney's name and address, if known:

      *N/A*

9. Did you seek review in the California Supreme Court?  ☐ Yes  ☐ No.  If yes, give the following information:

   a. Result  *N/A*  b. Date of decision: _____

   c. Case number or citation of opinion, if known: _____

   d. Issues raised: (1) _____

      (2) _____

      (3) _____

10. If your petition makes a claim regarding your conviction, sentence, or commitment that you or your attorney did not make on appeal, explain why the claim was not made on appeal:

    *N/A*

11. Administrative Review:

    a. If your petition concerns conditions of confinement or other claims for which there are administrative remedies, failure to exhaust administrative remedies may result in the denial of your petition, even if it is otherwise meritorious. (See *In re Muszalski* (1975) 52 Cal.App.3d 500 [125 Cal.Rptr. 286].)  Explain what administrative review you sought or explain why you did not seek such review:

    *Re: Claims against the department of corrections - I submitted a (602) Appeal #D02-01456 [see attached exhibit #8, with documents & responses related thereto & attached]*
    *Re: Claims against Board of Prison Hearings - there are no administrative remedies available [per "repeal" of such remedies in May 2004]*

    b. Did you seek the highest level of administrative review available?  ☑ Yes.  ☐ No.
       *Attach documents that show you have exhausted your administrative remedies.*

MC-275 (Rev. July 1, 2005)                **PETITION FOR WRIT OF HABEAS CORPUS**                Page five of six

12. Other than direct appeal, have you fil___ ny other petitions, applications, or motions with re___ ct to this conviction, commitment, or **issue** in any court? ☐ Yes. If yes, continue with number 13. ☑ No. If no, skip to number 15.

13. a. (1) Name of court: _____

   (2) Nature of proceeding (for example, "habeas corpus petition"): _____

   (3) Issues raised: (a) _____

      (b) _____

   (4) Result *(Attach order or explain why unavailable):* _____

   (5) Date of decision: _____

   b. (1) Name of court: _____

   (2) Nature of proceeding: _____

   (3) Issues raised: (a) _____

      (b) _____

   (4) Result *(Attach order or explain why unavailable):* _____

   (5) Date of decision: _____

   c. *For additional prior petitions, applications, or motions, provide the same information on a separate page.*

14. If any of the courts listed in number 13 held a hearing, state name of court, date of hearing, nature of hearing, and result:

   _____

15. Explain any delay in the discovery of the claimed grounds for relief and in raising the claims in this petition. (See *In re Swain* (1949) 34 Cal.2d 300, 304.)

   N/A

   _____

16. Are you presently represented by counsel? ☐ Yes. ☑ No. If yes, state the attorney's name and address, if known:

   _____

17. Do you have any petition, appeal, or other matter pending in any court? ☐ Yes. ☑ No. If yes, explain:

   _____

18. If this petition might lawfully have been made to a lower court, state the circumstances justifying an application to this court:

   N/A

   _____

I, the undersigned, say: I am the petitioner in this action. I declare under penalty of perjury under the laws of the State of California that the foregoing allegations and statements are true and correct, except as to matters that are stated on my information and belief, and as to those matters, I believe them to be true.

Date: 7-27-06       ▶ *George Ruiz*
                          (SIGNATURE OF PETITIONER)

George Ruiz, B#82089
P.O. Box # 7500/D1-220
Crescent City, Cal 95532
Petitioner -


THE SUPERIOR COURT, STATE OF CALIFORNIA
THE COUNTY OF SAN DIEGO


IN re George Ruiz, B#82089,                    CASE No,
     ON HABEAS CORPUS.                  Declaration of George Ruiz,
                                         In Support of Petition


I George Ruiz, do hereby declare:


1. I am the Petitioner in the above entitled action, and submit this declaration
in support of my petition for a writ of habeas corpus, challenging the state Parole
Board(s) decision to find me "unsuitable for a parole date," for the [7th] time,
on May 9, 2006. I can, and will, competently testify to the following.

2. In December 1980, I committed an armed kidnap/robbery of a store, for
the purpose of obtaining money to pay for methadone and rent. I never planned to,
nor intended to, physically harm anyone during this crime; and verbally threaten-
ed the victims solely with the intent of making them comply with my demands.
[see; attached exhibit #1, Life Prisoner Evaluation report dated 3-11-92, at the
Offense Summary; and the Board of Prison Terms Hearing Transcripts, for
the following dates: 9-20-94 at pp 5-7, exh #2; 6-23-98 at pp 7-16, exh #4;
9-18-01 at pp 7-14, exh #5; 10-1-03 at pp 10-15, exh #6; 5-8-06 at pp 10-11
exh. #7]

3. I received a sentence of [7 years-to-life] for the kidnap/robbery
conviction; and have been serving this time in the department of corrections

1.

since June 10, 1981. My minimum eligible parole date was June 3, 1993.

4. My first "parole eligibility hearing" occurred on May 20, 1992. The Board found me unsuitable for parole, and set my next hearing off for (2) years. [see: exh.#1. Life Prisoner Decision Face Sheet]

5. My second "parole eligibility hearing" occurred on Sept 20, 1994. The Board found me unsuitable for parole, and set my next hearing off for (1) year. [see: exh.#2. Board of Prison Terms Hearing Transcript at pp. 39-40]

6. My third "parole eligibility hearing" occurred on April 23, 1996. The Board found me unsuitable for parole, and set my next hearing off for (2) years. [see: exh.#3. B.P.T. Hearing Transcript at pp 29-32]

7. My fourth "parole eligibility hearing" occurred on June 23, 1998. The Board found me unsuitable for parole, and set my next parole hearing off for (2) years. [see: exh.#4. BPT Hearing Transcript at pp. 42-47]

8. My fifth "parole eligibility hearing" occurred on Sept 18, 2001. The Board found me unsuitable for parole, and set my next parole hearing off for (2) years. [see: exh.#5. BPT Hearing Transcript at pp 44-50]

9. My sixth "parole eligibility hearing" occurred on Oct 1, 2003. The Board found me unsuitable for parole, and set my next parole hearing off for (2) years. [see: exh.#6. BPT Hearing Transcript at pp. 41-47]

10. My seventh "parole eligibility hearing" occurred on May 9, 2006. The Board found me unsuitable for parole, and set my next parole hearing off for [2] years. [see: exh.#7. BPT Hearing Transcript at pp 46-47]

11. I am now (63) years old, and I have medical issues related to diabetes (as well as testing positive for Hepititis-C). I have spent (25) years in prison now, and after being deemed "unsuitable for parole," for the (7th) time, I believe the Board(s) who have considered my case have denied me due process by operating under a "blanket no-parole policy," as well as predicating any chance I may ever have of being found

2.

suitable for a parole date, upon the condition that I become an informant for the authorities [via the debriefing process], and thereby obtain my release from [SHU], in order to comply with the boards programming—recommendations in the general prison population.

12. The reason I believe the board has no intention of ever finding me suitable for a parole date unless I become an informant, and obtain release to general population, is based on the following factors:

A. The panels' considering me for parole have all found me unsuitable based on factors that I am never going to be able to change.... The crime I recieved the [7 year-to-life] sentence for in [1981]; My "prior criminal history" [all of which was related to my "prior history of drug/alcohol abuse"]; My [SHU] status, and resultant inability to program the past (23) years [based on corrections classifying me as a prison gang member] [see: above paragraphs #5-10, and the exhibits referrenced therein]

B. My refusal to "debrief" [that is, become an informant for the authorities], and thereby gain release from [SHU] and be able to program in a general population setting. [see: exh. #2, BPT-TRANSCRIPT, pp 16-19, 39; exh #3, BPT-TRANSCRIPT, pp 13-14, 22-24, 29-32; exh #4, BPT-TRANSCRIPT, pp 23, 32, 47; exh #5, BPT-TRANSCRIPT, pp 11, 17-18 46-50; exh #6, BPT-TRANSCRIPT, pp 13-15, 35, 43; exh #7, Life Prisoner Evaluation & D.A. Letter.

13. That there is no evidence to support the Board(s) repeated use of the crime, for which I recieved the [7 year-to-life sentence], to find I am not suitable for parole when considering the following facts:

A. I never physically harmed anyone during the crime.

B. I realized many years ago that my "verbal threats" caused alot of fear in my victims, and I have been sincerely remorseful about this ever since. [see: exh #2, at pp. 27-28; exh #4, at pp 16; exh #5, at pp. 10-11; exh #6, at p.12;

C. I have now served over (25) years of time on this sentence. I am now [63] years of age, and have medical issues [Diabetes and Hepititus-C].

14. As for my "prior criminal history", it was directly related to my abusive use of

alcohol, and/or drug addiction. I have not used any illegal drugs, or alcohol for over (20) years. I have chosen not to, and do not plan to, because I have medical issues to consider, and I want to be around for my grand children for as many years as possible. [see: exh.#3 at pp.8-10, 14:21-27, 15-17; exh#4 at p. 39-41; exh#5 at p.41; exh#2 at p. 34:3-18; exh#7 at Life Prisoner Evaluation; My Memorandum in Support of parole at pp#2 &#7]

15. Since I have been incarcerated these past (25) years I have been issued CDC-115, Rule Violations for the following:

   A. Missing Count [10-2-81]

   B. Contraband/Homebrew [11-17-83, in S.H.U.]

   C. Stimulants/Sedatives [11-11-86, in S.H.U.]

[see: exh#1 Life Prisoner Evaluation at pg#4; exh#7 at My "Memorandum in support of parole," and BPH-Transcript at p#25]

16. When I was allowed by the department of corrections to program in the general prison population, I always did well (In 1979) while incarcerated I recieved, and completed, Auto body and fender vocational-training; And in 1981-1982, I was working as a cook in the kitchen at Folsom Prison prior to being placed in (SHU). [see: exh#2 at p. 20, 34:3-18, 36-38]

17. I was first placed in the (SHU) for "investigation of involvement in racial problems" at Folsom Prison on July 16, 1982. I was never found guilty of any involvement in any racial incidents. [see: exh#1 at p.#4]

18. I have remained in (SHU) since (1982), based on "department of corrections" classifying me a member of the "Mexican Mafia" prison gang. Notably, the basis for keeping me confined in (SHU) without opportunity for work, education [ I am in need of help with things like reading], vocation, or self-help type programming, has not been behavorial. Rather my (SHU) status is for Administrative reasons, based on associational status. [see: exh#3 Psych-EVALUATION; LIFE PRISONER EVALUATION at p. 4]

4.

19. I have never been found guilty of committing a single "gang-related" illegal act in my life. [see: attached exhibits discussing criminal history, and in-prison conduct; and exh.#3 at Psychiatric Evaluation for 1996; exh.#4 at p.32; exh.#6, at p.13-15; exh.#7 Memo in support of parole at pp.3-6]

20. My only avenue of obtaining release from (SHU) [up until 2001], was via the "debriefing" process, which means informing the authorities about my gang-activity, and the gang activities of others. This equates to being an informant, snitch, rat, etc. [see: exh.#1 Life Prisoner Evaluation at p.4; exh.#5, Life Prisoner Evaluation of 3-6-01 at p.2]

21. That in (2001) I was considered for "inactive gang-status" by corrections staff [this means that no gang-activity is documented for a period of (6) years; a single source stating you are still a gang member, is enough to deny you this status for another (6) year period], which may permit release from (SHU).

22. In (2001) Corrections Staff determined I was still an "active gang-member" based on: debriefing inmates stating I am still a gang-member....." And they informed me I can request another "inactive review in [2007] [see: exh.#6, at p.29:2-6; exh.#7, at p.#27]

23. That my correctional counselor stated the following in my "Life Prisoner Evaluation" [dated: 3-11-92]:"... The lengthy (SHU) program that he has been on has deterred educational and vocational programs that would have increased his chances on parole. Ruiz was made aware that debriefing could release him from (SHU), into a regular General Population Program, but he is unwilling to participate in the debriefing program." [exh.#1, at p.#4 ∇ Summary].

24. That I have repeatedly told my correctional counselors, and parole board members, that I am not willing to debrief because I don't have information to provide; and /or, I will never be willing to become an informant, because I would not put my family members well being at

5.

any risk of being harmed as a result of my actions. [see: exh #2, Life Prisoner Evaluation of [6-11-94], at p. #1 section III.; and BPT-Transcript at pp.16-19; exh.#3, Psych Evaluation for BPT of [1-26-96] at bottom of p.#1; and BPT-TRANSCRIPT pp. 13-14, 22-24; exh #4, BPT-TRANSCRIPT at p.#23; exh #5, BPT-TRANSCRIPT at pp 17-18; exh#6, BPT-TRANSCRIPT at pp 13-15, 35; exh #7, Memorandum submitted in support of my [7th] parole petition, at pp 3-6; and BPT-TRANSCRIPT at p. #27-29, 43-45]

25. That the Parole Board members have belittled me, and/or given my concerns about my family members safety no weight. And used my refusal to "debrief" against me at all of my hearings, even going so far as to state I will never recieve a parole date as long as I am in[SHU], as demonstrated by the following BPT-Hearing quotes:

   A. Hearing of Sept. 20, 1994 [exh. #2]

   at p.#17... Commissioner Gillis: So, you're worried about your family if you debriefed. Ruiz: Yes.

   at p.#19... Comm. Gillis: Okay. So, debriefing wouldn't make any difference then, would it?

   Ruiz: Debriefing on what?... I don't know anything. And if I did, I wouldn't say anything... I'd rather just stay in prison as long as you people are going to keep me here. My family ain't going to get hurt by it.

   Comm. Gillis: This is your decision — You're doing the time not us... the decision is really up to you.


   B. Hearing of April 23, 1996 [exh. #3]

   at p.13-14... Comm. Cassady: And that you have on occassion considered the debriefing process

6.

Ruiz: I have.

Cassady: Okay, but your conclusion is that you don't want to participate in fear of your family's lives?

Ruiz: Yes.

Cassady: ... I'm just wondering if there's any real basis for your fear to the debriefing process.

Ruiz: It's been well known ...

at p 22-23 ... Comm. Koenig: ... were you planning on getting out of prison someday?

Ruiz: It's up to you. It's up to the Board.

Koenig: No -- it's up to you. Where do you get all these ideas -- I guess from listening to prisoners, that if you, you know, get out of the gang area that they're going to hurt your family? Is that what you hear?

Ruiz: Yes.

Koenig: You know, we have all kinds of ex-gang people out in the general population in the other prisons programming well and nothing happened to their families. Do you think maybe you're listening to the wrong people?

Ruiz: No, I don't think so. I've --

Koenig: You don't think so, huh?

Ruiz: I've had friends that had ...

Koenig: Well, once again -- it's all hearsay.

Ruiz: I don't know

Koenig: Alright, but anyway, that's your decision ...

at p. 24 ... Comm. Cassady: ... why would you be important enough to them that if you debriefed they would want to hurt your family?

Ruiz: Anyone who informs on any of these gangs that I've seen and heard they'll be taken care of.

7.

Cassady: Well, you'd better think about what Mr. Koenig says.

Ruiz: Yes.

Cassady: There have been a lot of people that have debriefed that are fine.

Ruiz: Yeah, well, I wouldn't want to take a chance on my family, ma'am.

at p.31:15-26 Koenig: ... Mr. Ruiz, you know, everything is on you. There is no reason why you shouldn't be paroled down the road because you didn't kill anybody; it's a kidnap, a very serious crime, but you're going to have to get out of this status where you are now in order to program and that takes time. You're not going to get out of here and then be released back into society. We ask certain things of you: that you program in the various areas that I've just mentioned. You really should take a hard look at that and, of course, this has been mentioned to you before and it really hasn't done any good, so it's all in your court.

p.32 Comm. Cassady: ... I'd like you to re-think what Mr. Koenig said; this isn't the type of crime that never recieves a parole date.

C. Hearing of June 23, 1998 [exh.#4]

at p.#23 ... Comm. Cassady: So what have you been doing with yourself?

Ruiz: Well, they put me in the hole. I've been in SHU. There you don't have no programs in that.

Cassady: And it indicates that, apparently, the counselors have spoken to you about debriefing and you have been noncooperative with that issue. Is that accurate?

Ruiz: Yes.

at p.#32 ... Comm. Guaderrama: Yeah. How long have you been in SHU?

Ruiz: Since '82.

8.

Guaderrama: What are you doing to get yourself out?

Ruiz: I've programmed. When I'm out there, I program. I didn't do nothing to get put in the SHU.

Guaderrama: Uh-huh. Yeah, the only one that you're kidding is yourself.

Ruiz: No, no, I'm not.

Guaderrama: On this gang involvement.

Ruiz: What did I do? That's what I want to know. I asked the counselor, you know, what did I do to get put in the hole. They said because I was involved in the racist thing, I wasn't, I didn't do nothing.

at p.#33    Ruiz: I have no material. Where can I get this material? I'm not going to debrief and put my family in jeopardy.

Guaderrama: I'm not asking you to debrief. I'm saying --

Ruiz: Well, that's the only way I can get the materials to work with.

at p#47 ... lines 5-8

Guaderrama: ... That is the official decision. I've just got to tell you, Mr. Ruiz, you've got a lot of work to do. You've got to do what you can to get yourself out of SHU and it's going to be up to you.


D. Hearing of Sept. 18, 2001 [exh. #5]

at p. 17:26-27, p18 ...

Comm. Welch: I'm wondering why you haven't debriefed, so you can get out of the SHU?

Ruiz: If anything, I'd do anything to get out of the SHU except for that, I will not lie on someone else, you know, and if I did know somebody, that I said it, my family would get hurt out in the streets. People say no that wouldn't happen, it's happened, it's been in the news before.

Welch: That's true. Okay,

9.

at p.42 ... Ruiz: All I have to say is when I was out there I didn't have grandkids, I'm not using it as an excuse or anything, but I love my kids, like I say I won't debrief if they're going to be hurt in any way and if I'm going to be denied parole for that then I'm going to be denied, but I'm going to hold to that, I'm not going to put their lives in jeopardy out there, its happened, I know it's happened, I've seen it happen, I've seen it on T.V. people get killed out there for saying something about another gang member.

at p.#50 ... Welch, at lines #I-18, stating in part ...
I know how difficult it is, for prisoners to drop out of a gang and to debrief and that's a decision that you have to make and, you know, I can't comment on that one way or another because it seems like to me you've given that a lot of thought. However, you do need to get yourself in a situation so that you can program, you need to get to a general population unit ...

E. Hearing of Oct. 1, 2003 [exh #6]
at p.#13 ... Comm. Welch: What's an old man with grandkids doing still involved with the Mexican Mafia?
Ruiz: I'm not involved.
at p.#14 ... Welch: Are you an active member?
Ruiz: No, I'm not.
Welch: Were you an active member at any time?
Ruiz: No.
at p.#15 ... Welch: But you never did anything -- any criminal activities as a member.
Ruiz: No.
at p.#35 ... Welch: Why would you continue to be a member of something that -- at age 60 that don't provide you with anything?

10.

Ruiz: If I debrief as they want me to debrief, --

Welch: Yeah.

Ruiz: -- I'll be putting my life in jeopardy and the members of my family. I ain't going to do that.

at p. #38     Attorney Christensen: Mr Ruiz, then you would rather spend the rest of your life in **the SHU** rather than debrief?

Ruiz: Rather than have my family hurt, yes, if that's the case.

at p #43 at lines 6-19 ...

Welch:      He failed to demonstrate evidence of positive change. By that I mean disassociating himself with his present gang known as the EME, disavowing his allegiance to the gang, trying to get a new start, trying to be a role model for the younger persons that's involved in the gang, getting out and making a new start. The prisoner has not done any of those things. The panel notes that he's currently serving an indeterminate SHU program, as a result of him being a member of the EME. As a result of his placement in the SHU program, program participation is limited, and his ability to demonstrate parole readiness is certainly hampered.


F. Hearing of May 9, 2006 [exh. #7]

at p. #27 ... Deputy Commissioner Harmon: Okay, So you've been in (SHU) now how long?

Ruiz: Years and years, since '82

Comm. Harmon: what are you going to do about that to get out there and see that granddaughter? What are you going to do about it?

Ruiz: Well, to keep her safe I can't debrief, and I'm not going to put their lives in jeopardy, you know..

Comm. Harmon: You're what, 64?

Ruiz: Yeah, I'll be 64 in October.

at p. #29... Comm. Harmon: You've been down a long time.

Ruiz: ... I never did anything in the name of any gang.

Comm. Harmon: You should of been out years ago; you know that?

Ruiz: Yeah, well, I'm not going to become an informant. That's putting my life in danger and my kids.

Comm. Harmon: Okay. I just wanted to see where you're going, you know, you're getting older?

Ruiz: Yeah.

Comm. Harmon: I just don't know what you want to do with the rest of your life. That's why I'm asking you.

Ruiz: I want to spend it with my kids and my grandkids.


26. That the decision for finding me unsuitable for parole at my May 9, 2006 hearing supports my claim that the parole board has an unwritten "no parole policy for (SHU) prisoners," as demonstrated by the decision issued by Presiding Commissioner, Susan Fisher, as the following quotes clearly show (see: exh. #7, BOH-Transcript, and other related documents):

at p. #46... the Panel reviewed all the information recieved from the public [ the D.A.'s letter read verbatim into the record at pp. 39-41, and which contentions are not supported by any evidence, and/or are based on unchanging factors occurring 25-35 years ago. See: My Memorandum in support of parole, attached to exh. #7, and relied on the following circumstances in concluding you're not yet suitable for parole and would pose a risk of danger to society or a threat to public safety if released from prison. You know, the factors for finding you unsuitable for parole are essentially the same as the factors for which we find that it wouldn't be reasonable for you to

12.

recieve a parole date during the next two years, and essentially
it comes down to, in both cases, the fact that you have been unable
to program for such a long time and don't have alot of the things
in place that you would need in order for us to be comfortable
that you would do well once you were released from prison.
And I know that there's been alot of talk about you debriefing.
at p.#47, I'm hoping that, and I certainly can understand why you
wouldn't want to, and I would never ask you to do something
like that. I do hope though that you'll be able to become inactive --
get an inactive status. I would like for you to be able to do that
so you can get into a lower custody and institution where you
can start to program.
at p.#48 .. But the main concerns, obviously, are the fact that
you -- is your custody level and the fact that you've been
unable to do any programming because of your custody level.
So I'm not sure exactly how that can be addressed, but I
do hope that you can at least start to work toward an inactive
status. And I believe that completes the reading of the decision.
I do want to note that we have -- we had a letter from the
District Attorney's office in opposition of a finding of suitability at this
time.


27. That the board found me unsuitable, and gave me another (2) year denial,
based on my custody level, and related inability to program for the past (23)
years, knowing that the circumstances they relied upon were circumstances
beyond my ability to control as demonstrated by the following:
  A. My "custody level" can only be in reference to the department of
  corrections classifying me as an associate and/or member of the

13.

mexican Mafia prison-gang, and on the basis of this classification status the department of corrections have confined me in (SHU) since 1982, [see: exh.#7 at pp#27-29]

B. The board knew that the reason for my gang-label, and indefinite (SHU) status has been based solely on confidential-inmate informants' claims that I am a gang member; and that I have never been found guilty of committing a single illegal act on behalf of the Mexican Mafia in my whole life [see: exh.#8, [602] Appeal, Log#PBSP-D02-01456, submitted on May 11, 2002, with the documents referenced therein also attached thereto.]

C. That that is the basis for my (SHU) status; and the reason for not programming is because the department of corrections does not provide the type of programs I need [such as help with reading], or the type the board is talking about [such as self-help, group type].

D. The board(s) have all known my sole avenue for release from (SHU) is via debriefing, and they know why I won't do this. As for the "inactive status" option, I've never been "active" yet I was denied "inactive status" in 2001 [see: exh#8, [602] Appeal]; and honestly don't believe the department of corrections will ever find I meet their "inactive" criteria

28. That I do believe that the board(s) holding my eligibility hearings have made their decision(s) to deny me parole prior to seeing me based on their no parole policy for anyone in (SHU) based on the following facts [in addition to those stated above]:

a. During the past [16+] years in [PBSP-SHU] I have not heard of a single prisoner serving a term-to-life sentence, being deemed suitable for parole.

B. Deputy Commissioner Harmon's statements during the May 9, 2006 hearing, prior to their break to consider my eligibility and state the decision, clearly demonstrate the decision was already made [see: exh. #7 at pages 27-32; and above paragraph #25, A-F] and exh. #7 at page 39 ... Deputy Comm. Harmon: Did you do a C-File review?

Ruiz: No.

Comm. Harmon: Maybe you should do that next time. Do an Olson review if there's a next time. That's pretty important.

exh. #7 at page #29 ... Comm. Harmon: You should've been out years ago; you know that?

C. Ignored factors demonstrating suitability [exh's #4 pp 39-41; #5 pp 41-42; #6 pp 38-40]

29. That absent court relief I do not ever expect to be released from (SHU); either to a lower custody level general population prison, nor release on parole, and I will die here in (SHU) at some point in the not so distant future [the board knows that programming on most cocr prisons is virtually non-existent anyway due to excessive over crowding, and lack of opportunities / funding issues].

30. I have read the petition dated July 27, 06 and verify that the claims are presented by me.

I declare under oath and penalty of perjury that the foregoing statements are true and correct, and executed by me on July 27, 2006, at Crescent City, California.

/s/ George Ruiz
George Ruiz
Petitioner, In pro-se