# EXHIBIT H

S151239

# IN THE SUPREME COURT OF CALIFORNIA

### En Banc

In re GEORGE RUIZ on Habeas Corpus

The petition for writ of habeas corpus is denied.

SUPREME COURT
FILED

AUG 2 9 2007

Frederick K. Ohlrich Clerk

_____
DEPUTY

_____
Chief Justice

ORIGINAL

MC-275

Name _George Ruiz B#82089_

Address _Pelican Bay Prison [SHU-D1-220]_

_P.O. Box #7500_

_Crescent City, Cal. 95532_

CDC or ID Number _B#82089_

_CALIFORNIA SUPREME COURT_

_____
(Court)

SUPREME COURT
FILED

MAR 26 2007

Frederick K. Ohlrich Clerk

Deputy

Petitioner _George Ruiz_

vs.

Respondent _Robert Horel - PBSP Warden_

PETITION FOR WRIT OF HABEAS CORPUS

No. **S151239**

(To be supplied by the Clerk of the Court)

_Evidentiary Hearing Requested_

## INSTRUCTIONS—READ CAREFULLY

- If you are challenging an order of commitment or a criminal conviction and are filing this petition in the Superior Court, you should file it in the county that made the order.

- If you are challenging the conditions of your confinement and are filing this petition in the Superior Court, you should file it in the county in which you are confined.

- Read the entire form *before* answering any questions.

- This petition must be clearly handwritten in ink or typed. You should exercise care to make sure all answers are true and correct. Because the petition includes a verification, the making of a statement that you know is false may result in a conviction for perjury.

- Answer all applicable questions in the proper spaces. If you need additional space, add an extra page and indicate that your answer is "continued on additional page."

- If you are filing this petition in the Superior Court, you need file only the original unless local rules require additional copies. Many courts require more copies.

- If you are filing this petition in the Court of Appeal, file the original and four copies of the petition and, if separately bound, one copy of any supporting documents.

- If you are filing this petition in the California Supreme Court, file the original and ten copies of the petition and, if separately bound, two copies of any supporting documents.

- Notify the Clerk of the Court in writing if you change your address after filing your petition.

- In most cases, the law requires service of a copy of the petition on the district attorney, city attorney, or city prosecutor. See Penal Code section 1475 and Government Code section 72193. You may serve the copy by mail.

RECEIVED

MAR 26 2007

CLERK SUPREME COURT

Approved by the Judicial Council of California for use under Rule 60 of the California Rules of Court [as amended effective January 1, 2005]. Subsequent amendments to Rule 60 may change the number of copies to be furnished to the Supreme Court and Court of Appeal.

Page one of six

Form Approved by the
Judicial Council of California
MC-275 [Rev. July 1, 2005]

PETITION FOR WRIT OF HABEAS CORPUS

Penal Code, § 1473 et seq.;
Cal. Rules of Court, rule 60(a)

American LegalNet, Inc.
www.USCourtForms.com

This petition concerns:

☐ A conviction ☒ Parole

☐ A sentence ☐ Credits

☒ Jail or prison conditions ☐ Prison discipline

☐ Other (specify): _____

1. Your name: George Ruiz

2. Where are you incarcerated? Pelican Bay State Prison - Security Housing Unit [PBSP-SHU]

3. Why are you in custody? ☒ Criminal Conviction ☐ Civil Commitment

*Answer subdivisions a. through i. to the best of your ability.*

a. State reason for civil commitment or, if criminal conviction, state nature of offense and enhancements (for example, "robbery with use of a deadly weapon").

Kidnap for robbery, with use of firearm

b. Penal or other code sections: P.C. §§ 209(B); 2022.5; 211; 12022

c. Name and location of sentencing or committing court: San Diego County Superior Court, San Diego, Cal.
220 W. Broadway, San Diego, Cal. 92101-3409

d. Case number: CR-52779

e. Date convicted or committed: 1981

f. Date sentenced: Can't recall

g. Length of sentence: 8 years for robbery + 7 years-to-life for kidnap

h. When do you expect to be released? Absent Court relief - never

i. Were you represented by counsel in the trial court? ☒ Yes. ☐ No. If yes, state the attorney's name and address:

I can't recall attorney name or address - its been over (26) years.

4. What was the LAST plea you entered? *(check one)*

☒ Not guilty ☐ Guilty ☐ Nolo Contendere ☐ Other: _____

5. If you pleaded not guilty, what kind of trial did you have?

☒ Jury ☐ Judge without a jury ☐ Submitted on transcript ☐ Awaiting trial

---

MC-275 [Rev. July 1, 2005]    PETITION FOR WRIT OF HABEAS CORPUS    Page two of six

6. GROUNDS FOR RELIEF

Ground 1: State briefly the ground on which you base your claim for relief. For example, "the trial court imposed an illegal enhancement." (if you have additional grounds for relief, use a separate page for each ground. State ground 2 on page four. For additional grounds, make copies of page four and number the additional grounds in order.)

The Board(s) of Prison Terms [BPT] / Board of Prison Hearings [BPH] have been operating with a predetermined policy to find all (SHU) prisoners, serving term-to-life sentences, unsuitable for parole — subjecting such prisoners to the catch 22 of: either, become an informant for the authorities & thus get out of (SHU); or, die in (SHU). This is an illegal practice/policy.

a. Supporting facts:

Tell your story briefly without citing cases or law. If you are challenging the legality of your conviction, describe the facts upon which your conviction is based. If necessary, attach additional pages. CAUTION: You must state facts, not conclusions. For example, if you are claiming incompetence of counsel you must state facts specifically setting forth what your attorney did or failed to do and how that affected your trial. Failure to allege sufficient facts will result in the denial of your petition. (See In re Swain (1949) 34 Cal.2d 300, 304.) A rule of thumb to follow is: who did exactly what to violate your rights at what time (when) or place (where). (If available, attach declarations, relevant records, transcripts, or other documents supporting your claim.)

In December of 1980, I committed an armed kidnap/robbery of a store to obtain some money to pay for methadone and rent. I verbally threatened, but did not physically harm anyone. I was tried and found guilty; and sentenced to a term of [8] years for the robbery — running consecutive to a [7] year-to-life sentence for kidnap. I have been confined by the department of corrections since June 10, 1981. My minimum eligible-parole date was June 3, 1993. My initial parole eligibility hearing occurred on May 20, 1992, at which time the Board found me unsuitable for parole based on: (A) The Crime; (B) Prior Criminal History, & related drug/alcohol abuse; (C) Custody Level & failure to upgrade educationally, vocationally, & participate in self-help; (D) Department of Corrections classifying me as a member of a prison gang [the basis for this associational label being inmate informant claims, rather than acts; resulting in my continuous (SHU) confinement for (25) years [since 1982]; which is where they say I will remain until I die, or debrief [become an informant for authorities]. Please see attached pages #3[A] & 3[B]

b. Supporting cases, rules, or other authority (optional):

(Briefly discuss, or list by name and citation, the cases or other authorities that you think are relevant to your claim. If necessary, attach an extra page.)

California's parole scheme gives rise to a protected liberty interest in release on parole. [McQuillion v. Duncan, 306 F3d 895, 902 [2002]; Greenholtz v. Inmates of Nebraska Penal & Correctional Complex, 442 U.S. 1 [1979]; Biggs v. Terhune, 334 F3d 910, 915 [9th Cir. 2003]; In re Rosen Krantz, 79 Cal 4th 616 [2003].    Please see attached pages # 3[C] & 3[D]

Page #3(A)

I have had subsequent parole eligibility hearings on Sept. 20, 1994; April 23, 1996; June 23, 1998; Sept. 18, 2001; and Oct. 1, 2003; wherein each of the parole hearings was a repeat of the first on in [1992] and each panel reviewing my parole eligibility found me unsuitable based on the exact same reasons as the [1992] panel [see: Petitioner's attached declaration, at paragraphs #1 through 9, and the exibits incorporated by reference and attached thereto].

On May 9, 2006, I attended my [7th] parole eligibility hearing. Prior to this hearing my state appointed attorney [Mr. Fallman] submitted a written "Memorandum" In support of my petition for parole, wherein I specifically addressed each one of the factors that the [6] previous panels relied upon to deem me unsuitable for parole. I pointed out that repeatedly relying upon unchanging factors regarding events, actions, and circumstances [the life crime, prior criminal history - all based on my drug addiction, [24] years on [SHU] status based on association, rather than being charged with and found guilty of a single act of illegal gang activity], from [20] to [35] years ago may be a due process violation. And I pointed out factors in favor of suitability [no juvenil record; only [3] minor rule violations during [25] years of incarceration - the last one being [1986] for stimulants and sedatives; family support, a place to live, and employment; And the undisputable fact that when I was in the general prison population I always programed well; and my [SHU] status has been solely for administrative [rather than being found guilty of violating a prison rule] reasons. And my only means for realease from [SHU] is via debriefing [which I will not do because I will not make up stuff about other people, nor will I place my family in danger from me being deemed an informant]. And the only reason I've not programmed is because such are not available in [SHU] [see: Pltfs' Decl. at exh. #7, copy of Memo] NEXT PAGE→

Page # 3 [B]

At my [7th] parole eligibility hearing, deputy commissioner Harmon told me in so many words that I "should have been released years ago," if I would have only debriefed and gotten out of (SHU) to a general population prison where I could program [see: Pltfs' Decl. at paragraph #25 [F], and copy of Transcript of May 9th, 2006 hearing attached thereto as exh #7]

In 1994; 1996; 1998; 2001; and 2003, each of the panels also indicated that so long as I refuse to debrief, and remain in (SHU) I will never be paroled [see: Pltf's Decl at para #25 [A – E], with corresponding exhibit transcripts referenced and attached thereto]

In the Memorandum presented to the panel for my May 9, 2006 Hearing, I explained exactly why I have been in (SHU) for over (23) years, and why I believe that predicating my eligibility for a release date upon my agreement to become an informant for the authorities, and risk the attendant repercussions such informant status entails, was illegal [see: Pltfs' Decl at para's #11 & 12; and attached exh #7, Memorandum at pages #3 - 6]

Subsequently, presiding commissioner Fisher found me unsuitable for parole, and set my next parole eligibility hearing off for another (2) year period based on "... you have been unable to program for such a long time. ... your custody level and the fact that you've been unable to do any programming because of your custody level" [see: Decl. Pltf at para's #26 and #27, with attached exhibits #7 and #8, incorporated by reference therein]

All of the above issues are addressed in greater detail in my attached declaration, with supporting exhibits attached thereto.

Absent court relief I will die in (PBSP-SHU). And when I first entered the prison system I was never notified that a confidential inmate informant claiming I was associated with a prison gang would be cause for changing my sentence to life without parole.

Page #3[c]

The fundamental core of due process is protection against arbitrary action. Wolff v. McDonnell, 418 U.S. 539, 558 [1974];

Concomitant to the guarantee against arbitrary and capricious state action is the right to a fact-finder who has not predetermined the outcome of a hearing. [See Withrow v. Larkin, 421 U.S. 35 [1975] [a fair trial in a fair tribunal is a basic requirement of due process, and this rule applies to administrative agencies which adjudicate as well as to courts]; Bakalis v. Golembeski, 35 F.3d 318, 326 [7th Cir 1994] [a decision-making body "that has prejudged the outcome cannot render a decision that comports # with due process"].

Courts too numerous to list have recognized that the right to a disinterested decision-maker, who has not prejudged the case, is a part of the fundamental guarantee against arbitrary and capricious government conduct in the California parole context. See, e.g., Rosenkrantz, 29 Cal. 4th at 677 [parole decision "must reflect an individualized consideration of the specified criteria and cannot be arbitrary and capricious"]; In re Ramirez, 94 Cal. App. 4th 549, 563 [2001] ["some evidence" standard is "only one aspect of judicial review for compliance with minimum standards of due process" [citing Balisok, 520 U.S. 641 [1997] and board violates due process if its decision is "arbitrary or capricious"]; In re Minnis, 7 Cal. 3d 639 [1972] [blanket no-parole policy as to certain category of prisoners is illegal]; In re Mottall, 102 Cal. App. 4th 280 [2003] [same]

As the Supreme Court clearly held in Edwards v. Balisok, supra, 520 U.S. at 648, a decision made by a fact-finder who has predetermined the outcome is per se invalid -- even where there is ample evidence to support it.

Page #3 (D)

Also, the U.S. Supreme Court has repeatedly rejected not only guilt "by" association, but also guilt "for" association, characterizing "guilt by association" as a philosophy alien to the traditions of a free society and the First Amendment itself [see: NAACP v. Claiborne Hardware Co. 485 U.S. 866, 925 [1982]; Amer. Arab Anti-discrimination vs. Reno, 70 F.3d 1045, 1063 [9th Cir. 1995].

Calif. Pen. Code § 186.22 regulates conduct, not speech or association [People v. Gomez, 235 Cal. App. 2d 957, 971 [1991]; By its plain language, the statute requires a showing of specific intent to promote, further, or assist in "any criminal conduct by gang members" rather than other criminal conduct [Pen. Code § 186.22, subd. (b)(1)]

see also: Knox v. Lanham, 895 F. Supp. 750 [D. Md. 1995]. Division of Correction Directive [DVD], removing inmates to higher security combined with parole boards' refusal to recommend parole unless inmates were on active work-release, which required lower security classification, constituted retroactive "punishment" in violation of the ex post facto clause of the Fourteenth Amendment.

Please see attached additional pages #4 [E through H] addressing Superior Court of San Diego County's Denial of my petition via Oct. 11, 2006 [Order]

Please see attached additional pages #4 [I through K] addressing the Court of Appeal, Fourth Appellate District's, Denial of my petition via Feb. 27, 2007 [Order]

7. Ground 2 or Ground ~~#~~ *(if applicable):*

There was "NO-EVIDENCE" to support the Board of Prison Hearing's (BPH) decision to deny the petitioner a parole date at his (7th) Parole Eligibility Hearing [Conducted by the (BPH) on May 9, 2006]

a. Supporting facts:

Petitioner incorporates the facts recited for Ground #1, in so far as they relate to this Ground. Additionally, the (BPH) deemed petitioner unsuitable for a parole date at the May 9, 2006, Hearing based on "... custody level [and the fact that you have been unable to do any programming because of your custody level." [See: Petitioner's Declaration, at paragraph #26, & EXH #7, attached thereto - the (BPH) Hearing Transcript dated: May 9, 2006, at page #48]

The BPH-Commissioners knew that my custody level [indefinite sHu-status], is solely based on confidential inmate informants telling prison staff I am a gang member. And, prison staff's claims that I am an "active" gang member because, they claim they found my name on alleged "gang-rosters," in (2) other prisoners cells [back in 2001] [See: Peti Decl, at para #27 [A-D]; and EXH #8, attached thereto - copy of (602) Appeal, challenging alleged "gang-activity" issues, with related documents referenced & attached]. The (BPH) knew that my "custody level & related inability to program" [for over (24) years, at the time of the 2006 hearing], was based solely on the fact that prison officials have ordered petitioner to be kept in (sHu) for administrative reasons, due to the gang label [based on conf. informants]; and that is the sole basis for my "custody level", because I have never recieved a single rule violation for ever committing any "prison gang" related - illegal acts. [See: Decl, at para #19, and EXH's referenced & attached]    Please see additional page #4 [A] →

b. Supporting cases, rules, or other authority:

The (BPH) deemed petitioner unsuitable for parole on May 9, 2006, based on my indefinite, administ-ratively based - custody level, and related inability to program for such a long time [See: Decl, para #26, & EXH #7, BPH-Transcript at page #46]. Based on the facts, circumstances & evidence relevant to my case [custody level & related inability to program for over (24) years-solely based on an associational label], there is no evidence to support the BPH-May 9, 2006 Decision.
                    Please see attached pages #4 [B, C, D] →

Page #4[A]

The board knew that during my last (25) years of incarceration I have only received (3) rule violations [missing count 1981; Home brew 1983; Stimulants and Sedatives 1986], and that I always programmed well when I was in the general prison population. I have never had any problems with staff, I have stable relationships and strong family support, and employment set up [as well as skills in auto body and paint, as a cook and laborer] [see: Decl. at paragraphs #15-16].

I no longer use alcohol or drugs [and have not done so for (20) years], and my declaration and exhibits attached there to detail the facts that directly refute the panel's reasons for finding me unsuitable for parole. [see: Decl. at para's #12-30]

Absent court relief I do not believe a panel will ever deem me suitable for parole.

Please see attached additional pages #4 [E through H] addressing the Superior Court of San Diego County's, Denial of my petition on Oct. 11, 2006 (order)

Please see attached additional pages #4 [I through K] addressing the Court of Appeal, Fourth Appellate District, Denial of Petition via — Feb. 27, 2007 [Order]

Page #4(B)

The factors required to be considered by the Board regulations are for the most part specified in section 2402 of title 15 of the California Code of Regulations, which consists of four subdivisions. Subdivision (a), which reiterates the statutory factor, that states "regardless of the length of time served, a life prisoner shall be found unsuitable for and denied parole if in the judgement of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison."

Subdivision (c) specifies six nonexclusive factors tending to show unsuitability, the relative importance of which "is left to the judgement of the panel." the relevant factor here is, [#6] "Institutional Behavior. The prisoner has engaged in serious misconduct in prison or jail."

Petitioner has not engaged in any serious misconduct for (20) years, and he has never physically harmed anyone during the past (25) years of incarceration.

Subdivision (d) of section 2402, specifies nine factors tending to show suitability for release, leaving the importance to be attached to any circumstance or combination of circumstances in a particular case to the judgement of the panel. These factors are:

(1) No Juvenile Record; (2) Stable Social History; (3) Signs of Remorse; (4) Motivation for Crime; (5) Battered Woman Syndrome; (6) Lack of Criminal History; (7) Age; (8) Understanding and plans for Future; (9) Institutional Behavior "Institutional activities indicate an enhanced ability to function within the law upon release."

Petitioner meets the criteria for all of the above [see: Decl. at para #11-24] there is "no evidence" that supports the panel's decision that "the custody level, and related inability to program" indicates petitioner would pose an unreasonable risk to public safety and/or pose a danger to society.

As for any other factors [commitment offense, criminal history/drug use]

NEXT PAGE ⟶

Page # 4(C)

Petitioner submits that there is no evidence demonstrating he is still prone to committing criminal acts [all of his prior criminal acts were committed to support his drug habit, and he has not used drugs in (20) years], he did not harm anyone physically during the kidnap, robbery, and has now served over (25) years [see: Decl. at para # 11-24]

The predictive value of the commitment offense may be very questionable after a long period of time [According to a Task Force of the American Psychiatric Association, "neither psychiatrists nor anyone else have demonstrated an ability to predict future violence or dangerousness. [Am Psych. Assn, Task Force Report 8, Clinical Aspect of the Violent Individual [1974] at p. 28]; see also: People v. Murtishaw [1981] 29 Cal. 3d 733, 768; People v. Burnick [1975] 14 Cal. 3d 306, 327]

The "repeated denial of parole based on the same unchanging factors turns an offense for which California law provides eligibility for parole into a de facto life imprisonment without the possibility of parole." Irons v. Warden, 358 F. Supp. 2d 936, 947 [E.D. Cal. 2005]. [see also: In re Smith, 114 Cal. App. 4th 343 (2003)... we conclude that Smith's past desire for and use of drugs does not by itself reasonably establish current unsuitability because there is no additional evidence to complete a chain of reasoning between his past drug use and a finding that because of it he currently poses an unreasonable risk of danger if released [such reasoning applies to petitioner's "custody level" circumstances as well] see also: Thompson v. Davis, 295 F.3d 890, 898 [9th Cir. 2002].

And: In re Deluna, 126 Cal. App. 4th 585, 598 [2005]; cf. Van Houten, 116 Cal. App. 4th at 353"... inmate's previous arrest record did not constitute "some evidence" of a threat to public safety because the alleged acts did not involve serious injury or attempted serious injury to a victim."

NEXT PAGE ➞

Page #4(D)

"nothing in the record indicates that defendant's criminality or ability to support himself was affected by any limitation on his vocational or language skills" And _Irons_, supra, at 948 "... clearly, a conclusion by lay BPT Commissioners that petitioner has not yet achieved required therapy for insight or other reasons is not reasonably sustainable, and a state courts' conclusion to the contrary is patently unreasonable."]

A decision based on a few facts that will always form the basis for denying parole, amounting to a permanent and virtually automatic denial of parole in contravention of due process, is clearly arbitrary and capricious. "The presence of a large measure of discretion in a parole system ... does not alter the fundamental due process limitation against capricious decision making. A legislative grant of discretion does not amount to a license for arbitrary behavior. When a parole board bases its decision on factors that bear no rational relationship to rehabilitation or deterrence, it transgresses the legitimate bounds of its discretion." _In re Fain_, 139 Cal. App. 3d 295, 307 [1983] [quoting _Block v. Potter_, 631 F.2d 233, 236-37 [3rd Cir. 1980]

Additionally, gang members/associates serving determinate sentences are paroled every week from (CDCR), and they may be subject to more intense parole officer supervision, restrictions and monitoring— some are required to wear G.P.S. ankle monitors. The mechanisms are in place in society to closely supervise alleged "gang member's who parole. And petitioner's prison records for over (25) years have zero-rule violations for violence, weapons, nor any other type of illegal gang related activity. Gang membership alone is not a crime [See: _Munoz v. Rowland_, 104 F.3d 1096 at 1098 [9th Cir. 1997]] [See EX #10, article re: G.P.S monitoring]

SEE NEXT PAGE

_Page #4 (E)_

Petitioner respectfully submits that the Superior Court's Order denying my writ on Oct. 11, 2006, is contrary to, or involves an unreasonable application of, already established State, and Federal Law, as determined by the Supreme Court of the United States; and, resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented to the lower court.

The Superior Court determined there was "some evidence" to support the Board's decision finding Petitioner unsuitable for release on parole. [Order, at p#5 See: EX #9]

The court held "... The parole board in this case did not rely solely on Petitioner's commitment offense in denying him parole... First, the BPH considered the underlying commitment offense, but paid more attention to the fact Petitioner really did not express remorse or concern for the victims of his crimes" [See: EX #9 at p. #6:7-16, the quote from page #39 cited by the court is part of this section].

This finding by the court is unreasonable in light of all of the evidence presented to the board and lower court [See: Pet. Decl., at paras #2, 13.(B), and the exhibits incorporated by reference in support thereof]

Additionally, the commitment offense and lack of remorse were not factors recited by the board in the "decision" to find unsuitability. [See: EX #7 BPH-Transcript at p #46:9-25 "... essentially it comes down to, in both

cases, the fact that you have been unable to program for such a long time and don't have a lot of the things in place that you would need in order for us to be comfortable that you would do well once you were released from prison"

The court correctly states what the BPH's real focus was on, stating...
"what the BPH really focused on is the reason this Court cannot and will-

_Page #4 (F)_

not intervene. That is, Petitioner has made what appears to be a conscious decision not to "debrief" in order to protect his Family. On the other hand he told the BPH he never did anything in the name of the gang and states in this Petition the he "will not make stuff up about other people" [Order at p#6:17-20]

The court also states...

"However, Petitioner ignores that he clearly has made the decision to remain in (SHU) and that he needs a longer track record to show that he will continue to become more positive. Unless or until he makes that decision, there is nothing the Court can do to assist him." [Order at p#7:5-7]

Petitioner submits that the undisputed evidence presented to the (BPH) and lower Court, demonstrate that: He has never been Found guilty of being involved in a single illegal, gang-related act in over (25) years; He has never been Found guilty of committing a single violent act in over (25) years; The only reason he has been housed in (SHU) for the last (24) years is because of (CDC) labelling him a gang-member. His only real means of gaining release from (SHU) is via debriefing; yet, he has not been involved in gang activity, being isolated in (SHU) for (24) years—thus, he has nothing to debrief about, and will not make up stories. Plus "debriefers" are on "informant status" and he will not place his Family in danger such informant status causes. [See: Pet. Decl., para's #17-24, and the exhibits incorporated by reference in support thereof]

The undisputed evidence presented demonstrates that, the BPT/BPH has a predetermined decision to Find Petitioner unsuitable for parole until he debriefs and gains release from (SHU). This means he has been denied the due process of a fair parole hearing since becoming eligible for parole in 1993. Such actions violate state and Federal Law [See case cites at

Page #4 [G]
p. #3 (c) & (D), supra ].

Additionally, punishing Petitioner for membership/association is illegal
[See case cites at p. #3 (D) and #4 (D)]

Presenting Petitioner with the "catch 22" of, (A) debriefing and being paroled
or (B) dying in (SHU), violates many precepts of state and Constitutional
law including the First Amendment to the U.S. Constitution right not
to be compelled to speak [See: Hydrick v. Hunter, 2006 D.J. DAR 6762
at 6767 (9th Cir, filed 6-1-06)]

The Lower Court additionally stated....

"Whatever Petitioner's personal reasons for choosing not to debrief, he
cannot take advantage of educational and/or vocational programs
unless/until he is released from the (SHU) and recieves a different
classification. It is clear from the decision rendered by the
latest BPH panel that if Petitioner were to educate himself
[i.e. obtain a high school degree] and obtain a marketable skill, he
would greatly enhance and increase the potential for his release on
parole." [Order, p. #6: 21-25]

and..."The BPH, however, is concerned that if something were to happen
to a job that requires few skills were to disappear, Petitioner would not
have anything upon which to fall back. Apparently Petitioner had
substance abuse problems in the past and.... the potential for that
problem to arise again is still present and a concern for the BPH."
[Order, pp. #6:26-28, #7:1-2]

These matters are addressed in in Petitioner's Grounds #1 and #2 above; also,
the Governor, Secretary of Corrections and Former Commissioner Fisher, have
all been quoted in the media as stating (CDCR) prisons are so over crowded
they are not able to provide meaningful rehabilitative programs to a

Page #4 [H]

majority of prisoners, and it will be years before they ever may be able to do so [See: Pet's Decl. at para #32, and articles referenced and attached as EX #10 thereto]

Petitioner requires help learning to read before he can work on his G.E.D [Pet. Decl., para #14(c)]; He has strong family support, and skills in some trades [Pet. Decl., at EX #7, pp 47:14-16, and 22-23]

He is now (64) years old, and if he is paroled, and in need of assistance the state is mandated to provide such assistance per Pen Code §3068/3070. [as an example]

He has now served over (25) years in prison, with only (3) minor rule violations, the last one being over (20) years ago: This exceeds the minimum sentence needed to be served by a First degree murderer.... Petitioner did not physically harm anyone.

His next parole hearing is not set to occur until sometime after May of 2008, and since the outcome is already determined, based on illegal principles, Petitioner respectfully requests the Court grant relief.

Re: Fourth Appellate Court, Decision [dated: Feb. 27, 2007]

Page #4 [I]

Petitioner respectfully submits that the Appellate Court's Order, denying the petition on Feb. 27, 2007, is contrary to, and/or involves an unreasonable application of, clearly established State, and Federal Law, as determined by the Supreme Court of the United States; and, resulted in a decision that is based on an unreasonable determination of the facts in light of the undisputed evidence presented to the lower court, as demonstrated by the following:

#1 The Appellate Court upheld the Board's May 2006 decision to deny petitioner parole, based on the conclusion that he would pose an unreasonable risk of danger to society or threat to public safety if released. The Court stated correctly that the Board's decision was based on "Ruiz's limited prison programming and limited job skills.", and "consideration of the District Attorney's opposition to parole." [Order at p. #3, See: Decl. at Exh. #2, copy of Order, dated 2-27-07]

The Appellate Court determined that, per Rosenkrantz, (2002) 29 Cal 4th 616, 658], the above basis for the Board's decision constituted "some-evidence" in the record, "as described above, to support the Board's decision" [Order, at pp 4-5]

The problem with the Board's [and Appellate Court's] decision is that both fail to point to a nexus — a correlation between petitioner's "limited prison programming and limited job skills" equating with petitioner being a "current risk /threat to public safety." This is mandated by several State Court's [See; In re Dannenberg (2005), 34 Cal 4th 1061, 1096, fn. 6, requiring the Board to use "detailed standards" for determining suitability. And In re Lee ___ Cal. App. 4th ___; 2006 WL 2947968 (CA2; Oct. 17, 2006), "the test is not whether some evidence supports the reasons the Governor cites for denying parole, but whether some evidence indicates a parolee's release unreasonably endangers public safety" (citing In re Scott (2005)

Page #4 (J)

133 Cal. App. 4th 573, 595]. The undisputed facts in petitioner's case are spelled out at page #4 of the Appellate Courts Order, And neither the Board, nor the Court(s) considering this petition have pointed to any evidence which (A) disputes petitioner's factors for suitability [ Decl, at EXH. 9, Order at p.#4]; nor (B) explains how his inability to program, and alleged lack of skills, make him a current threat to public safety.

It is undisputed that petitioner has been unable to program and housed in (SHU) since (1982), not based on being found guilty of committing a single illegal act; but rather, solely based on a gang label [ per, confidential inmate informants].

Further his only real means for changing this (SHU) status is via agreement to become an informant [ which he refuses to do because of the danger informants, and their family members, are subject to; and (25) years in SHU-isolation, results in not having any information to provide]

Both the Board, the District Attorney, and the Court's [ via review of the evidence produced] are aware of this.

Thus, the reality is petitioner's (SHU) status [ solely based on gang associational status, rather than illegal acts] has been used against him at every single hearing, as the real reason for denying parole [ As demonstrated by the panel members stating that petitioner will not be paroled while he remains in (SHU) period [See: Decl, at paras #25-28]

#2. This evidence also refutes the Appellate Court's finding that, "there is no evidence that the Board has a blanket policy of denying parole to SHU-inmates" [ Order at p, #5]

The opposite is true, the evidence presented clearly states a prima facie case of the panels stating on the record that so long as Ruiz

Page #4 (K)

remains in (SHU) he will never be found suitable [See: Decl. at paras #12, 13, 25 - 27, 28 (specific example is 1996 hearing statement by Koenig, Decl. p. #8)] This requires appointment of counsel, and an evidentiary hearing. And the Boards actions clearly violate clearly established U.S. Supreme Court holdings declaring such arbitrary decisions to be illegal per se [See legal cites at preceding pages #3 (A1 - D); and Robinson v. California, 370 U.S. 660, 666-67 (1962), punishment of an individual based on his "status" is unconstitutional; and also Sass v. Calif. Bd. of Prison Terms, 461 F3d 1123 (9th Cir 2006); and Irons v. Carey, 2007 DJDAR 3072, at 3073 (9th Cir, March 7, 2007). The Supreme Court has clearly established that a parole boards decision deprives a prisoner of due process with respect to this [liberty interest] if the Board's decision is not supported by "some evidence in the record" Sass at 461 F3d 1128-29 [citing Superintendent v. Hill, 472 U.S. 445, 457 (1985)] see also Biggs, 334 F3d at 915 (citing McQuillion, 306 F3d at 904), or is "otherwise arbitrary" Hill, 472 U.S. at 457.

Noteably, the 9th Circuit Court in Biggs, Sass, and Irons, have all reiterated that the Board's continued reliance on immutable factors, to justify repeated denials of parole — when a prisoner has served a sentence beyond his minimum may violate due process.

Petitioner Ruiz has served over (25) years in prison [as of the May 2006 hearing], on a (15) year-to-life sentence, for a kidnap-robbery, wherein no one was physically harmed. He has been housed in (SHU) for most of these (25) years — solely based on "status", and in (SHU) programs were not provided (he needs reading assistance). Other than (3) minor rule violations occurring over (20) years ago, he has been a model prisoner.

The Board's actions are arbitrary, and a blatant denial of due process.

8. Did you appeal from the conviction, sentence, or commitment? ☑ Yes. ☐ No. If yes, give the following information:

a. Name of court ("Court of Appeal" or "Appellate Dept. of Superior Court"):

Fourth, D.C.A.                                      N/A [this petition challenges BPH]

b. Result _Modified sentence to total term of 15 years to life_ c. Date of decision: _Sept. 20, 1982_

d. Case number or citation of opinion, if known: ∅

e. Issues raised: (1) _can't remember_

(2) _____

(3) _____

f. Were you represented by counsel on appeal? ☑ Yes. ☐ No. If yes, state the attorney's name and address, if known:

_____ N/A [can't recall] _____

9. Did you seek review in the California Supreme Court? ☐ Yes ☐ No. If yes, give the following information: _Can't recall_

a. Result _____ N/A _____ b. Date of decision: _____

c. Case number or citation of opinion, if known: _____

d. Issues raised: (1) _____

(2) _____

(3) _____

10. If your petition makes a claim regarding your conviction, sentence, or commitment that you or your attorney did not make on appeal, explain why the claim was not made on appeal: _N/A [Petition relates to BPH - issues]_

_____

11. Administrative Review:

a. If your petition concerns conditions of confinement or other claims for which there are administrative remedies, failure to exhaust administrative remedies may result in the denial of your petition, even if it is otherwise meritorious. (See *In re Muszalski* (1975) 52 Cal.App.3d 500 [125 Cal.Rptr. 286].) Explain what administrative review you sought or explain why you did not seek such review:

_Re: Claims challenging relevant department of corrections issues - I exhausted a (602) Appeal, log # DO2-01456 [See attached Exh. #8, with documents, and responses related to the appeal, attached]_

_Re: Claims challenging the Parole Board's Policies & hearing decisions - there have been no administrative remedies available [per "repeal" of such remedies in May of 2004]_

_____

b. Did you seek the highest level of administrative review available? ☑ Yes. ☐ No.
*Attach documents that show you have exhausted your administrative remedies.*

12. Other than direct appeal, have you filed any other petitions, applications, or motions with respect to this conviction, commitment, or **issue** in any court? ☒ Yes. If yes, continue with number 13. ☐ No. If no, skip to number 15.

13. a. (1) Name of court: _San Diego County Superior Court_

    (2) Nature of proceeding (for example, "habeas corpus petition"): _Habeas Corpus Petition_

    (3) Issues raised: (a) _Same as those presented here._

        (b) _____ "    "    "    "

    (4) Result (Attach order or explain why unavailable): _Petition Denied [See: Exh #9 Copy of Order]_

    (5) Date of decision: _Feb. 27, 2007_

  b. (1) Name of court: _Court of Appeal Fourth District_

    (2) Nature of proceeding: _Habeas Corpus Petition_

    (3) Issues raised: (a) _Same as those presented here._

        (b) _____ "    "    "    "

    (4) Result (Attach order or explain why unavailable): _Petition Denied (See Exh # Copy of Order)_

    (5) Date of decision: _Feb, 27, 2007 [Recieved by petitioner on March 5, 2007)_

  c. For additional prior petitions, applications, or motions, provide the same information on a separate page.

14. If any of the courts listed in number 13 held a hearing, state name of court, date of hearing, nature of hearing, and result:

_N/A_

15. Explain any delay in the discovery of the claimed grounds for relief and in raising the claims in this petition. (See In re Swain (1949) 34 Cal.2d 300, 304.)

_N/A_

16. Are you presently represented by counsel? ☐ Yes. ☒ No. If yes, state the attorney's name and address, if known:

17. Do you have any petition, appeal, or other matter pending in any court? ☐ Yes. ☒ No. If yes, explain:

18. If this petition might lawfully have been made to a lower court, state the circumstances justifying an application to this court:

_N/A_

I, the undersigned, say: I am the petitioner in this action. I declare under penalty of perjury under the laws of the State of California that the foregoing allegations and statements are true and correct, except as to matters that are stated on my information and belief, and as to those matters, I believe them to be true.

Date: _March 11, 2007_      ▶ _George Ruiz_
                                           (SIGNATURE OF PETITIONER)

George Ruiz, B#82089
P.O. Box #7500/D1-220
Crescent City, Cal. 95532
Petitioner, In pro-se


CALIFORNIA SUPREME COURT


In re George Ruiz, B#82089,                    CASE No.:
       On Habeas Corpus                    Declaration of George Ruiz,
                                           In Support of Petition.


I, George Ruiz, declare:

1. I am the Petitioner in the above entitled action, and submit this declaration in support of my petition for a writ of habeas corpus, challenging various practices, and policies of the State Parole Board, including the unsuitable for parole decision of May 9, 2006 (for the 7th time). I can and will competently testify to the following.

2. In December 1980, I committed an armed kidnap/robbery of a store for the purpose of obtaining money to pay for methadone, and rent. I never planned on, nor did I intend to, physically harm anyone during this crime; I did verbally threaten the victims, solely for the purpose of making them comply with my demands. [See: attached Exh #1, Life Prisoner Evaluation Report dated: 3-11-92, at the Offense Summary; and the Board of Prison Terms, Hearing Transcripts, for the following dates: 9-20-94, at pp. #5-7 [Exh #2]; 6-23-98, at pp. #7-16 [Exh #4]; 9-18-01, at pp. #7-14 [Exh #5]; 10-1-03, at pp. #10-15 [Exh #6]; 5-8-06, at pp. #10-11 [Exh. #7]]

3. I was convicted, and recieved a sentence of (8) years on the robbery; plus, a 7 year-to-life term, for the kidnapping charge [to commence after the (8) year term]. I have been serving this time in the California Department of Corrections [C.D.C.]

since June 10, 1981. My minimum eligible parole date was June 3, 1993.

4. My first "parole eligibility hearing" occurred on May 20, 1992. The Board found me unsuitable for parole, and set my next hearing off for (2) years. [see: exh #1. Life Prisoner Decision Face Sheet]

5. My second "parole eligibility hearing" occurred on Sept. 20, 1994. The Board found me unsuitable for parole, and set my next hearing off for (1) year. [see: exh #2. Board of Prison Terms, Hearing Transcript at pp 39 - 40]

6. My third "parole eligibility hearing" occurred on April 23, 1996. The Board found me unsuitable for parole, and set my next hearing off for (2) years. [see: exh #3. BPT Hearing Transcript at pp 29-32]

7. My fourth "parole eligibility hearing" occurred on June 23, 1998. The Board found me unsuitable for parole, and set my next parole hearing off for (2) years. [see: exh #4. BPT Hearing Transcript at pp. 42-47]

8. My fifth "parole eligibility hearing" occurred on Sept. 18, 2001. The Board found me unsuitable for parole, and set my next parole hearing off for (2) years. [see: exh #5. BPT Hearing Transcript at pp 44 - 50]

9. My sixth "parole eligibility hearing" occurred on Oct. 1, 2003. The Board found me unsuitable for parole, and set my next parole hearing off for (2) years. [see: exh #6. BPT Hearing Transcript at pp. 41-47]

10. My seventh "parole eligibility hearing" occurred on May 9, 2006. The Board found me unsuitable for parole, and set my next parole hearing off for (2) years. [see: exh #7. BPT Hearing Transcript at pp 46-47]

11. I am now (63) years old, and I have medical issues related to diabetes [as well as testing positive for Hepititis-C]. I have spent (25) years in prison now, and after being deemed "unsuitable for parole," for the (7th) time, I believe the Board(s) who have considered my case have denied me due process by operating under a "blanket no-parole policy," as well as predicating any chance I may ever have of being found

suitable for a parole date, upon the condition that I become an informant for the authorities [via the debriefing process], and thereby obtain my release from (SHU), in order to comply with the board's programming — recommendations in the general prison population.

12. The reason I believe the board has no intention of ever finding me suitable for a parole date unless I become an informant, and obtain release to general population is based on the following factors:

A. The panels considering me for parole have all found me unsuitable based on factors that I am never going to be able to change... The crime I recieved the [7 year-to-life] sentence for in [1981]; My "prior criminal history" [all of which was related to my "prior history of drug/alcohol abuse"]; My [SHU] status, and resultant inability to program the past (23) years [based on corrections classifying me as a prison gang member] [see: above paragraphs #5-10, and the exhibits referenced therein]

B. My refusal to "debrief" [that is, become an informant for the authorities], and thereby gain release from (SHU), and be able to program in a general population setting. [see: exh#2, BPT-TRANSCRIPT, pp 16-19, 39; exh#3, BPT-TRANSCRIPT, pp 13-14, 22-24, 29-32; exh#4, BPT-TRANSCRIPT, pp 23, 32, 47; exh#5, BPT-TRANSCRIPT, pp 11, 17-18 46-50; exh#6, BPT-TRANSCRIPT, pp 13-15, 35, 43; exh#7, Life Prisoner Evaluation & D.A. Letter.

13. That there is no evidence to support the Board(s) repeated use of the crime, for which I recieved the [7 year-to-life sentence], to find I am not suitable for parole when considering the following facts:

A. I never physically harmed anyone during the crime.

B. I realized many years ago that my "verbal threats" caused a lot of fear in my victims, and I have been sincerely remorseful about this ever since [see: exh#2, at pp. 27-28; exh#4, at pp 16; exh#5, at pp 10-11; exh#6, at p.12;

C. I have now served over (25) years of time on this sentence. I am now [63] years of age, and have medical issues [Diabetes and Hepititus-C].

14. As for my "prior criminal history", it was directly related to my abusive use of

3.

alcohol, and/or drug addiction. I have not used any illegal drugs, or alcohol for over (20) years. I have chosen not to, and do not plan to, because I have medical issues to consider, and I want to be around for my grand children for as many years as possible. [see: exh#3 at pp 8-10, 14:21-27,15-17 exh#4 at p.39-41; exh#5 at p.41; exh#2 at p.34:3-18; exh#7 at Life Prisoner Evaluation; My Memorandum in Support of parole at pp# 2 & #7]

15. Since I have been incarcerated these past (25) years I have been issued CDC-115, Rule Violations for the following:

   A. Missing Count [10-2-81]

   B. Contraband/Homebrew [11-17-83, in S.H.U.]

   C. Stimulants/Sedatives [11-11-86, in S.H.U.]

[see: exh#1 Life Prisoner Evaluation at pg 4; exh#7 at my "Memorandum in support of parole," and BPH-Transcript at p#25]

16. When I was allowed by the department of corrections to program in the general prison population, I always did well (In (1979) while incarcerated I recieved, and completed, Auto body and fender vocational-trainings; And in 1981-1982, I was working as a cook in the kitchen at Folsom Prison prior to being placed in (SHU). [see: exh#2 at p. 20, 34:3-18, 36-38]

17. I was first placed in the (SHU) for "investigation of involvement in racial problems" at Folsom Prison on July 16, 1982. I was never found guilty of any involvement in any racial incidents. [see: exh#1 at p#4]

18. I have remained in (SHU) since (1982), based on "department of corrections" classifying me a member of the "Mexican Mafia" prison gang. Notably, the basis for keeping me confined in (SHU) without opportunity for work, education [I am in need of help with things like reading], vocation, or self-help type programming, has not been behavioral. Rather my (SHU) status is for Administrative reasons, based on associational status. [see: exh#3 Psych-EVALUATION; LIFE PRISONER EVALUATION of p. 4]

4

19. I have never been found guilty of committing a single "gang-related" illegal act in my life. [see: attached exhibits discussing criminal history, and in prison conduct; and exh #3 at Psychiatric Evaluation for 1996; exh.#4 at p.32; exh#6, at p.13-15; exh #7 Memo in support of parole at pp.#3-6]

20. My only avenue of obtaining release from (SHU) [up until 2001], was via the "debriefing" process, which means informing the authorities about my gang-activity, and the gang activities of others. This equates to being an informant, snitch, rat, etc. [see: exh#1 Life Prisoner Evaluation at p.4; exh.#5, Life Prisoner Evaluation of 3-6-01 at p.2]

21. That in (2001) I was considered for "inactive gang-status" by corrections staff [ this means that no gang-activity is documented for a period of (6) years; a single source stating you are still a gang member, is enough to deny you this status for another (6) year period], which may permit release from (SHU).

22. In (2001) corrections staff determined I was still an "active gang-member" based on: debriefing inmate's stating I am still a gang-member.....And they informed me I can request another "inactive review" in [2007] [see: exh.#6, at p.29:2-6; exh. #7, at p.#27]

23. That my correctional counselor stated the following in my "Life Prisoner Evaluation" [dated: 3-11-92]: "... The lengthy (SHU) program that he has been on has deterred educational and vocational programs that would have increased his chances on parole. Ruiz was made aware that debriefing could release him from (SHU), into a regular General Population Program, but he is unwilling to participate in the debriefing program." [exh.#1, at p.#4 V. Summary]

24. That I have repeatedly told my correctional counselor's, and parole board members, that I am not willing to debrief because I don't have information to provide; and/or, I will never be willing to become an informant, because I would not put my family members well being at

5

any risk of being harmed as a result of my actions. [see: exh #2, Life Prisoner Evaluation of [6-11-94], at p. #1 section III.; and BPT-Transcript at pp. 16-19; exh #3, Psych Evaluation For BPT of [1-26-96] at bottom of p. #1; and BPT-TRANSCRIPT pp. 13-14, 22-24; exh #4, BPT-TRANSCRIPT at p. #23; exh #5, BPT-TRANSCRIPT at pp. 17-18; exh #6, BPT-TRANSCRIPT at pp. 13-15, 35; exh #7, Memorandium submitted in support of my [7th] parole petition, at pp. 3-6; and BPT-TRANSCRIPT at p. #27-29, 43-45]

25. That the Parole Board members have belittled me, and/or given my concerns about my family members safety no weight. And used my refusal to "debrief" against me at all of my hearings, even going so far as to state I will never recieve a parole date as long as I am in [SHU], as demonstrated by the following BPT-Hearing quotes:

A. Hearing of Sept 20, 1994 [exh #2]

at p. #17... Commissioner Gillis: So, you're worried about your family if you debriefed. Ruiz: Yes.

at p. #19... Comm. Gillis: Okay. So, debriefing wouldn't make any difference then, would it?

Ruiz: Debriefing on what?... I don't know anything. And if I did, I wouldn't say anything... I'd rather just stay in prison as long as you people are going to keep me here. My family aint going to get hurt by it.

Comm. Gillis: This is your decision — You're doing the time not us... the decision is really up to you.

B. Hearing of April 23, 1996 [exh #3]

at p. 13-14... Comm. Cassady: And that you have on occassion considered the debriefing process

6

Ruiz: I have.

Cassady: Okay, but your conclusion is that you don't want to participate in fear of your family's lives?

Ruiz: Yes.

Cassady: ... I'm just wondering if there's any real basis for your fear to the debriefing process.

Ruiz: It's been well known.

at p 22-23 ... Comm. Koenig: ... were you planning on getting out of prison someday?

Ruiz: It's up to you. It's up to the Board.

Koenig: No -- it's up to you. Where do you get all these ideas -- I guess from listening to prisoners, that if you, you know, get out of the gang area that they're going to hurt your family? Is that what you hear?

Ruiz: Yes.

Koenig: You know, we have all kinds of ex-gang people out in the general population in the other prisons programming well and nothing happened to their families. Do you think maybe you're listening to the wrong people?

Ruiz: No, I don't think so. I've --

Koenig: You don't think so, huh?

Ruiz: I've had friends that had ....

Koenig: Well, once again -- it's all hearsay.

Ruiz: I don't know.

Koenig: Alright, but anyway, that's your decision ..

at p. 24 ... Comm. Cassady: ... why would you be important enough to them that if you debriefed they would want to hurt your family?

Ruiz: Anyone who informs on any of these gangs that I've seen and heard they'll be taken care of.

7

Cassady: Well, you'd better think about what Mr. Koenig says.

Ruiz: Yes.

Cassady: There have been a lot of people that have debriefed that are fine.

Ruiz: Yeah, well, I wouldn't want to take a chance on my family, ma'am.

at p.31:15-26 Koenig: ... Mr. Ruiz, you know, everything is on you. There is no reason why you shouldn't be paroled down the road because you didn't kill anybody; it's a kidnap, a very serious crime, but you're going to have to get out of this status where you are now in order to program and that takes time. You're not going to get out of here and then be released back into society. We ask certain things of you: that you program in the various areas that I've just mentioned. You really should take a hard look at that and, of course, this has been mentioned to you before and it really hasn't done any good, so it's all in your court.

p.32 Comm. Cassady: ... I'd like you to re-think what Mr. Koenig said; this isn't the type of crime that never recieves a parole date.


C. Hearing of June 23, 1998 [exh #4]

at p.#23 ... Comm. Cassady: So what have you been doing with yourself?

Ruiz: Well, they put me in the hole. I've been in SHU. There you don't have no programs in that.

Cassady: And it indicates that, apparently, the counselors have spoken to you about debriefing and you have been noncooperative with that issue. Is that accurate?

Ruiz: Yes.

at p.#32 ... Comm. Guaderrama: Yeah. How long have you been in SHU?

Ruiz: Since '82.

8

Guaderrama: What are you doing to get yourself out?

Ruiz: I've programmed, when I'm out there, I program. I didn't do nothing to get put in the SHU.

Guaderrama: Uh-huh. Yeah, the only one that you're kidding is yourself.

Ruiz: No, no, I'm not.

Guaderrama: On this gang involvement.

Ruiz: What did I do? That's what I want to know. I asked the counselor, you know, what did I do to get put in the hole. They said because I was involved in the racist thing, I wasn't. I didn't do nothing.

at p.#33... Ruiz: I have no material. Where can I get this material? I'm not going to debrief and put my family in jeopardy.

Guaderrama: I'm not asking you to debrief, I'm saying — —

Ruiz: Well, that's the only way I can get the materials to work with

at p.#47    lines 5-8

Guaderrama: ... That is the official decision. I've just got to tell you, Mr. Ruiz, you've got a lot of work to do. You've got to do what you can to get yourself out of SHU and it's going to be up to you.


D. Hearing of Sept. 18, 2001 [exh. #5]

at p. 17: 26-27, p18...

Comm. Welch: I'm wondering why you havent debriefed, so you can get out of the SHU?

Ruiz: If anything, I'd do anything to get out of the SHU except for that, I will not lie on someone else, you know, and if I did know somebody, that I said it, my family would get hurt out in the streets. People say no that wouldn't happen, it's happened, it's been in the news before.

Welch: That's true. Okay.

9

at p. 42 ... Ruiz: All I have to say is when I was out there I didn't have grandkids, I'm not using it as an excuse or anything, but I love my kids, like I say I won't debrief if they're going to be hurt in any way and if I'm going to be denied parole for that then I'm going to be denied, but I'm going to hold to that, I'm not going to put their lives in jeopardy out there, it's happened, I know it's happened, I've seen it happen, I've seen it on T.V. people get killed out there for saying something about another gang member

at p. #50 ... Welch, at lines #5-18, stating in part ...
I know how difficult it is for prisoners to drop out of a gang and to debrief and that's a decision that you have to make and, you know, I can't comment on that one way or another because it seems like to me you've given that a lot of thought. However, you do need to get yourself in a st situation so that you can program, you need to get to a general population unit ...

E. Hearing of Oct 1, 2003 [exh #6]
at p. #13 ... Comm. Welch: What's an old man with grandkids doing still involved with the Mexican Mafia?
Ruiz: I'm not involved.
at p. #14 ... Welch: Are you an active member?
Ruiz: No, I'm not.
Welch: Were you an active member at any time?
Ruiz: No.
at p. #15 ... Welch: But you never did anything -- any criminal activities as a member.
Ruiz: No.
at p. #35 ... Welch: Why would you continue to be a member of something that -- at age 60 that don't provide you with anything?

10

Ruiz: If I debrief as they want me to debrief - -

Welch: Yeah.

Ruiz: - - I'll be putting my life in jeopardy and the members of my family. I ain't going to do that.

at p.#38   Attorney Christensen: Mr Ruiz, then you would rather spend the rest of your life in the SHU rather than debrief?

Ruiz: Rather than have my family hurt, yes, if that's the case.

at p.#43 at lines 6-19.

Welch:    He failed to demonstrate evidence of positive change. By that I mean disassociating himself with his present gang known as the EME, disavowing his allegiance to the gang, trying to get a new start, trying to be a role model for the younger persons that's involved in the gang, getting out and making a new start. The prisoner has not done any of those things. The panel notes that he's currently serving an indeterminate SHU program, as a result of him being a member of the EME. As a result of his placement in the SHU program, program participation is limited, and his ability to demonstrate parole readiness is certainly hampered.

F. Hearing of May 9, 2006 [exh.#7]

at p.#27   Deputy Commissioner Harmon: Okay, So you've been in (SHU) now how long?

Ruiz: Years and years, since '82.

Comm. Harmon: What are you going to do about that to get out there and see that granddaughter? What are you going to do about it?

Ruiz: Well, to keep her safe I can't debrief, and I'm not going to put their lives in jeopardy, you know.

Comm. Harmon: You're what, 64?

11.

Ruiz: Yeah, I'll be 64 in October.

at p. #29.   Comm. Harmon: You've been down a long time.

Ruiz: ... I never did anything in the name of any gang.

Comm. Harmon: You should of been out years ago; you know that?

Ruiz: Yeah, well, I'm not going to become an informant. That's putting my life in danger and my kids.

Comm. Harmon: Okay. I just wanted to see where you're going, you know, you're getting older?

Ruiz: Yeah.

Comm. Harmon: I just don't know what you want to do with the rest of your life. That's why I'm asking you.

Ruiz: I want to spend it with my kids and my grandkids.

26. That the decision for finding me unsuitable for parole at my May 9, 2006 hearing supports my claim that the parole board has an unwritten "no parole policy for (sic) prisoners," as demonstrated by the decision issued by Presiding Commissioner, Susan Fisher, as the following quotes clearly show (see: exh. #7, BPH Transcript, and other related documents):

at p. #46. ... the Panel reviewed all the information recieved from the public [the D.A.'s letter read verbatim into the record at pp. 39-41, and which contentions are not supported by any evidence, and/or are based on unchanging factors occurring 25-35 years ago. See: My Memorandum in support of parole, attached to exh. #7] and relied on the following circumstances in concluding you're not yet suitable for parole and would pose a risk of danger to society or a threat to public safety if released from prison. You know, the factors for finding you unsuitable for parole are essentially the same as the factors for which we find that it wouldn't be reasonable for you to

recieve a parole date during the next two years, and essentially
it comes down to, in both cases, the fact that you have been unable
to program for such a long time and don't have alot of the things
in place that you would need in order for us to be comfortable
that you would do well once you were released from prison.
And I know that there's been alot of talk about your debriefing.
at p. #47, I'm hoping that, and I certainly can understand why you
wouldn't want to, and I would never ask you to do something
like that. I do hope though that you'll be able to become inactive --
get an inactive status. I would like for you to be able to do that
so you can get into a lower custody and institution where you
can start to program.
at p. #48. But the main concerns, obviously, are the fact that
you -- is your custody level and the fact that you've been
unable to do any programming because of your custody level.
So I'm not sure exactly how that can be addressed, but I
do hope that you can at least start to work toward an inactive
status. And I believe that completes the reading of the decision.
I do want to note that we have -- we had a letter from the
District Attorney's office in opposition of a finding of suitability at this
time.

27. That the board found me unsuitable, and gave me another (2) year denial,
based on my custody level, and related inability to program for the past [23]
years, knowing that the circumstances they relied upon were circumstances
beyond my ability to controll as demonstrated by the following:
  A. My "custody level" can only be in reference to the department of
  corrections' classifying me as an associate and/or member of the

13.

mexican Mafia prison-gang, and on the basis of this classification status the department of corrections have confined me in (SHU) since 1982, [see: exh. #7 at pp #27-29]

B. The board knew that the reason for my gang-label, and indefinite (SHU) status has been based solely on confidential-inmate informants' claims that I am a gang member; and that I have never been found guilty of committing a single illegal act on behalf of the Mexican Mafia in my whole life [see: exh. #8, [602] Appeal, Log #PBSP-D02-01456, submitted on May 11, 2002, with the documents referenced therein also attached thereto.]

C. That that is the basis for my (SHU) status; and the reason for not programming is because the department of corrections does not provide the type of programs I need [such as help with reading], or the type the board is talking about [such as self-help, group type].

D. The board(s) have all known my sole avenue for release from (SHU) is via debriefing, and they know why I won't do this. As for the "inactive status" option, I've never been "active" yet I was denied "inactive status" in 2001 [see: exh #8, [602] Appeal]; and honestly don't believe the department of corrections will ever find I meet their "inactive" criteria.


28. That I do believe that the board(s) holding my eligibility hearings have made their decision(s) to deny me parole, prior to seeing me, based on their "no parole policy" for anyone in (SHU), based on the following facts [in addition to those stated above]:

A. During the past [16+] years in [PBSP-SHU] I have not heard of a single prisoner serving a term-to-life sentence, being deemed suitable for parole.

14.

B. Deputy Comm. Harmon's statements during the May 2, 2006, hearing, prior to their break to "consider my eligibility," and state their decision, is partial demonstration that the outcome was predetermined [See: EXH #7, at pp. 27-32; and above para #25 [A-E] See also: Exh #7, at page #29 ...

Comm. Harmon: "You should've been out years ago; you know that?"

and, at p. #39

"Comm. Harmon: Did you do a C-File review?

Ruiz: No.

Comm. Harmon: Maybe you should do that next time."

C. Ignored factors demonstrating suitability [Exh's #4, pp 39-41; #5, pp 41-42; #6, pp 38-40]

29. That on or about Oct. 11, 2006, the San Diego Superior Court denied my petition [See: EXH #9, copy of Order]. On Oct. 27, 2006, I mailed out my petition for Writ of Habeas Corpus, to The Fourth Appellate District, which denied it on Feb. 27, 2007 [EXH #9, copy of Order]

30. That I received the Appellate Court, decision on March 5, 2007, and I am now seeking relief from this Court because the decision is contrary to clearly established U.S. Supreme Court law, and/or misapplies the facts/law. [See Petition at pp #4 [I through K].

31. I am now (64), and absent Court relief, I do not ever expect to be released from [PBSP-SHU]; either, to a lower custody level of a general population prison, nor release on parole; and I will die here in (SHU) at some point in the not so distant future. [Also, the (BPH) knows that meaningful programming in most (CDC) prisons is non-existent anyhow, due to excessive over-crowding, and lack of opportunities; coupled with funding issues. See: Exh #10, News articles]

32. I have read the petition dated [3-11-07], and verify the claims presented are my own.

I hereby declare under penalty of perjury, pursuant to the laws of the State of California, that the above is true and correct this 11th day of March 2007, at Crescent City, California.

/s/ George Ruiz

George Ruiz, Petitioner

15.

## PROOF OF SERVICE BY MAIL

(C.C.P. Section 101a #2105.5, 20 U.S.C. 1746)

I, _George Ruiz B#82689_, am a resident of Pelican Bay State Prison, in the County of Del Norté, State of California. I am over eighteen (18) years of age and am a party to the below named action.

My Address is: P.O. Box 7500, Crescent City, CA 95531.

On the _21_ day of _March_, in the year of 20_07_, I served the following documents: (set forth the exact title of documents served)

_Original + (4) copies of Petition For Writ Of Habeas Corpse & Supporting_
_Declaration + (2) Copies of EXHIBITS [#1 - 20]_

on the party(s) listed below by placing a true copy(s) of said document, enclosed in a sealed envelope(s) with postage thereon fully paid, in the United States mail, in a deposit box so provided at Pelican Bay State Prison, Crescent City, CA 95531 and addressed as follows:

_Supreme Court Of California_
_350 Mc.Allister St._
_San Francisco, Cal. 94102 - 7303_

I declare under penalty of perjury that the foregoing is true and correct.

Dated this _21_ day of _March_, 20_07_.

Signed: _George Ruiz_
(Declarant Signature)

Rev. 12/06