IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GEORGE RUIZ,<br><br>    Petitioner,<br><br>  vs.<br><br>ROBERT HOREL, WARDEN,<br><br>    Respondent. | No. C 07-4804 JSW (PR)<br><br>**ORDER DENYING PETITION FOR A WRIT OF HABEAS CORPUS**<br><br>(Docket Nos. 27, 30) |

**INTRODUCTION**

Petitioner George Ruiz, a prisoner of the State of California currently incarcerated at Pelican Bay State Prison in Crescent City, California, filed a habeas corpus petition pursuant to 28 U.S.C. § 2254 challenging the Board of Parole Hearings ("BPH") denial of parole during parole suitability proceedings in 2006. This Court ordered Respondent to show cause why a writ should not issue. Respondent filed an answer, memorandum and exhibits in support thereof.

After Respondent had answered, the United States District Court for the Ninth Circuit decided *Hayward v. Marshall*, 603 F.3d 546 (9th Cir. 2010) (en banc), in which a number of important issues involving parole habeas cases had been raised. In consequence, the Court ordered the parities to provide supplemental briefs addressing the impact of *Hayward* on this case, which Petitioner and Respondent have done (docket nos. 33, 34). Petitioner's motion for an extension of time is GRANTED (docket no. 30).

Petitioner has also filed a motion to compel discovery, which is DENIED for the reasons set forth below (docket no. 27). After careful consideration of the record and the submissions of Petitioner and Respondent, the petition is denied on the merits.

## BACKGROUND

According to the petition, Petitioner was convicted by a San Diego County Superior Court jury of robbery and kidnapping. In 1981, Petitioner was sentenced to eight years plus seven years-to-life in state prison. In this habeas action, Petitioner does not challenge his conviction, but instead challenges the execution of his sentence. Petitioner alleges that after his seventh parole suitability hearing in 2006, the BPT found him unsuitable for parole, in violation of his federal constitutional rights. He alleges that he has exhausted state judicial remedies as to all of the claims raised in his federal petition.

Petitioner's minimum parole eligibility date was June 3, 1993. (Answer Exhibit D, Subsequent Parole Consideration Hearing, at 1.) In this habeas action, Petitioner does not challenge his conviction or sentence, but instead alleges that his due process rights were violated by the denial of parole by BPH during a subsequent parole suitability hearing on May 9, 2006 and by the BPH's policy which requires that he "debrief" in order to be found eligible for parole.

At the hearing, the BPH relied upon the account of Petitioner's commitment offenses from an earlier hearing. *Id.* at 9. The following summary of the life crime is taken from the Probation Officer's Report at Petitioner's Superior Court sentencing which is contained in Petitioner's Life Prisoner Evaluation from the 2005 Hearing. (Answer, Exhibit C at 2.) The summary contained in the report is as follows:

> On 12/02/80, at 1915 hours, Bruce Peckham, age 25, the victim, exited "The Village Store" at 1145 Rosecrans Blvd., San Diego, CA and got into his vehicle. A Hispanic male, later identified as the Defendant, G. Ruiz, approached the vehicle from the driver's side and pointed a handgun through the open window at Peckham's head and said "you look at me, and I'm going to blow you away." Ruiz ordered Peckham out of his vehicle and said, "let's go into the store. We're going to rob the place. Do what

you're told and no one will get hurt." After walking into the store with a handgun held on Peckham, Ruiz told the two clerks to empty the cash register into a paper bag. Ruiz also told one of the clerks to put four cartons of cigarettes into another bag and place it on the counter. Ruiz took the two bags and left the store wtih Peckham still at gunpoint. Once outside, Peckham was told to look down Addison Street to the west, and not to look back. Ruiz began running east. Peckham looked back towards where he heard Ruiz running and saw Ruiz get into the passenger side of a small sedan and depart northward. . . .The handgun was described as nickel-plated, semi-automatic, with a large frame." *Id.*

The panel at the hearing also gave Petitioner an opportunity to give his own version of events of the kidnapping and robbery conviction. Petitioner testified, "I was waiting around. I was pretty upset. I needed money for rent and for my methadone that I was on. And, I seen this place and it looked pretty quiet, be no trouble, so I went in there and robbed it." When Petitioner failed to mention the victim, the Presiding Commissioner asked how the victim had become involved with Petitioner's robbery. Petitioner testified "I seen him talking with those people in there, so – and when I talked to him he said they were his friends, so I just took him back in the store." *Id.* at 10.

The BPH panel also considered Petitioner's extensive prior criminal history. The presiding commissioner asked Petitioner whether "a lot o your arrests and convictions had to do with substances?" and Petitioner responded that they were due to his being "a heroin addict." *Id.* at 12. The Presiding Commissioner noted that there were also prior convictions for "burglary and robbery and shoplifting." *Id.*

Petitioner discussed his history of drug addiction, commencing with alcohol use at 14, through his incarceration on the life crime which occurred when he was "about 36, 37." *Id.* at 13. The BPH panel considered Petitioner's social history, including that he dropped out of school in 10th grade and that he has several children. *Id.* at 14.

The Presiding Commissioner discussed Petitioner's parole plans. Petitioner testified that he had plans to live with his adult daughter Julia Montoya and work in a real estate office doing unskilled labor. *Id.* at 15-16. He also has a second letter of support and offer of residence from his son's ex-wife, who hopes to continue the bond of

3

Petitioner with his grandchildren.

The Board considered Petitioner's programming and disciplinary record while incarcerated, including that since his prior hearing in 2003, Petitioner remained in the Pelican Bay security housing unit ("SHU") based on his validation as a gang member. In that facility, Petitioner has access to very limited programming. Since the prior hearing, he was involved in no vocational work, group activities, psychiatric treatment or discipline, but Petitioner did participate in a personal reading program, through which he read several self-help books. *Id.* at 19-20.

Petitioner's most recent vocational programming was an auto body and fender program that he completed in 1980. *Id.* Petitioner has not held a job since 1982. *Id.* at 22. Petitioner has not obtained a GED while in prison. *Id.* at 23. He testified that he has to improve his reading to get a GED. *Id.* Petitioner has a limited disciplinary record, including no serious rules violations since 1986 and only one recent disciplinary in February, 2001, for going on a hunger strike. *Id.* at 25.

In discussing his many years in the SHU, Petitioner brought up with the panel that he does not want to "debrief" to get out of the SHU. *Id.* at 27. Deputy Commissioner Harmon asked Petitioner about his gang validation dating back to the 1970s and about an upcoming "inactive status" review scheduled for 2007. *Id.* He also asked Petitioner about his gang validation in 2003, where "they used 10 of 19 documents to validate you again as a member" of the Mexican Mafia. *Id.* at 28. Petitioner denied ever having been a gang member and professed a lack of knowledge of why he was found to be a gang member at the 2003 proceeding, although he testified that "I've hung with them at Old Folsom, San Quentin." *Id.* at 29.

Petitioner was questioned about whether he has considered completing self-help programs while he is in the SHU, "like anger management or anything else that's video, like some of the other guys are doing?" Petitioner responded, "Yeah, I've read books on

4

anger management, but they're all the same." *Id.* at 33. Deputy Commissioner Harmon questioned Petitioner about whether he'd considered the "Success from the Inside Out" series of a life skills program. *Id.* at 34-35.

Deputy Commissioner Harmon asked Petitioner whether he knew the name of his victims and Petitioner replied that he did not remember his full name. *Id.* at 38. When asked his current thought about the victims, Petitioner stated, "I kind of feel sorry for them that I put them through that. At the time I wasn't thinking. . .I was hurting them. That's all." *Id.* at 39.

The San Diego District Attorney's sent a letter opposing Petitioner's parole, based on his lack of remorse and his status as a validated gang member, which has resulted in his failure to upgrade vocationally and educationally. The letter in opposition stated that as a result, Petitioner remains an unreasonable risk to society. *Id.* at 40-41.

After a recess to consider the evidence, the BPH found that Petitioner was not yet suitable for parole and would pose an unreasonable risk of danger to society or a threat to public safety if released from prison. *Id.* at 46. The Presiding Commissioner stressed that Petitioner is unable to program and doesn't have a lot of things in place that he would need in order for the Board to be comfortable that Petitioner would "do well once you were released from prison." *Id.* Presiding Commissioner specifically stated that with regard to Petitioner's testimony about not wanting to debrief,

> "I certainly can understand why you wouldn't want to, and I would never ask you to do something like that. I do hope though that you'll be able to become inactive – get an inactive status. . .so that you can get into a lower custody and institution where you can start to program." *Id.* at 47.

The Board urged Petitioner in the meantime, to try to obtain a "GED express", and to do his best to get some books to work on personal reading on his own. *Id.* The Board also suggested that Petitioner needs to gain some work skills, and may benefit from contacting social security, to establish whether he will have any benefits available to support him upon his release as well as to attempt to work on some self-help programs

1    that are available to him through reading and video. *Id.* at 48-49.

2       Petitioner challenged the Board's decision in Santa Diego County Superior Court,
3    which denied his claims in a reasoned opinion issued on October 11, 2006. (Answer,
4    Exhibit F.) The Superior Court noted that Petitioner's status as a validated gang member
5    and his SHU placement has resulted in his inability "to upgrade both vocationally and
6    educationally." The court noted that the BPH had found Petitioner an unreasonable risk
7    of danger to society because he lacked job skills and appropriate and strong parole plans.
8    The Superior Court noted that judicial review of the BPH's decision is limited to a
9    determination of whether the factual basis for the decision is supported by some
10   evidence in the record that has some indicia of reliability. *Id.* (Citing *In Re Rosenkrantz,*
11   29 Cal.4th 616 (2002), *In Re Scott,* 133 Cal.4th 573 2005, and *In Re Dannenberg,* 34
12   Cal.4th 1061 (2005).) The Superior Court found there was some evidence to support the
13   Board's decision finding Petitioner unsuitable for parole based on the commitment
14   offense, Petitioner's lack of expressed remorse or concern for his victims, as well as his
15   lack of education and marketable skills, which make him an unreasonable safety risk if
16   released on parole.

17       The California Court of Appeal for the Fourth Appellate District denied
18   Petitioner's claims in a reasoned opinion issued on February 27, 2007. Answer, Exhibit
19   G. The appellate court noted Petitioner's extensive criminal history, history of substance
20   abuse issues, his lack of a high school diploma and minimal work history, as well as
21   Petitioner's independent reading of substance abuse related books and application to a
22   GED program. Further, the Court of Appeal discussed that Petitioner's SHU housing
23   designation prevents him from being able to address his lack of adequate programming,
24   stating that in order for his SHU designation to change, Petitioner "must either be
25   debriefed or be inactive in the gang for an extended period." *Id.* at 4. The opinion
26   specified that Petitioner "recently requested and received an Inactive Gang Status

review; however, his gang membership was re-validated and his administrative appeals of that decision were unsuccessful." *Id.* The court specified that Petitioner was not challenging his gang status in the instant petition, specifying that such a challenge to the conditions of confinement must be brought in the proper jurisdiction. The appellate court noted that the Board found Petitioner a danger to the public based on his limited prison programming and job skills and also considered the San Diego District Attorney's opposition to parole. The Court of Appeal found there was "some evidence" in the record to support the Board's decision, based on the relevant factors specified by statute and regulation. *Id.* at 5-6 (Citing *In Re Rosenkrantz* 29 Cal.4th 616, 658 (2002)). The Court further found that there was no evidence that the Board has a blanket policy of denying parole to SHU inmates, finding "[t]o the contrary, the record reflects that the Board carefully considered Ruiz's individual circumstances in assessing his suitability for parole[]" and advised Petitioner of self-help programming other SHU inmates have used that may help Petitioner improve his chances for parole. The California Supreme Court summarily denied Petitioner's habeas petition on August 29, 2007 (Answer, Ex. H.) Thereafter, Petitioner filed the instant federal petition for a writ of habeas corpus on September 18, 2007.

## DISCUSSION

A. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified under 28 U.S.C. § 2254, provides "the exclusive vehicle for a habeas petition by a state prisoner in custody pursuant to a state court judgment, even when the petitioner is not challenging his underlying state court conviction." *White v. Lambert*, 370 F.3d 1002, 1009-10 (9th Cir. 2004). Under AEDPA, this Court may entertain a petition for habeas relief on behalf of a California state inmate "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C.

7

§ 2254(a).

The writ may not be granted unless the state court's adjudication of any claim on the merits: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). Under this deferential standard, federal habeas relief will not be granted "simply because [this] court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams v. Taylor*, 529 U.S. 362, 411 (2000).

While circuit law may provide persuasive authority in determining whether the state court made an unreasonable application of Supreme Court precedent, the only definitive source of clearly established federal law under 28 U.S.C. § 2254(d) is in the holdings (as opposed to the dicta) of the Supreme Court as of the time of the state court decision. *Williams*, 529 U.S. at 412; *Clark v. Murphy*, 331 F.3d 1062, 1069 (9th Cir. 2003).

In determining whether the state court's decision is contrary to, or involved an unreasonable application of, clearly established federal law, a federal court looks to the decision of the highest state court to address the merits of a petitioner's claim in a reasoned decision. *LaJoie v. Thompson*, 217 F.3d 663, 669 n.7 (9th Cir. 2000). If the state court only considered state law, the federal court must ask whether state law, as explained by the state court, is "contrary to" clearly established governing federal law. *See, e.g., Lockhart v. Terhune*, 250 F.3d 1223, 1230 (9th Cir. 2001); *Hernandez v. Small*, 282 F.3d 1132, 1141 (9th Cir. 2002) (state court applied correct controlling authority when it relied on state court case that quoted Supreme Court for proposition squarely in

accord with controlling authority). If the state court, relying on state law, correctly identified the governing federal legal rules, the federal court must ask whether the state court applied them unreasonably to the facts. *See Lockhart*, 250 F.3d at 1232.

Section 2254(d) applies to a habeas petition from a state prisoner challenging the denial of parole. *See Hayward v. Marshall*, 603 F.3d 546, 563 (9th Cir. 2010) (en banc); *Sass v. California Board of Prison Terms*, 461 F.3d 1123, 1126-27 (9th Cir. 2006).

B.    Legal Claims and Analysis

Petitioner claims that the BPH denied him parole based on a policy to find "SHU lifers" unsuitable for parole and requiring such prisoners to debrief in order to be released. Petitioner also claims that his due process rights were violated by BPH's finding of unsuitability for parole based on "some evidence."

1.    State Law Standards for Parole in California

California's parole scheme provides that the BPH "shall set a release date unless it determines that the gravity of the current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration for this individual, and that a parole date, therefore, cannot be fixed at this meeting." Cal. Penal Code § 3041(b). A BPH panel meets with an inmate one year before the prisoner's minimum eligible release date "and shall normally set a parole release date. . . . The release date shall be set in a manner that will provide uniform terms for offenses of similar gravity and magnitude in respect to their threat to the public, and that will comply with the sentencing rules that the Judicial Council may issue and any sentencing information relevant to the setting of parole release dates." Cal. Penal Code § 3041(a).

Under the regulations applicable to Petitioner, a parole date shall be denied if the prisoner is found to be unsuitable under § 2281(c) and shall be set if the prisoner is found to be suitable under § 2281(d). 15 Cal. Code Regs. § 2280. "The panel shall first

9

determine whether a prisoner is suitable for release on parole. Regardless of the length of time served, a life prisoner shall be found unsuitable for and denied parole if in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison." 15 Cal. Code Regs. § 2281(a). The panel may consider all relevant and reliable information available to it. 15 Cal. Code Regs. § 2281(b).

In making this determination, the BPH considers an expansive list of factors including: the prisoner's social history, the commitment offense and prior criminal history, his behavior before, during and after the crime and "any other information which bears on the prisoner's suitability for release." *See* Cal. Code Regs. tit. 15, § 2281(b) – (d). The regulations specifically include as factors tending to support unsuitability for parole: whether the commitment offense was committed in an especially heinous, atrocious or cruel manner; a prisoner's previous record of violence; an unstable social history; psychological factors; and institutional behavior. Cal. Code Regs. tit. 15, § 2281(c). The regulations specifically include as factors tending to support suitability for parole: no juvenile record; stable social history; signs of remorse; stress-related motivation for the crime; lack of criminal history; age; understanding and plans for the future; and institutional behavior. Cal. Code Regs. tit. 15, § 2281(d).

The California Supreme Court case of *In re Lawrence*, 44 Cal.4th 1181 (2008), clarified what California law requires the parole board to find in order to deny parole: The board must find only that the prisoner is a current threat to public safety, not that some of the specific factors in the regulations have or have not been established. *Id.* at 1212. This means that the "some evidence" test is whether there is "some evidence" that the prisoner is a threat, not whether there is "some evidence" to support particular secondary findings of the parole board, for instance that the prisoner needs more time for rehabilitation. *Id.*

California law states that "the nature of the prisoner's offense, alone, can

constitute a sufficient basis for denying parole." *In re Rosenkrantz*, 29 Cal. 4th 616, 682 (2002). However, where "that offense is both temporally remote and mitigated by circumstances indicating the conduct is unlikely to recur, the immutable circumstance that the commitment offense involved aggravated conduct does not provide 'some evidence' *inevitably* supporting the ultimate decision that the inmate remains a threat to public safety." *Lawrence,* 44 Cal. 4th at 1191 (emphasis in original).

    2. <u>Federal Habeas Relief on Parole Denial Claims</u>

    The U. S. Constitution's Due Process Clause does not itself provide state prisoners with a federal right to release on parole. *Hayward*, 603 F.3d at 561. The substantive law of a state might create a right to release on parole, however. *See id.* at 555, 559. Although *Hayward* purported not to reach the question whether a California's substantive law created a federally protected liberty interest, *see id.* at 562, later cases from the Ninth Circuit have said or assumed it does. *See Pearson v. Muntz*, 606 F.3d 606, 609 (9th Cir. 2010) ("state-created rights may give rise to liberty interests that may be enforced as a matter of federal law. . . . By holding that a federal habeas court may review the reasonableness of the state court's application of the California 'some evidence' rule, *Hayward* necessarily held that compliance with the state requirement is mandated by federal law, specifically the Due Process Clause."); *Cooke v. Solis*, 606 F.3d 1206, 1213 (9th Cir. 2010) ("In *Hayward*, we held that due process challenges to California courts' application of the 'some evidence' requirement are cognizable on federal habeas review under AEDPA"); *id.* ("we must examine the nature and scope of the federally enforceable liberty interest created by California's 'some evidence' requirement"); *see also Pirtle v. California Board of Prison Terms*, 611 F.3d 1015, 1020 (9th Cir. 2010) ("'California's parole scheme gives rise to a cognizable liberty interest in release on parole.' *McQuillion v. Duncan*, 306 F.3d 895, 902 (9th Cir 2002). That liberty interest encompasses the state-created requirement that a parole decision must be supported by

11

'some evidence' of current dangerousness. *Hayward* [603 F.3d at 562-63.]")  *Hayward*'s application and these later cases make it clear that in the Ninth Circuit there is federal habeas relief available under §2254 for California prisoners denied parole without sufficient evidence, although it now appears that the emphasis has shifted from § 2254(d)(1) to § 2254(d)(2).

A federal district court reviewing a California parole decision "must determine 'whether the California judicial decision approving the governor's [or the Board's] decision rejecting parole was an 'unreasonable application' of the California 'some evidence' requirement, or was 'based on an unreasonable determination of the facts in light of the evidence.'" *Hayward*, 603 F.3d at 562-63 (quoting 28 U.S.C. § 2254(d)(1)-(2)).  That requirement was summarized in *Hayward* as follows:

> As a matter of California law, "the paramount consideration for both the Board and the Governor under the governing statutes is whether the inmate currently poses a threat to public safety."  There must be "some evidence" of such a threat, and an aggravated offense "does not, in every case, provide evidence that the inmate is a current threat to public safety."  The prisoner's aggravated offense does not establish current dangerousness "unless the record also establishes that something in the prisoner's pre- or post- incarceration history, or his or her current demeanor and mental state" supports the inference of dangerousness.  Thus, in California, the offense of conviction may be considered, but the consideration must address the determining factor, "a current threat to public safety."

*Hayward*, 603 F.3d at 562 (footnotes omitted) (quoting *Lawrence*, 44 Cal. 4th. at 1210, 1213-14); *see also Cooke*, 606 F.3d at 1214 (describing California's "some evidence" requirement).

When a federal court considers a habeas case directed to a parole decision, the "necessary subsidiary findings" and the "ultimate 'some evidence' findings" by the state courts are factual findings – and thus are reviewed by the federal court under 28 U.S.C. § 2254(d)(2) for whether the decision was "based on an unreasonable determination of the facts in light of the evidence."  *Cooke*, 606 F.3d at 1216 (citing *Hayward*, 603 F.3d at 563).

3. <u>Analysis of Petitioner's Claim</u>

The Board and state courts reasonably concluded that there was "some evidence" of current dangerousness which resulted from Petitioner's serious criminal and drug abuse history, lack of prison education, work experience and participation in vocational or group programming, as well as opposition from the San Diego District Attorney's office, notwithstanding the positive aspects of Petitioner's rehabilitation, specifically, his lack of any recent serious disciplinary findings while incarcerated in the SHU. The California Court of Appeal found that there was some evidence in the record to support the Board's decision, based on the BPH's consideration of relevant criteria in the record. Examining the proper criteria, including the record of the crime and Petitioner's conduct before and after the offense, the Board properly considered factors under which Petitioner was found a "continuing threat to public safety," *see Lawrence*, 44 Cal. 4th at 1214.

The state courts properly considered the Board's determination of Petitioner's current dangerousness and found there was some evidence of current dangerousness based on his criminal history, lack of job skills and programming and his gang membership. The Board had discussed with Petitioner his re-validation as a gang member and noted that the 2003 gang validation had been supported by 10 of 19 pieces of evidence. The Fourth District Court of Appeal noted that Petitioner had recently received an "inactive status" review and had been found to be an active gang member. The appellate court noted that Petitioner did not challenge that finding in the petition before the court, but noted that Petitioner has the ability to challenge that determination in the appropriate venue. Petitioner's status as a validated gang member is relevant evidence for the parole suitability determination which allows the Board to consider "institutional behavior." 15 C.C.R. § 2281(c)(6). *See, e.g., Wilkinson v. Austin*, 545 U.S. 209, 227 (2005) (discussing the state's legitimate interest in "prison security, [which is]

imperiled by the brutal reality of prison gangs[.]") While Petitioner also challenges what he contends is an anti-parole policy for "SHU lifers", there is no question that evidence of validated gang membership constitutes evidence of a potential parole candidate's danger to the public. *Id.*

The state courts, in upholding the Board's decision, reasonably applied California's "some evidence" requirement and reasonably determined the facts in light of the evidence in the record. *See Hayward*, 603 F.3d at 563. Therefore, the state courts' denial of Petitioner's federal due process claims was neither contrary to nor an unreasonable application of federal law, and petitioner is not entitled to habeas relief on his petition

4.     SHU/Debriefing Claim

Petitioner also argues that his rights were violated by BPH's policy of denying parole to "SHU lifers" who refuse to debrief. As a preliminary matter, the state court's factual finding that there was no evidence that Petitioner was denied parole based on a blanket policy to deny SHU inmates parole is entitled to deference. The Court of Appeal found that the evidence in the record established that the Board carefully considered Petitioner's individual circumstances in assessing his suitability for parole and that finding is accorded deference here. The hearing transcript reflects that, after considering the appropriate guidelines, the Board had ample reason to find Petitioner unsuitable for parole wholly unrelated to his professed refusal to debrief. Petitioner's claim here fails because Petitioner has not established that his parole was denied based on a failure to debrief.

Moreover, Petitioner's claim fails because he fails to state a claim for relief. While he states in the petition that he challenges a policy to deny "SHU lifers" parole, a habeas petition under 28 U.S.C. § 2254(d) challenges the circumstances of an individual's detention "pursuant to the judgment of a State court only on the ground that

he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). This habeas petition challenges only Petitioner's detention as a result of the denial of suitability at his subsequent parole consideration hearing. Although Petitioner casts his claim as a challenge to a BPH "blanket policy" requiring him to debrief to get out of the SHU, the evidence before the Board and state courts here established that Petitioner remains in the SHU at Pelican Bay State Prison as a "validated" prison gang member, whose gang status was established at a 2003 proceeding using 10 documents and was apparently "re-validated" in 2007. Exhibit D at 31-33. As the Commissioner pointed out during Petitioner's hearing, an alternative to debriefing for a validated gang member to get out of the SHU, is to "get an inactive status." *Id.* at 50. The 2007 Court of Appeal decision further notes that Petitioner was re-validated as a gang member based on a "recent" inactive status review and his administrative appeals of that finding were unsuccessful. Exhibit G at 4.

Petitioner may be able to challenge his gang validation. *See, e.g., Bruce v. Ylst*, 351 F.3d 1283, 1287-88 (9th Cir. 2003). However, where he has been recently validated as a gang member and the Board and state courts have properly relied on that and on his institutional behavior, lack of programming, education, and job prospects in denying him parole as an unreasonable public safety risk, Petitioner cannot establish entitlement to relief on the basis of a claim that he has been denied parole due to a "blanket policy" of denying parole to "SHU lifers." Therefore, habeas relief is unwarranted on this claim.

## PETITIONERS MOTIONS TO COMPEL DISCOVERY

Petitioner moves to compel discovery of certain documents he seeks to establish his claim. Good cause for discovery under Rule 6(a) is shown "'where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief . . .'" *Id.* at 908-09 (quoting *Harris v. Nelson*, 394 U.S. 286, 299 (1969)); *Pham v. Terhune*, 400

15

F.3d 740, 743 (9th Cir. 2005). However, based on the evidence before the Court, Petitioner's individual claim to relief under a purported blanket policy of denying parole to "SHU lifers" fails to state a claim for relief and has been DENIED on the merits. Therefore, the motion to compel discovery is DENIED as moot (docket no. 27).

## CERTIFICATE OF APPEALABILITY

A certificate of appealability will not issue. *See* 28 U.S.C. § 2253(c). This is not a case in which "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Jurists of reason would not find debatable or wrong that the decision that the state court reasonably applied California's "some evidence" requirement in upholding the denial of parole, and reasonably determined the facts in light of the evidence presented. *See Hayward*, 603 F.3d at 562-63.

## CONCLUSION

For the reasons set forth above, the petition for a writ of habeas corpus is DENIED. The Clerk shall enter judgment in favor of Respondent and close the file.

IT IS SO ORDERED.

DATED: September 28, 2010

JEFFREY S. WHITE
United States District Judge

NORTHERN DISTRICT OF CALIFORNIA

GEORGE RUIZ,

        Plaintiff,

  v.

ROBERT HOREL et al,

        Defendant.

Case Number: CV07-04804 JSW

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on September 28, 2010, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

George Ruiz
B82089
Pelican Bay State Prison
P.O. Box 7500
Crescent City, CA 95532

Dated: September 28, 2010

Richard W. Wieking, Clerk
By: Jennifer Ottolini, Deputy Clerk